CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRIAN J. STRETCH
United States Attorney
Northern District of California

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division
    U.S. Department of Justice
    Ben Franklin Station
    P.O. Box 7146
    Washington, D.C. 20044-7146
    Tel (202) 616-4322; Fax (202) 616-4314
    siegmund.f.fuchs@usdoj.gov

Attorneys for Defendants Candina Heath
and Robert Smith

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN GALLAGHER, on behalf of himself; and DONOR NO. 1, individually and on behalf of all anonymous donors to Free Barrett Brown, ) <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES; CANDINA HEATH; ROBERT SMITH; DOES 1-10, <br><br> Defendants. | C 17-0586 MEJ <br><br> **DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER** <br><br> Date:  September 28, 2017 <br> Time:  10:00 a.m. <br> Judge: Maria-Elena James <br><br> Courtroom B, 15th Floor, <br> 450 Golden Gate Ave., San Francisco, CA |

1

2

# TABLE OF CONTENTS

3

TABLE OF AUTHORITIES ...........................................................................................III

4

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................1

5

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

6

I.       INTRODUCTION ................................................................................................1

7

II.      BACKGROUND .................................................................................................3

8

A.       Facts ....................................................................................................................3

9

B.       Additional Facts .................................................................................................4

10

III.     ARGUMENT ......................................................................................................6

11

A.       Donor No. 1 does not state a viable claim for relief against the Individual Defendants. ...............6

12

B.       Donor No. 1 does not plausibly allege a First Amendment violation...........................................10

13

         1.       Donor No. 1 fails to plausibly allege retaliation. ...................................10

14

         2.       The WePay Subpoena easily outweighs any alleged First Amendment

15

                  interests. .................................................................................................13

16

C.       This Court lacks personal jurisdiction over AUSA Heath and SA Smith. ....................................19

17

         1.       Defendants did not purposefully direct their activities at California. ..............................21

18

         2.       The exercise of personal jurisdiction would be unreasonable. ...........................................23

19

IV.      CONCLUSION..................................................................................................25

20

[PROPOSED] ORDER.................................................................................................27

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Cases

*Ali v. Rumsfeld*,
 649 F.3d 762 (D.C. Cir. 2011) ........................................................................................... 8

*Anderson v. Gates*,
 20 F. Supp. 3d 114 (D.D.C. 2013) ..................................................................................... 8

Arizonans for Official English v. Ariz.,
 520 U.S. 43 (1997) .............................................................................................................. 7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................. 2, 6, 11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
 223 F.3d 1082 (9th Cir. 2000) ..................................................................................... 21, 22

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................ 2

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
 403 U.S. 388 (1971) ......................................................................................................... 6, 9

*Boschetto v. Hansing*,
 539 F.3d 1011 (9th Cir. 2008) ...................................................................................... 19, 20

*Brainerd v. Governors of Univ. of Alberta*,
 873 F.2d 1257 (9th Cir. 1989) ........................................................................................... 22

*Brown v. Buhman*,
 822 F.3d 1151 (10th Cir. 2016), *cert. denied,* 137 S. Ct. 828 (2017) .................................. 7

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) .......................................................................................................... 20

*Butz v. Economou*,
 438 U.S. 478 (1978) ............................................................................................................ 7

*Calder v. Jones*,

   465 U.S. 783 (1984)......................................................................................................... 21

*Carlson v. Green*,

   446 U.S. 14 (1980)........................................................................................................... 7

*Chevron Corp. v. Donziger*,

   No. 12-80237, 2013 U.S. Dist. LEXIS 119622 (N.D. Cal. Aug. 22, 2013), ....................... 14

*Cmty. House, Inc. v. City of Boise*,

   623 F.3d 945 (9th Cir. 2010) ............................................................................................ 9

*Consejo De Desarrollo Economico De Mexicali, A.C. v. United States*,

   482 F.3d 1157 (9th Cir. 2007) .......................................................................................... 7

*Corr. Servs. Corp. v. Malesko*,

   534 U.S. 61 (2001) .......................................................................................................... 6

*Ctr. for Competitive Politics v. Harris*,

   784 F.3d 1307 (9th Cir. 2015) .................................................................................. 12, 16

*Dallas v. Stanglin*,

   490 U.S. 19 (1989)......................................................................................................... 14

*Dudnikov v. Chalk & Vermilion Fine Arts*,

   514 F.3d 1063 (10th Cir. 2008) ...................................................................................... 21

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,

   751 F.3d 990 (9th Cir. 2014) .......................................................................................... 12

*Edejer v. DHI Mortg. Co.*,

   2009 U.S. Dist. LEXIS 52900 (N.D. Cal. June 12, 2009) .................................................. 9

*EEOC v. Elrod*,

   674 F.2d 601 (7th Cir. 1982) .......................................................................................... 16

*Emory v. United Air Lines, Inc.*,

   720 F.3d 915 (D.C. Cir. 2013)......................................................................................... 7

*Fox v. Bd. of Trustees of the State Univ.*,
 42 F.3d 135 (2d Cir. 1994) ........................................................................................ 7

*Garmon v. County of L.A.*,
 828 F.3d 837 (9th Cir. 2016) ..................................................................................... 9

*Gentile v. State Bar of Nev.*,
 501 U.S. 1030 (1991) ................................................................................................ 13

*Gilbert v. DaGrossa*,
 756 F.2d 1455 (9th Cir. 1985) ................................................................................... 19

*Graham-Sult v. Clainos*,
 756 F.3d 724 (9th Cir. 2014) .............................................................................. 3, 4, 5

*Gritchen v. Collier*,
 254 F3d 807 (9th Cir. 2001) ....................................................................................... 8

*Hatfill v. Gonzales*,
 519 F. Supp. 2d 13 (D.D.C. 2007) ............................................................................. 8

*Higazy v. Templeton*,
 505 F.3d 161 (2d Cir. 2007) ...................................................................................... 7

*In re Century Aluminum Co. Sec. Litig.*,
 729 F.3d 1104 (9th Cir. 2013) ................................................................................... 12

*In re Grand Jury Subpoena Duces Tecum*,
 549 F.2d 1317 (9th Cir. 1977) ................................................................................... 13

*In re Grand Jury Subpoena*,
 201 F. App'x 430 (9th Cir. 2006) ............................................................................... 15

*Int'l Shoe v. Wash.*,
 326 U.S. 310 (1945) ................................................................................................... 20

*Kalina v. Fletcher*,
 522 U.S. 118 (1997) ................................................................................................... 17

*Kelley v. FBI,*

    67 F. Supp. 3d 240 (D.D.C. 2014) ....................................................................... 10

*Klayman v. Deluca,*

    No. 14-3190, 2015 U.S. Dist. LEXIS 11403  (N.D. Cal. Jan. 30, 2015).............................. 21

*La Ligue Contre Le Racisme Et L'Antisemitisme,*

    433 F.3d 1199 (9th Cir. 2006) .......................................................................... 2, 21, 23

*Lawrence v. Kuenhold,*

    271 F. App'x 763 (10th Cir. 2008) ......................................................................... 9

*Mendia v. Garcia,*

    165 F. Supp.3d 861 (N.D. Cal. 2016) .................................................................. 8, 9

*Moss v. United States Secret Service,*

    572 F.3d 962 (9th Cir. 2009) .......................................................................... 11, 12

*Motorola, Inc. v. Fed. Express Corp.,*

    308 F.3d 995 (9th Cir. 2002) ............................................................................... 7

*Nurse v. United States,*

    226 F.3d 996 (9th Cir. 2000) ............................................................................... 7

*Pebble Beach Co. v. Caddy,*

    453 F.3d 1151 (9th Cir. 2006) ............................................................................ 20

*Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh,*

    229 F.3d 435 (3d Cir. 2000) .............................................................................. 14

*Preminger v. Peake,*

    552 F.3d 757 (9th Cir. 2008) ............................................................................. 14

*Ray v. Simon,*

    No. 07-1143, 2008 U.S. Dist. LEXIS 124667 (D.S.C. July 22, 2008) ............................ 24

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*

    148 F.3d 1355 (Fed. Cir. 1998) .......................................................................... 23

*Reichle v. Howards,*

    566 U.S. 658 (2012) ............................................................................................... 6

*Salau v. Denton,*

    139 F. Supp. 3d 989 (W.D. Mo. 2015) .................................................................. 8

*Sams v. Yahoo! Inc.,*

    713 F.3d 1175 (9th Cir. 2013) .............................................................................. 12

*Schwarzenegger v. Fred Martin Motor Co.,*

    374 F.3d 797 (9th Cir. 2004) .......................................................................... 20, 21

*Scott v. Rosenberg,*

    702 F.2d 1263 (9th Cir. 1983) .......................................................................... 14, 16

*Sher v. Johnson,*

    911 F.2d 1357 (9th Cir. 1990) .............................................................................. 19

*Solida v. McKelvey,*

    820 F.3d 1090 (9th Cir. 2016) ..................................................................... 1, 6, 7, 8

*Spiteri v. Russo,* No. 12-2780,

    2013 U.S. Dist. LEXIS 128379  (E.D.N.Y. Sept. 7, 2013) .................................... 8

*Stafford v. Briggs,*

    444 U.S. 527 (1980) ............................................................................................. 19

*Steffel v. Thompson,*

    415 U.S. 452 (1974) ............................................................................................... 8

*Terracom v. Valley Nat'l Bank,*

    49 F.3d 555 (9th Cir. 1995) ................................................................................. 25

*Thomas v. Thomas,*

    No. 14-1096, 2015 U.S. Dist. LEXIS 182157 (C.D. Cal. May 8, 2015) .............. 22

*Through Pamela R. v. Mass. Dep't of Educ.,*

    130 F.3d 477 (1st Cir. 1997) ................................................................................. 7

*United States v. Curtin*,
  489 F.3d 935 (9th Cir. 2007) ................................................................................ 18

*United States v. Davis*,
  785 F.3d 498 (11th Cir. 2015) .............................................................................. 15

*United States v. Hickey*,
  997 F. Supp. 1206 (N.D. Cal. 1998) ........................................................ 15, 16, 24

*United States v. Konrad*,
  730 F.3d 343 (3d Cir. 2013) ................................................................................. 17

*United States v. Mayer*,
  503 F.3d 740 (9th Cir. 2007) ........................................................................... 14, 15

*United States v. Miller*,
  425 U.S. 435 (1976) .............................................................................................. 13

*United States v. Sayles*,
  No. 11-30162, 2012 U.S. Dist. LEXIS 40732, (S.D. Ill. Mar. 26, 2012) ...................... 17, 18

*United States v. Taylor*,
  No. 14-117, 2014 U.S. Dist. LEXIS 156604 (C.D. Cal. Nov. 15, 2014) ........................ 17

*Univ. of Pa. v. EEOC*,
  493 U.S. 182 (1990) .............................................................................................. 15

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ................................................................................... passim

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012) ........................................................................... 22, 23

*Wright v. Linhardt*,
  No. 98-1555, 1999 U.S. Dist. LEXIS 20727 (D. Ore. Sept. 15, 1999) ........................... 24

*Ziglar v. Abbasi*,
  No. 15-1358, 2017 U.S. LEXIS 3874 (U.S.2017) ....................................................... 6

Statutes

18 U.S.C. § 3006A ................................................................................................... 15, 17

28 U.S.C. § 1391(e) ...................................................................................................... 19

28 U.S.C. §§ 2201 .......................................................................................................... 8

Cal Code Civ. Proc. § 410.10 ...................................................................................... 19

Rules

Fed. R. Civ. P. 12(b)(2)................................................................................................. 27

Federal Rule of Civil Procedure 4(k)(1)(A)................................................................. 19

Other Authorities

2 Wright & Henning, Fed. Practice and Procedure § 272 (4th ed. 2009)................................. 17

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on September 28, 2017, at 10:00 a.m., before the Honorable Maria-Elena James, Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants Candina Heath and Robert Smith will and hereby do move this Court for an order dismissing Plaintiffs' First Amended Complaint. Defendants Heath and Smith are entitled to dismissal on Count One, the First Amendment claim, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure because Count One fails to allege a plausible claim for relief and this Court lacks personal jurisdiction over these defendants in their individual capacities. This motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Court's files and records in this action; the First Amended Complaint; any matter that may be judicially noticed; and any other matter that the Court may consider at any oral argument that may be presented in support of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The sole claim against Defendants Candina Heath and Robert Smith in their individual capacities is Count One of the Amended Complaint (Compl.), the First Amendment claim. *See* Compl. ¶ 7.[1] This motion seeks dismissal of that claim for three reasons. First, Count One purports to be a *Bivens* claim but does not seek damages. That being so, precedent requires dismissal. *See Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) (holding that *Bivens* claims that do not seek damages must be dismissed for failure to state a claim).

Second, Count One fails to plausibly allege a First Amendment violation. During her prosecution of Barrett Brown, Assistant United States Attorney Heath issued a third-party subpoena to WePay, Inc., an online company that retained records of anonymous donations to assist Brown in his defense. Donor No. 1 alleges that the purpose of the WePay subpoena was to retaliate against and surveil those anonymous donors for supporting Brown, all in violation of the First Amendment. Compl. ¶ 30. That allegation is insufficient to plead a claim or show entitlement to relief because it is based solely on

---

[1] Defendants presume Count Three is the "official-capacity claim" referenced in Paragraph 8 of the Amended Complaint. That Count is being addressed separately by the United States.

"information and belief" and there is an obvious alternative explanation for the WePay subpoena: to determine if Brown, who was previously appointed a public defender, could afford his own attorney. Indeed, after AUSA Heath received the WePay information, she moved the district court to redirect the funds. In response, the district court ordered Brown to update his financial affidavit, which revealed that he had amassed some $20,000 in funds. The magistrate judge found that "it is clear the funds in question were obtained on behalf of the Defendant for the purpose of retaining counsel," and that "the Governments [*sic*] Motion was filed in the interests of justice and to assure the Defendant is not wrongly receiving court-appointed counsel when he should not." *See, e.g.*, Order, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 64). This obvious alternative explanation renders the bald allegation of retaliation implausible. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). And once that allegation is put aside, the First Amendment analysis is straight-forward: because the government has a legitimate interest in assuring that public defender resources are not abused and there was a sufficient nexus between the target and the purpose of the subpoena, the subpoena outweighed any First Amendment right to anonymity.

Third, this Court lacks personal jurisdiction over AUSA Heath and SA Smith in their individual capacities because the only alleged connection to California was issuance of a third-party subpoena. Compl. ¶ 6. Contacts between the defendant and a third party are insufficient to establish personal jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). Donor No. 1 alleges that he too resides in California and was thus harmed there. Compl. ¶ 6. But to establish personal jurisdiction, precedent requires an allegation that the defendants *knew* their conduct would likely harm a forum resident. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Because the donors to the Free Barrett Brown fund were all anonymous and potentially located all over the world, no *known* California resident was targeted sufficient to create personal jurisdiction in that state. Also, the records provided in response to the subpoena were disclosed in Texas and filed in the district court under seal. Thus, Donor No. 1 cannot plausibly claim that any harm occurred in California.

Finally, it would be unfair and unreasonable to subject federal employees to personal jurisdiction in another state simply because they attempted to gather information about money rightfully payable to the district court in Texas. They had no control over where the Free Barrett Brown records were located and thus, the connection to California is too fortuitous to create personal jurisdiction over them.

For these reasons, this Court should dismiss Count One for failure to state a claim, and as that is the sole claim against these defendants in their individual capacities, the Court should dismiss them from this suit altogether. This Court should also dismiss them for lack of personal jurisdiction.

## II.   BACKGROUND

### A.   <u>Facts</u>

For the limited purpose of ruling on a motion to dismiss for failure to state a claim, courts are to "take all of the factual allegations in the complaint as true, [they] are not bound to accept as true a legal conclusion couched as a factual allegation." *Graham-Sult v. Clainos*, 756 F.3d 724, 748 (9th Cir. 2014). Plaintiffs Kevin Gallagher, on behalf of himself, and Donor No. 1, individually and on behalf of all anonymous donors to the Free Barrett Brown fund, filed this class action lawsuit against Defendants the United States of America, Candina Heath, an Assistant United States Attorney for the Northern District of Texas, and Robert Smith, a Special Agent of the Federal Bureau of Investigation. According to the first amended complaint, in December 2011, Barrett Brown transferred a link to a file containing private credit card information from one public chatroom to another. Compl. ¶ 21. In 2012, the FBI executed a search warrant at the residence of Brown's mother. *Id.* ¶ 22. In response, Brown posted three videos on www.youtube.com and made several statements on www.twitter.com threatening SA Smith. *Id.* ¶ 23. A grand jury indicted Brown for aggravated identity theft based on his electronic transmittal of personal credit card information, and for internet threats and retaliation against a federal officer based on his online threats against SA Smith. *Id.*

Gallagher alleges he started a crowd-funding campaign to raise funds for Brown's defense. He dubbed it "Free Barrett Brown" and used a company called WePay, Inc., to create a webpage and assist him in accepting donations and publicizing his cause through social media and Google searches. *Id.* ¶ 25. WePay also provided a recordkeeping service that helped Gallagher thank donors. *Id.* According to

the complaint, individuals donated over $40,000 to the Free Barrett Brown fund and to do so, provided WePay with their bank account or credit card information to complete the transaction. *Id.* ¶ 26.

Donor No. 1 alleges "on information and belief" that the defendants conspired to draft and serve a subpoena on WePay to "unlawfully identify, target, and surveil supporters of" Brown. *Id.* ¶ 30. Donor No. 1 also alleges that in furtherance of this scheme, another subpoena was sent to a web-hosting company called CloudFlare, Inc., but Donor No. 1 does not allege any additional information about this subpoena or what it sought.  *Id.* Again without specifics, Donor No. 1 alleges "on information and belief" that the scheme sought information from social media websites, payment processing companies, financial institutions, and other crowd-funding websites to identify and obtain as much information as possible about Brown supporters. *Id.* Donor No. 1 "*believes* this scheme was initiated to harass the donors to retaliate against them for the donors' exercise of protected conduct – (making anonymous donations in support of Mr. Brown's legal defense), and to chill the future expression of such protected conduct." *Id.* (emphasis added). Donor No. 1 also "*believes* this scheme continues today" and that the information obtained "is currently being used to monitor Brown's supporters." *Id.* (emphasis added).

Based on these allegations, Donor No. 1 and the proposed Class raise a First Amendment claim for violation of the right to donate and associate anonymously (Count One), as well as a privacy claim under the California Constitution (Count Three). Gallagher, Donor No. 1, and the proposed Class also raise a statutory claim under the Stored Communications Act (Count Two). This motion addresses only Count One – the First Amendment claim – which this Court should dismiss with prejudice.

## B.  Additional Facts[2]

On September 13, 2012, Brown filed a financial affidavit in his criminal case and was appointed a public defender. *See United States v. Brown*, No. 12-317 (N.D. Tex.) (Docket Sheet, ECF #10). On January 23, 2013, AUSA Heath issued the WePay subpoena. *See* Subpoena to Testify at a Hearing or Trial in a Criminal Case. That subpoena sought "any and all records and information for the account of 'WePay-FREE BARRETT BROWN,'" including (1) subscriber records and information for the user of

---

[2] Along with the motions to dismiss, Defendants have filed a motion for the Court to take judicial notice of the WePay subpoena/response and court filings and transcripts from the Brown criminal case.

C 17-0586 MEJ

DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT          4

the account; (2) financial information regarding the user; (3) sources of the funds; (4) physical location of the funds; (5) a complete transaction history; and (6) all records and information obtained from any verification checks on purchasers. *Id.* WePay responded to the subpoena on February 1, 2013. *See* WePay Summary of Account and Affidavit. At the time of WePay's response, Brown's mother ran the account and 26 individuals had donated $4,411.96 to the fund. *Id.*; *see also* Compl., at 6 n.3.[3]

On February 13, 2013, AUSA Heath filed a motion to direct the funds from the WePay account to the Office of the Federal Public Defender in the Northern District of Texas. *See, e.g.*, Government's Motion to Direct Funds Be Paid, *United States v. Brown*, No. 12-317 (N.D. Tex.) (filed under seal in the criminal cases). On March 29, 2013, the district court ordered Brown to submit an updated financial affidavit, and referred the matter to the magistrate judge on April 16, 2013. *See* Order, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 49). On April 17, 2013, the magistrate judge reviewed Brown's updated financial affidavit, which indicated he had received $20,000 in contributions for his legal defense, and ordered the funds placed in the court registry. *See* Order, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 50). A hearing was set for May 1, 2013. *Id.* However, on the date of the hearing, Brown retained private counsel. *See* Motions to Substitute Attorney, *United States v. Brown*, No. 12-317 (N.D. Tex.) (Docket Sheet, ECF 56). On May 30, 2013, the magistrate judge in a written order denied the motion to direct the funds to the Office of the Public Defender, instead finding that "the release of the money to retained counsel will save the taxpayers more than if the Court forfeited the funds to pay for a portion of the costs of the Federal Public Defender." *See* Order, at 1, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 64) ("5/30/2013 Order"). However, the magistrate judge also stated:

---

[3] Donor No. 1 makes a convoluted assertion that the Defendants in this litigation "inaccurately presented the information provided in the WePay response." Compl. ¶ 51. The basis for this claim is that "[t]he version of the WePay Subpoena attached to Defendants' Request For Judicial notice" in this case was "preceded by a document bearing the seal of the FBI that indicates the WePay Subpoena was redacted specifically for filing in this action." *Id.* That was "inaccurate[ ]," according to Donor No. 1, because the attached redacted document did not duplicate the same notation and they "believe . . . that the WePay Response did include the identities of, and the amounts donated by, the individual donors." *Id.* But of course there was nothing "inaccurate[ ]" in filing a redacted version of the WePay response "*preceded by a document bearing the seal of the FBI that indicates the WePay Subpoena was redacted specifically for filing in this action.*" *Id.* (emphasis added). Still more, the WePay response was redacted for filing here precisely because Donor No. 1 wants to proceed anonymously and the parties agreed to postpone resolution of the question of whether they can indeed do so.

After hearing argument of counsel and reviewing the evidence submitted, it is clear the funds in question were obtained on behalf of the Defendant for the purpose of retaining counsel. This Court finds the funds should be used for that purpose. *The Court finds the Governments [sic] Motion was filed in the interests of justice and to assure the Defendant is not wrongly receiving court-appointed counsel when he should not*.

*Id.* at 1 (emphasis added).

## III.   ARGUMENT

### A.   Donor No. 1 does not state a viable claim for relief against the Individual Defendants.

The only claim against AUSA Heath and SA Smith in their individual capacities is Count One, which purports to allege a First Amendment claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Compl. ¶¶ 7, 15-16. Count One is legally insufficient for the simple reason that it does not seek damages.

In *Bivens*, the Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *See Iqbal*, 556 U.S. at 675-76 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).[4] A key component to a *Bivens* claim is a demand for damages. *See Ziglar v. Abbasi*, No. 15-1358, 2017 U.S. LEXIS 3874, *25 (U.S. 2017) (the central question in any case extending *Bivens* is "who should decide whether to provide for a damages remedy, Congress or the courts?"); *see also id*. at 56 ("[T]he question with respect to the *Bivens* claims is whether to allow an action for money damages in the absence of congressional authorization."). But Donor No. 1 does not seek damages on Count One, instead requesting only declaratory relief against AUSA Heath and SA Smith in their individual capacities. *Compare* Compl., at 21 (Count One – seeking a declaration that "the conduct alleged above violated the First Amendment"); *with id*. (Count Two – explicitly seeking "money damages"). That being so, precedent compels dismissal of Count One.

In *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1091 (9th Cir. 2016), the Ninth Circuit squarely addressed whether a federal officer can be sued in her individual capacity under *Bivens* without seeking damages. The court's answer was an unequivocal no: "[i]n answering no, we join our sister

---

[4] The Court did so only after finding no "special factors counselling hesitation." *Bivens*, 403 U.S. at 396. *Bivens* was a Fourth Amendment case. The Supreme Court has never recognized a *Bivens* claim for a First Amendment violation. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012).

1   circuits in holding that relief under *Bivens* does not encompass injunctive and declaratory relief where,

2   as here, the equitable relief sought requires official government action." *Id.* at 1093 (citing *Higazy v.*

3   *Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The *only* remedy available in a *Bivens* action is an award

4   for monetary damages from defendants in their individual capacities.") (emphasis added)). The court

5   noted that the Supreme Court has "continued to emphasize that money damages is the remedy under

6   *Bivens*." *Id.* (citing *Carlson v. Green*, 446 U.S. 14, 18 (1980) and *Butz v. Economou*, 438 U.S. 478, 504

7   (1978)). Moreover, the court reasoned, "*Bivens* is both inappropriate and unnecessary for claims seeking

8   solely equitable relief against actions by the federal government. . . . [because] *Bivens* suits are

9   individual capacity suits and thus cannot enjoin official government action." *Id.* Thus, the court ordered

10  the *Bivens* claim "dismiss[ed] for failure to state a claim." *Id.* at 1096. The same result is required here.

11      The boilerplate request for "[a]ny other relief the Court deems proper" cannot save Count One.

12  Courts refuse to read a request for damages into boilerplate prayers for relief. *See Arizonans for Official*

13  *English v. Ariz.*, 520 U.S. 43, 71, 80 (1997) (attempt to read boilerplate prayer for relief to include

14  damages "bore close inspection," and ultimately did not save case from dismissal); *see also Brown v.*

15  *Buhman*, 822 F.3d 1151, 1169 n.19 (10th Cir. 2016), *cert. denied,* 137 S. Ct. 828 (2017); *Emory v.*

16  *United Air Lines, Inc.*, 720 F.3d 915, 921 n.10 (D.C. Cir. 2013); *Thomas R.W. by & Through Pamela R.*

17  *v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997); *Fox v. Bd. of Trustees of the State Univ.*, 42

18  F.3d 135, 141-42 (2d Cir. 1994). The request for "costs, including reasonable attorney's fees, associated

19  with bringing this action" also cannot save Count One. "[C]osts and attorney's fees are not damages."

20  *Motorola, Inc. v. Fed. Express Corp.*, 308 F.3d 995, 1007 n.13 (9th Cir. 2002) (internal quotations

21  omitted). The Ninth Circuit has also held that no "statutory or contractual provision or any judicially-

22  created doctrine" justifies attorney's fees on a *Bivens* claim. *See Nurse v. United States*, 226 F.3d 996,

23  1004 (9th Cir. 2000). Thus, Donor No. 1 is not entitled to attorney's fees on Count One in any event.[5]

24

25  _____

26      [5] Nor can Count One be salvaged by instead construing it as an official-capacity claim. It is not
    pled that way, and in any event it would still be subject to dismissal for lack of subject matter
    jurisdiction "because the United States has not consented to its officials being sued in their official

27  capacities" under *Bivens*. *See McKelvey*, 820 F.3d at 1095 (quoting *Consejo De Desarrollo Economico
    De Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007)).

28

1       If anything, the amended complaint makes the *Bivens* claim all the more deficient. It makes clear

2   that all equitable relief sought against AUSA Heath and SA Smith would run against them in their

3   official capacities and thus seeks to compel official government action. Compl., at 21. As the Ninth

4   Circuit stated in *McKelvey*: "Because [plaintiff] seeks to compel official government action, and does

5   not seek damages against [defendant], we conclude that [plaintiff] failed to state a *Bivens* claim." 820

6   F.3d at 1092. Limiting Donor 1's request to declaratory relief does not solve the problem here. If the

7   Ninth Circuit requires dismissal of a *Bivens* claim seeking both declaratory and equitable relief (and no

8   damages), there is no reason to believe a *Bivens* claim seeking *only* declaratory relief somehow survives.

9   *McKelvey* holds that it does not. *See also Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 19 (D.D.C. 2007)

10  (noting that several Circuits have held there is no basis for suing a government official for declaratory

11  relief in his or her individual capacity). And this makes sense as a declaratory judgment is really just a

12  milder form of equitable relief. *Steffel v. Thompson*, 415 U.S. 452, 466-67 (1974) (explaining that the

13  Declaratory Judgment Act was adopted as "a milder alternative to the injunction remedy").

14      Reliance on the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, does not save Count

15  One. Compl. ¶ 7. The Act merely expands the remedies available where a valid claim and an

16  independent basis for jurisdiction exist. *See Gritchen v. Collier*, 254 F3d 807, 811 (9th Cir. 2001). Here,

17  Donor No. 1 fails to allege a cognizable *Bivens* claim and it is well-settled that a party cannot rely on the

18  Declaratory Judgment Act to seek a remedy for an improper claim. *See id.* (where plaintiff fails to allege

19  cognizable Section 1983 claim, Declaratory Judgment Act did not provide a "basis upon which the suit

20  can proceed"); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *Salau v. Denton*, 139 F.

21  Supp. 3d 989, 1012 (W.D. Mo. 2015); *Anderson v. Gates*, 20 F. Supp. 3d 114, 128 (D.D.C. 2013);

22  *Spiteri v. Russo*, No. 12-2780, 2013 U.S. Dist. LEXIS 128379, *76 n.30 (E.D.N.Y. Sept. 7, 2013).

23      Declaratory relief is not only unavailable, but the actual declaration sought would be improper.

24  As this Court has recognized, the Declaratory Judgment Act provides a "remedy to one who is uncertain

25  of his rights and who desires an early adjudication thereof without having to wait until his adversary

26  should decide to bring suit, and to act at his peril in the interim." *Mendia v. Garcia*, 165 F. Supp.3d 861,

27  893 (N.D. Cal. 2016) (James, M.J.) (citation omitted). That is certainly not the case here. *See id.*

28

1   ("Courts should deny such relief when it will neither serve a useful purpose in clarifying and settling the

2   legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and

3   controversy faced by the parties.") (internal quotations and citation omitted). Indeed, as this Court has

4   also recognized, a plea for relief that simply seeks a declaration that a constitutional violation occurred

5   without an additional request regarding future conduct is improper. *Mendia*, 165 F. Supp.3d at 894; *see*

6   *also Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) ("A declaratory judgment is meant

7   to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply

8   to proclaim liability for a past act."); *Edejer v. DHI Mortg. Co.*, No. 09-1302, 2009 U.S. Dist. LEXIS

9   52900, at *31 (N.D. Cal. June 12, 2009) ("The purpose of a declaratory judgment is to set controversies

10   at rest before they cause harm to the plaintiff, not to remedy harms that have already occurred.").

11          Finally, it is well settled the grant of declaratory relief is discretionary; "a plaintiff does not have

12   an absolute right to declaratory relief." *Mendia*, 165 F. Supp.3d at 893 (citation omitted). Even if this

13   Court had the authority to exercise that discretion here, it should not. Had Donor No. 1 alleged a proper

14   *Bivens* damages claim, AUSA Heath and SA Smith would be entitled to raise certain defenses. AUSA

15   Heath could raise the defense of absolute immunity thereby avoiding an unnecessary adjudication of the

16   First Amendment claim. *See Garmon v. County of L.A.*, 828 F.3d 837, 844-45 (9th Cir. 2016) (absolute

17   immunity protects a prosecutor from civil liability for decision to issue a criminal subpoena). SA Smith

18   could raise the defense of qualified immunity. To resolve that defense, the Court has the option to skip

19   the issue of whether the First Amendment was violated and instead address whether the existing case

20   law rendered the alleged constitutional right clearly established. *See Cmty. House, Inc. v. City of Boise*,

21   623 F.3d 945, 967 (9th Cir. 2010). Here, AUSA Heath and SA Smith have not found a single case even

22   remotely addressing whether the issuance of a subpoena to determine if a criminal defendant can afford

23   a lawyer implicates the First Amendment. Moreover, *Bivens* itself stated that a *Bivens* damages remedy

24   is available only where there are no "special factors counselling hesitation" against recognizing a new

25   *Bivens* cause of action. 403 U.S. at 396. Here, courts have held that the potential availability for relief

26   under the Stored Communications Act is an adequate alternative remedy sufficient to displace a *Bivens*

27   remedy where the conduct giving rise to the purported statutory claim also serves as the basis for the

28   C 17-0586 MEJ

*Bivens* claim. *See Kelley v. FBI*, 67 F. Supp. 3d 240, 270-71 (D.D.C. 2014). As Donor No. 1 raises an SCA claim, both individual defendants would have a dispositive special-factors defense.[6]

But Donor No. 1 seeks to bypass these defenses and force this Court to adjudicate the First Amendment issue without raising a genuine *Bivens* claim (*i.e.*, a claim for damages). That adjudication would serve no useful purpose with respect to AUSA Heath and SA Smith in their individual capacities and afford no relief from any uncertainty or future controversy faced by the parties. That is not the way to litigate a case and certainly not the way to litigate a *Bivens* case. If Donor No. 1 does not want damages from AUSA Heath and SA Smith, and is not seeking any equitable relief against them in their individual capacities (which would be inappropriate, in any event), then there is no reason to keep them in this lawsuit. After two attempts, this Court should not countenance Donor No. 1's failure to allege a cognizable *Bivens* claim by rewarding Donor No. 1 with a declaration on the merits.

In the end, Count One, which purports to be a *Bivens* claim, does not seek damages. Precedent accordingly demands dismissal. And as that is the only claim against AUSA Heath and SA Smith in their individual capacities, this Court should dismiss them from this suit altogether.

**B.  Donor No. 1 does not plausibly allege a First Amendment violation.**

Not only is Count One subject to dismissal for failure to seek damages, Donor No. 1 also fails to plausibly allege a First Amendment violation. Donor No. 1 purports to allege a First Amendment right to speak and associate anonymously. To the extent the WePay subpoena implicated the First Amendment at all, Count One fails for two reasons. First, Donor No. 1's allegation of First Amendment retaliation is based solely on "information and belief," which this Court should reject, particularly in light of the obvious alternative explanation for the WePay subpoena: to determine if Brown could afford a lawyer. Second, this obvious alternative explanation also serves as a legitimate purpose for issuing the WePay subpoena that outweighed any First Amendment interest in anonymity as a matter of law.

**1.  Donor No. 1 fails to plausibly allege retaliation.**

---

[6] Perhaps Donor No. 1 omits a request for damages on Count One because the request would be futile in light of these affirmative defenses. AUSA Heath and SA Smith reserve the right to raise these defenses should Donor No. 1 ever seek damages against them in their individual capacities.

As the Supreme Court made clear in *Iqbal*, to survive a motion to dismiss, claims against government officials must contain factual allegations plausibly suggesting their direct involvement in a constitutional violation. 556 U.S. at 676. In that case, the plaintiff alleged that the Attorney General and FBI Director adopted an unconstitutional policy in the wake of the September 11 attacks that subjected the plaintiff to harsh conditions of confinement because of his race, religion, or national origin. *Id.* at 666. But the Court rejected the allegation of discriminatory motive. *Id.* at 681. In doing so, the Court noted that although the widespread detention of Arabs and Muslims was *consistent* with the allegation that the defendants designated individuals based on their race, religion, or national origin, an "obvious alternative explanation" existed. *Id.* at 682. Because "[t]he September 11 attacks were perpetrated by 19 Arab Muslim hijackers," the Court noted, "[i]t should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Id.* The Court explained: "[a]s between that obvious alternative explanation . . . and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." *Id.* (internal quotations and citation omitted). And having failed to allege more by way of factual content, the plaintiff had failed to "nudge" his claim of purposeful discrimination "across the line from conceivable to plausible." *Id.* at 683 (citation omitted).

The Ninth Circuit first applied *Iqbal* in *Moss v. United States Secret Service*, 572 F.3d 962 (9th Cir. 2009), which, like here, involved allegations of retaliation. There, the plaintiffs alleged that Secret Service agents engaged in retaliation when they ordered local police to move anti-Bush demonstrators away from areas outside where the President was dining. *Id.* at 969-70. The court held that to succeed on that claim, the protesters needed to establish that the agents acted "*because of,* not merely in spite of, the demonstration's anti-Bush message." *Id.* at 970. It noted that bald allegations of impermissible motive were insufficient and not entitled to an assumption of truth. *Id.* The court then inquired whether it could reasonably infer a First Amendment violation given that the anti-Bush protesters were moved blocks away while pro-Bush diners and guests at the inn were allowed close proximity. *Id.* at 971. The court concluded that "[t]he[se] facts do not rule out the *possibility* of viewpoint discrimination, and thus at

some level they are consistent with a viable First Amendment claim, but mere possibility is not enough. . . . [the complaint] therefore fails to satisfy . . . *Iqbal*." *Id.* at 971-72 (emphasis added); *see also Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior.") (citation omitted); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (when faced with two possible explanations, plaintiff cannot just offer allegations consistent with favored explanation, but must also offer facts tending to exclude alternative explanation) (citations omitted).

Two takeaways from these cases are (1) bald allegations of impermissible retaliation, conspiracy, and motive based on information and belief are not entitled to an assumption of truth, and (2) allegations that are merely consistent with unlawful conduct do not state a plausible claim for relief, particularly in light of an obvious alternative explanation. Applying these standards here, this Court should reject the bald allegation that the WePay subpoena was part of some government conspiracy to retaliate against and surveil Brown supporters, particularly in light of the obvious alternative explanation: to determine if Brown could afford a lawyer. Indeed, after she received the WePay response, AUSA Heath filed a motion to direct the funds be paid to the Public Federal Defender and attached the WePay response in support, all under seal. The district court responded by ordering Brown to update his financial affidavit and the magistrate judge directed the newly-obtained funds to Brown's newly-retained counsel. The magistrate judge also found that "the Governments [*sic*] Motion was filed in the interests of justice and to assure the Defendant is not wrongly receiving court-appointed counsel when he should not." *See* 5/30/2013 Order, at 1. As between that explanation and the bald allegation of conspiracy, retaliation is simply not a plausible conclusion. And having failed to allege more by way of factual content, the complaint fails to "nudge" the First Amendment retaliation claim across the line from conceivable to plausible. *Cf. Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1317 (9th Cir. 2015) (where disclosure is to government not public at large, speculative allegations of government retaliation do not state a claim); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1181 (9th Cir. 2013) (bald allegation that subpoena was issued in bad faith does not satisfy *Iqbal* and is insufficient to withstand motion to dismiss).

Donor No. 1 alleges it is clear the purpose of the subpoena was to suppress speech because

1   AUSA Heath sought an order restricting public statements in the criminal case. Compl. ¶ 54. In support,

2   Donor No. 1 lifts a partial quote from a hearing in which AUSA Heath references the tone of a particular

3   Brown article critical of the government. *Id.* Donor No. 1 fails to mention that AUSA Heath also stated

4   the article would *not* violate the proposed order restricting Brown's public comments on the criminal

5   case, *see* 09/04/2014 Tr. of Hearing, *United States v. Brown*, No. 12-317 (N.D. Tex.), at 57:18-19 ("I do

6   not say that the article would violate this rule."). Elsewhere she made clear she was *not* trying to prohibit

7   Brown from criticizing the government, so long as it was not related to the case. *Id.* at 56:12-15 ("Court:

8   . . . now, I don't think that I can write an order that would prohibit him from making general criticism

9   not related to this case. MS. HEATH: Correct, I am not asking for that."); *id.* at 56:19-22 ("MS.

10  HEATH: Yes, Your Honor. I think that is what I said. The government is not opposed to Mr. Barrett

11  Brown writing articles that are not related to this case."). The district court agreed and entered an order

12  along those lines. *See United States v. Brown*, No. 12-317 (N.D. Tex.) (Docket Sheet, ECF # 93). And of

13  course such orders are proper in order to protect the right to a fair trial. *See Gentile v. State Bar of Nev.*,

14  501 U.S. 1030, 1075 (1991). In any event, nothing about the quoted statements lends plausibility to the

15  allegation, on information and belief, that the WePay subpoena was part of some government conspiracy

16  to retaliate against Brown supporters. The two issues have nothing to do with each other.

17              **2.   The WePay Subpoena easily outweighs any alleged First Amendment interests.**

18              At the outset, it is far from clear *any* First Amendment rights were implicated by the WePay

19  subpoena. First, it is well established there is no expectation of privacy in transactional records retained

20  by a third party even if the information was relayed on a promise of confidentiality. *See United States v.*

21  *Miller*, 425 U.S. 435, 442-43 (1976); *see also In re Grand Jury Subpoena Duces Tecum*, 549 F.2d 1317,

22  1318 (9th Cir. 1977) (no First Amendment interest in transactional records held by third-party). And

23  here, despite Donor No. 1's allegation of a promise of confidentiality on the WePay website, *see* Compl.

24  ¶¶ 28, 77, the *actual* WePay privacy policy clearly states: "WePay may be compelled to share personal

25  information to law enforcement, government officials, or other third parties in the event of a subpoena."[7]

26  ————————————

27  [7] The policy further states: "By using or accessing WePay, you are accepting the practices described in this Privacy Policy." That was the privacy policy as it existed when the Government issued its subpoena in January 2013 and is still the current WePay privacy policy today. *Compare*

28  <sub>C 17-0586 MEJ</sub>

DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT          13

1    Second, to the extent there is a right in anonymity to online messages, the WePay subpoena did not

2    specifically target online messages and in fact, the WePay response did not provide any. Nor does the

3    amended complaint even allege that Donor No. 1 provided an online message at all. *See Chevron Corp.*

4    *v. Donziger*, No. 12-80237, 2013 U.S. Dist. LEXIS 119622, *7 (N.D. Cal. Aug. 22, 2013) (subpoena

5    targeting identity of email account holders did not implicate First Amendment because it did not target

6    online messages). Third, with respect to the association claim, there is no allegation the donors to the

7    Free Barrett Brown fund are members of an organized group, that they patron the same establishment, or

8    that they have ever met or conversed at all. Anyone could donate regardless of any particular message he

9    or she wanted to convey. Based on these facts, it is far from clear whether the fund is a protected

10   association. *See Dallas v. Stanglin*, 490 U.S. 19, 24-25 (1989) (no association right where members of

11   dance hall did not patron same places and were mostly strangers to each other, and where anyone could

12   attend without having to take a position on a public question or perform the same activities); *Pi Lambda*

13   *Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 444 (3d Cir. 2000) ("A few minor charitable

14   acts do not alone make a group's association expressive. . . ."), as amended (Nov 29, 2000). However,

15   this Court need not reach these issues because even if some First Amendment rights were implicated, the

16   purpose for issuing the WePay subpoena easily outweighs them. *See Preminger v. Peake*, 552 F.3d 757,

17   765 (9th Cir. 2008) ("[T]he privileges afforded by the First Amendment are not absolute.").

18          Because Donor No. 1 does not plausibly plead retaliation, the First Amendment inquiry boils

19   down to whether the Government had a legitimate purpose for issuing the WePay subpoena that

20   outweighs any harm to First Amendment interests. *See United States v. Mayer*, 503 F.3d 740, 744 (9th

21   Cir. 2007) ("We agree and clarify that . . . an investigation threatening First Amendment rights, like any

22   government investigation, be justified by a legitimate law enforcement purpose that outweighs any harm

23   to First Amendment interests."). Whether an interest is legitimate or compelling is a question of law. *See*

24   *Scott v. Rosenberg*, 702 F.2d 1263, 1274 (9th Cir. 1983). In the context of investigations requiring

25   disclosure of anonymous groups, as well as criminal subpoenas implicating the First Amendment, courts

26

27   https://web.archive.org/web/20130309195717/https://www.wepay.com/legal/privacy-policy (2011
     WePay privacy policy) *with* https://go.wepay.com/privacy-policy-us (current WePay privacy policy).

28   C 17-0586 MEJ

1    also consider whether there is a sufficient nexus between the government purpose and the target of the

2    investigation. *Mayer*, 503 F.3d at 748 (interpreting Supreme Court precedent as sustaining a First

3    Amendment challenge to required disclosure only where there is no compelling interest or no substantial

4    connection between the investigation and the information sought); *see also In re Grand Jury Subpoena*,

5    201 F. App'x 430, 432 (9th Cir. 2006) (with respect to grand jury subpoena, "a limited balancing of First

6    Amendment interests may be conducted only where a grand jury inquiry is not conducted in good faith,

7    or where the inquiry does not involve a legitimate need of law enforcement, or has only a remote and

8    tenuous relationship to the subject of the investigation") (internal quotations and citation omitted).[8]

9        With respect to the interest prong, a subpoena targeting a transactional history is by no means an

10   unusual occurrence. "The government routinely issues subpoenas to third parties to produce a wide

11   variety of business records, such as credit card statements, bank statements, hotel bills, purchase orders,

12   and billing invoices." *United States v. Davis*, 785 F.3d 498, 506 (11th Cir. 2015) (en banc). And courts

13   enforce those subpoenas notwithstanding that the targeted records "reveal intimate details of daily life,

14   such as shopping habits, medical visits, and travel plans." *Id.* at 505 n.9. Here, there can be no serious

15   dispute that the government has a legitimate, if not compelling, interest in determining whether public

16   defender resources are being abused. Several courts, including this Court, have recognized "the interests

17   of the government in limiting court appointment of counsel to financially qualified individuals." *See*

18   *United States v. Hickey*, 997 F. Supp. 1206, 1210 (N.D. Cal. 1998) (James, M.J.) (collecting cases).

19   Indeed, 18 U.S.C. § 3006A(c) specifically authorizes district courts to terminate the appointment of

20   counsel if the court finds that a criminal defendant is "financially able to obtain counsel or to make

21   partial payment for the representation;" and if the court becomes aware of funds "available for payment

22   from or on behalf of a person furnished representation," Section 3006A(f) authorizes district courts to

23   "direct that such funds be paid to the appointed attorney . . . or to the court for deposit in the Treasury as

24   a reimbursement to the appropriation." And the Guide to Judicial Policy, which outlines the

25

26       [8] In fact, the Supreme Court has intimated that the *only* First Amendment constraint on a
27   government subpoena is where the subpoena is issued in bad faith. *See Univ. of Pa. v. EEOC*, 493 U.S.
     182, 201 n.8 (1990) (citations omitted).

28   C 17-0586 MEJ

1   requirements for appointment or termination of counsel, cements the prosecution's role in the process.

2   *See* Guide to Judicial Policy, Vol. 7, Part A, Chapter 2: Appointment and Payment of Counsel, §

3   210.40.20(g) ("The prosecution and other interested entities may present to the court information

4   concerning the person's [financial] eligibility. . . .").[9] This Court has in fact entertained Section 3006A

5   motions filed by the government after the prosecutor learned the criminal defendant had money to afford

6   a lawyer. *See Hickey*, 997 F. Supp. at 1209-10 (James, M.J.).

7       There can also be no serious dispute that there was a sufficient nexus between the government's

8   interest in ensuring that public defender resources were not being abused and the WePay subpoena,

9   especially given the magistrate judge's finding that "it is clear" the funds targeted by the subpoena

10  "were obtained on behalf of [Brown] for the purpose of retaining counsel" and that "the funds should be

11  used for that purpose." 5/30/2013 Order, at 1. A subpoena will generally survive a nexus challenge as

12  long as the information requested "touches a matter under investigation." *EEOC v. Elrod*, 674 F.2d 601,

13  613 (7th Cir. 1982) (citation omitted). That is surely the case here. *Cf. Harris*, 784 F.3d at 1317

14  (compelled disclosure of donations bore "substantial relation" to "sufficiently important" interest in

15  assuring validity, and interest was sufficient to outweigh First Amendment right to anonymity); *Scott*,

16  702 F.2d at 1275-76 (where government had compelling interest in whether charitable donations were

17  being spent appropriately and investigation sought transaction records, nexus between information

18  sought and government objective was "sufficiently close" to override First Amendment concerns).

19      In the original complaint, Donor No. 1 alleged that "Defendants never intended to allow the

20  information subpoenaed from WePay to see the inside of Mr. Brown's courtroom." Orig. Compl. ¶ 44.

21  Having now learned that AUSA Heath did file the WePay response in the criminal action, Donor No. 1

22  deletes that allegation and adds several new allegations criticizing the WePay subpoena as improper and

23  unnecessary. Donor No. 1 first alleges the WePay subpoena was improper because Brown was never

24  charged with withholding funds. Compl. ¶ 46. But nothing in Section 3006A hinges the propriety of a

25  motion under that section on charging the defendant with some new crime to ascertain whether he might

26

27      [9] Available at http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-210-representation-under-cja

28

1   indeed have funds to pay a lawyer. *Cf. United States v. Konrad*, 730 F.3d 343, 347 n.3 (3d Cir. 2013)

2   ("[N]o court has interpreted the CJA to require a finding that a defendant provided false information . . .

3   to order reimbursement, nor do we.") And it is well established Rule 17 applies not only to trials, but

4   also to pretrial matters and preliminary hearings. *See* 2 Wright & Henning, Fed. Practice and Procedure

5   § 272 (4th ed. 2009) ("Rule 17 is not limited to subpoenas for the trial. A subpoena may be issued for a

6   preliminary examination, a grand jury investigation, a deposition, for determination of an issue of fact

7   raised by a pre-trial motion, or for post-trial motions."); *United States v. Taylor*, No. 14-117, 2014 U.S.

8   Dist. LEXIS 156604, *4 (C.D. Cal. Nov. 15, 2014) ("[M]any courts . . . have held that Rule 17(c)

9   subpoenas may properly issue in connection with hearings, such as pre-trial motions to suppress.").

10      Donor No. 1 next alleges the WePay subpoena was improper because WePay was directed to

11  send its response to SA Smith as opposed to AUSA Heath. Compl. ¶ 33. But it makes sense and was

12  proper to direct the responsive documents to the case agent so that if necessary, he or she is able to

13  testify about them, including, for example, providing testimony relating to the chain of custody for

14  authentication purposes. Had the documents been sent directly to AUSA Heath, she might have made

15  herself a potential witness in the criminal case. *Cf. Kalina v. Fletcher*, 522 U.S. 118, 130 (1997)

16  ("Indeed, tradition, as well as the ethics of our profession, generally instruct counsel to avoid the risks

17  associated with participating as both advocate and witness in the same proceeding.") (citation omitted).

18      Donor No. 1 also alleges the WePay subpoena was unnecessary because the Free Barrett Brown

19  website already publicly disclosed the amount raised for Brown's legal defense. Compl. ¶ 47. But it is a

20  stretch to suggest the Government's access to evidence of a criminal defendant's financial resources is

21  limited to reading third-party webpages. Financial and transactional questions are typically litigated and

22  decided by resort to *financial record* evidence. Here, to redirect funds a court must "find[] that funds are

23  available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f);

24  *see also United States v. Sayles*, No. 11-30162, 2012 U.S. Dist. LEXIS 40732, *4 (S.D. Ill. Mar. 26,

25  2012) ("Before requiring a defendant to pay funds pursuant to § 3006A(f), the Court must find that

26  funds are 'available' under the statute."). "Assets are available when a defendant has control over or

27  discretionary use of them." *Konrad*, 730 F.3d at 347. Through the subpoena, the Government obtained

28  C 17-0586 MEJ

1    admissible evidence that the funds raised on Brown's behalf were linked to an account that belonged to

2    his mother and thus were "available" under the statute. *See Sayles*, 2012 U.S. Dist. LEXIS 40732, at *4

3    ("The Court may consider funds from family members as 'available' funds based on the plain wording

4    of the statute."). Donor No. 1 grudgingly acknowledges this point: "[e]ven assuming that Defendants

5    needed to subpoena anything from WePay (which assumption Plaintiffs do not concede), the only

6    information necessary to the Motion to Seize was the amount of the money in the WePay account *that*

7    *was available to Mr. Brown*." Compl. ¶ 50 (emphasis added).

8         Donor No. 1 next alleges the WePay subpoena was unnecessary because there was no reason to

9    believe Brown would "dupe his donors by withholding the funds for himself while retaining the services

10   of the public defender." *Id.* ¶ 48. That conclusion is anything but self-evident. The fund was created on

11   September 27, 2012, and by the time the subpoena issued in January 2013, almost four months had gone

12   by and Brown had not notified the court or forwarded the funds to his appointed counsel. It is unclear

13   how long Donor No. 1 thinks the Government had to wait to see if Brown was going to do either.

14        Having failed to sufficiently allege the WePay subpoena was improper or unnecessary, Donor

15   No. 1 hinges the First Amendment claim on whether the language in the subpoena was sufficiently

16   "precise." Compl. ¶ 49. That is a weak hook on which to hang a First Amendment claim, and an

17   erroneous one. A subpoena seeking a complete transaction history to determine if Brown had access to

18   the funds was neither "remote" nor "tenuous," but was in fact appropriate, if not necessary. And it is

19   well settled there is no First Amendment privilege against a subpoena seeking relevant evidence. *Cf.*

20   *United States v. Curtin*, 489 F.3d 935, 953-54 (9th Cir. 2007) (en banc) ("[T]he Supreme Court has held

21   on many occasions in other contexts that opinions and other information that otherwise might be entitled

22   to First Amendment protection are not immune from discovery and use as evidence in court, as long as

23   they are relevant to an issue in a given case."). Finally, even if the subpoena could have been more

24   "precise," that does not mean there was a government conspiracy to retaliate against Brown supporters.

25   The identities of the donors were never made public and even in this litigation, remain anonymous.

26        In the end, when presented with this information, the magistrate judge found "the Governments

27   [*sic*] Motion was filed in the interests of justice and to assure the Defendant is not wrongly receiving

28   C 17-0586 MEJ

1  court-appointed counsel when he should not." 5/30/2013 Order, at 1. Along those same lines, should this

2  Court reach the First Amendment question, it should hold that even if Donor No. 1 had some First

3  Amendment interest in anonymity under the circumstances alleged, the legitimate purpose for issuing

4  the WePay subpoena outweighed that interest as a matter of law, and dismiss Count One with prejudice.

5  ### C. **This Court lacks personal jurisdiction over AUSA Heath and SA Smith.**

6  In addition to the amended complaint's many pleading deficiencies, personal jurisdiction over

7  AUSA Heath and SA Smith in their individual capacities is lacking. To bring an action against a federal

8  employee in her individual capacity, a plaintiff must show the court has personal jurisdiction over each

9  defendant. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *Gilbert v. DaGrossa*, 756 F.2d

10  1455, 1459 (9th Cir. 1985); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) (court could not

11  exercise personal jurisdiction over *Bivens* defendant where defendant had no contacts with forum state).

12  On a motion to dismiss for lack of personal jurisdiction decided on the pleadings, the plaintiff bears the

13  burden of demonstrating that the allegations, taken as true, would establish a prima facie case for

14  jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Donor No. 1 has not carried

15  that burden here. Donor No. 1 does not allege that AUSA Heath and SA Smith reside in California. Nor

16  does Donor No. 1 allege facts that would establish jurisdiction over these defendants as nonresidents.

17  Because this is an individual-capacity suit, the nationwide venue and service of process

18  provisions of 28 U.S.C. § 1391(e) do not apply. *See Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980).

19  This case is thus governed by the general rule that "[f]ederal courts ordinarily follow state law in

20  determining the bounds of their jurisdiction over persons." *Walden*, 134 S. Ct. at 1121. That follows

21  from Federal Rule of Civil Procedure 4(k)(1)(A), which applies here and provides that service of a

22  summons establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court

23  of general jurisdiction in the state where the district court is located[.]" California has authorized its

24  courts to exercise jurisdiction over persons "on any basis not inconsistent with the Constitution of this

25  state or of the United States." Cal Code Civ. Proc. § 410.10. Thus, in order for this Court to exercise

26  personal jurisdiction here, Donor No. 1 must allege facts sufficient to show that the exercise of such

27  jurisdiction "comports with the limits imposed by federal due process." *Walden*, 134 S. Ct. at 1121; *see*

28

*also Boschetto*, 539 F.3d at 1015 ("California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process."). To satisfy due process, a plaintiff must demonstrate that the defendant has certain "minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). The analysis hinges on the *defendant's* contacts with the forum; contacts between the plaintiff or some third party with the forum cannot satisfy the minimum-contacts inquiry. *Id.* at 1122-23; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).

The minimum-contacts inquiry can give rise to two types of personal jurisdiction. First, a plaintiff may allege facts sufficient to establish that the nonresident defendant's contacts with the forum are so "substantial," "continuous," and "systematic" that the defendant is subject to general jurisdiction in that forum. *See Schwarzenegger*, 374 F.3d at 801. Second, a plaintiff may allege facts sufficient to establish specific jurisdiction, that is, that the nonresident defendant's contacts with the forum gave rise to the lawsuit. *See id.* at 801-02. Donor No. 1 does not attempt to allege any facts establishing general jurisdiction. Instead, Donor No. 1 appears to be asserting specific jurisdiction, relying on the allegation that "[b]y sending the subpoena to WePay's headquarters in Palo Alto, California, Defendants engaged in intentional action that was expressly aimed at, and caused harm in, California." Compl. ¶ 6.

Before a court will exercise specific jurisdiction over a nonresident defendant, a plaintiff must allege facts sufficient to demonstrate that (1) the defendant purposefully directed his or her activities at the forum; (2) the lawsuit arises out of those forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two requirements. *Id.* If the plaintiff fails to satisfy either, personal jurisdiction is not established in the forum. *Id.* However, if the plaintiff satisfies both requirements, then the burden shifts to the defendant to present a "compelling case" that the exercise of personal jurisdiction would be unreasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). Donor No. 1 has not satisfied the first requirement because AUSA Heath

and SA Smith did not purposefully direct their activities at California. Even if they did, there is a compelling case that the exercise of jurisdiction would be unreasonable under these circumstances.

### 1.   <u>Defendants did not purposefully direct their activities at California.</u>

The Ninth Circuit treats "purposeful availment" differently in tort and contract cases. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). In tort cases, the court asks whether the defendant "purposefully direct[s] his activities" at the forum state, applying the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* The Ninth Circuit construes *Calder* to impose three requirements: "the defendant allegedly [must] have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 803). The Ninth Circuit has applied this test to constitutional torts, including claims alleging a First Amendment violation. *See Yahoo!*, 433 F.3d at 1206.

Here, Donor No. 1 alleges that the WePay subpoena was an "intentional action that was expressly aimed at, and caused harm, in California." Compl. ¶ 6. To the extent Donor No. 1 is relying on WePay's location in California, the Supreme Court has held that a defendant's relationship with a third party is insufficient to establish personal jurisdiction. *See Walden*, 134 S. Ct. at 1123. That is consistent with how courts treat personal jurisdiction where the conduct was directed at a third-party resident, but the injured plaintiff resides elsewhere. For example, in *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1075 (10th Cir. 2008), the court held that sending a letter to a California company to get it to cancel a Colorado company's auction created personal jurisdiction in Colorado, *not* California, because even though all of the defendant's conduct was expressly aimed at California, the defendant intended to injure a company known to reside in Colorado. Similarly, in *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), the court held that sending a letter to a Virginia company to force a California company into alternative dispute resolution created personal jurisdiction in California, *not* Virginia, because even though all of the defendant's conduct was expressly aimed at Virginia, the defendant intended to injure a company known to reside in California. Finally, in *Klayman v. Deluca*, No. 14-3190, 2015 U.S. Dist. LEXIS 11403, *11-13 (N.D. Cal. Jan. 30, 2015), the court held that

C 17-0586 MEJ

1    issuing a subpoena to a California company that invaded the privacy of a person known to reside in

2    Florida created personal jurisdiction in Florida, *not* California. In all three instances, the conduct aimed

3    at the third-party resident failed to create personal jurisdiction in that state. Instead, it was where the

4    injured plaintiff resided that mattered.

5           But that leads to a different problem. When the WePay subpoena issued, all of the donors to the

6    Free Barrett Brown fund were anonymous. The Ninth Circuit has stated that *Calder* "cannot stand for

7    the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to

8    specific jurisdiction." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012)

9    (quoting *Bancroft*, 223 F.3d at 1087). "[S]omething more" is required; and the Ninth Circuit has

10   "repeatedly stated that the 'express aiming' requirement is satisfied, and specific jurisdiction exists,

11   when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the

12   defendant *knows* to be a resident of the forum state." *Id.* (internal quotations and citation omitted).

13   (emphasis added). That is based on the statement in *Calder* that "untargeted negligence" cannot give rise

14   to specific jurisdiction. *See Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir.

15   1989) ("In *Calder*, the Supreme Court distinguished untargeted negligence, which will not amount to

16   purposeful availment, from intentional and allegedly tortious acts expressly aimed at the forum.")

17   (citation omitted); *Thomas v. Thomas*, No. 14-1096, 2015 U.S. Dist. LEXIS 182157, *10 (C.D. Cal.

18   May 8, 2015) ("In general, express aiming requires more than 'untargeted negligence' that merely

19   happened to cause harm to [a plaintiff].") (citation omitted). Because the donors were all anonymous,

20   AUSA Heath and SA Smith had no idea who donated to the fund or where they resided. For all they

21   knew, none of them lived in California. Or perhaps all of them did, or maybe some did and some did

22   not. The point is that issuance of a subpoena in these circumstances cannot properly be described as

23   conduct targeted at California residents. That one donor allegedly happened to reside in California is

24   simply a random, fortuitous, and attenuated contact insufficient to give rise to personal jurisdiction. *See*

25   *Walden*, 134 S. Ct. at 1123. To suggest otherwise would subject AUSA Heath and SA Smith to personal

26   jurisdiction in every state where any anonymous donor happens to reside. That is not the law.

27          Moreover, the allegation that Donor No. 1 suffered *any* harm in California is belied by other

28   C 17-0586 MEJ

facts in amended complaint. Donor No. 1 alleges that WePay sent its response to SA Smith, a citizen of Texas. Compl. ¶¶ 16, 33. AUSA Heath then filed it in the Texas district court under seal. There is no allegation that as a result of the WePay subpoena Donor No. 1's identity has been made known to a single person residing in California. For all intents and purposes, Donor No. 1's identity in California remains secret. Thus, any alleged injury regarding the loss of anonymity occurred in Texas, not California. On this point, the Ninth Circuit's decision in *Schwarzenegger* is instructive. There, the court held that the use of Arnold Schwarzenegger's image in an Ohio advertisement was not aimed at California because although "'[i]t may be true that [the defendant's] intentional act eventually caused harm to Schwarzenegger in California, and [the defendant] may have known that Schwarzenegger lived in California,' the facts did not establish that the defendant *knew* that the impact of his intentional act would be felt in California." *Wash. Shoe*, 704 F.3d at 677 (explaining *Schwarzenegger* case) (emphasis added). In short, because the publication of the image occurred in Ohio, Schwarzenegger failed to sufficiently allege that the defendant knew any harm would occur in California. The same applies here. With no allegation of any disclosure in California, or that AUSA Heath and SA Smith *knew* the impact of issuing the subpoena would be felt in California, Donor No. 1 fails to allege facts sufficient to establish personal jurisdiction under prongs two and three of the Ninth Circuit's *Calder* test.

### 2. The exercise of personal jurisdiction would be unreasonable.

The Court also lacks personal jurisdiction for an additional reason. It is generally understood that responsive contacts with a forum resident are insufficient to establish personal jurisdiction. Thus, for example, sending a cease and desist letter to a forum resident engaged in infringement does not give rise to specific jurisdiction. That is because "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). Moreover, there is a strong policy in encouraging cease and desist letters because they seek to settle as oppose to litigate disputes. *See Yahoo!*, 433 F.3d at 1208 (sending cease and desist letter to forum resident "is not in and of itself sufficient to establish personal jurisdiction").

The lesson applies here with comparable force. According to the Guide to Judicial Policy, Brown

had an ongoing to duty to inform the district court of any change in his financial status. *See* Guide to Judicial Policy, Vol. 7, Part A, Chapter 2: Appointment and Payment of Counsel, § 210.40.30(c) (referencing criminal defendant's "obligation to inform the court and the appointed attorney of any change in financial status"). As the beneficiary of approximately $20,000 raised for the specific purpose of paying for an attorney and by saying nothing about it, Brown would have been in violation of that continuing duty. AUSA Heath, as an officer of the court with authority to issue the subpoena, had an interest and obligation in assuring that Brown was not abusing public defender resources. *See Hickey*, 997 F. Supp. at 1210. But AUSA Heath and SA Smith had no control over where the evidence of that violation existed. That AUSA Heath needed to subpoena WePay in California was simply a fortuitous circumstance attending her obligation to address Brown's potentially fraudulent conduct in Texas. And there is obviously a strong policy in encouraging prosecutors to trace criminal defendant assets and other funds that could be used to reserve public defender and other Criminal Justice Act resources for those who truly need them. Prosecutors play a vital role in that respect because the courts are not as institutionally well equipped to detect and investigate potential abuses. As with many other aspects of our adversarial system, the federal courts rely on prosecutors to bring such issues, and the evidence needed to resolve them, to the courts' attention. Having done just that in a proceeding in the Northern District of Texas, it would be unfair and unreasonable to subject AUSA Heath and SA Smith to personal jurisdiction in California. Declining jurisdiction is also consistent with the overall reluctance of courts to exercise personal jurisdiction over out-of-state prosecutors who are simply fulfilling their duties in prosecuting cases. Thus, for example, courts have held that it would offend notions of fair play and justice to subject an out-of-state prosecutor to the personal jurisdiction of a foreign court simply for seeking extradition of a defendant who resides in the forum state. *See Wright v. Linhardt*, No. 98-1555, 1999 U.S. Dist. LEXIS 20727, *24 (D. Ore. Sept. 15, 1999); *see also Ray v. Simon*, No. 07-1143, 2008 U.S. Dist. LEXIS 124667, *43 (D.S.C. July 22, 2008). "Otherwise, all discussions between prosecutors attempting to obtain extradition *or information* about a defendant would satisfy personal jurisdiction requirements in a foreign jurisdiction in a subsequent civil action." *Id.* (emphasis added).

When evaluating the fairness of exercising personal jurisdiction, courts also evaluate "(1) [t]he

extent of the defendant['s] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). All seven factors are considered and none is dispositive. *Id.* Because Donor No. 1 could not prove purposeful availment, the first factor weighs heavily in favor of AUSA Heath and SA Smith. *See id.* The burden of having to defend this suit in a remote forum also weighs in their favor. *See id.* With respect to the third and fourth factors, while this federal suit does not present a conflict of sovereignty between Texas and California, Texas would have an equal if not stronger interest in the effects of subpoenas issued from courts located in Texas, and certainly would have a strong interest in tracing funds rightfully payable to a public defender organization in Texas. The fifth factor, which focuses on the locations of witnesses, slightly favors Texas because AUSA Heath, SA Smith, Barrett Brown, and his mother all reside in Texas whereas WePay, Donor No. 1, and Kevin Gallagher are located in California. Finally, with respect to the last two factors, there is no reason to believe that a California court would afford more convenient and effective relief than would a Texas court, and the federal district court in Texas serves as an alternative forum. In short, no single factor weighs in favor of California, and the balance of factors leans strongly in favor of Texas, particularly where Donor No. 1 has failed to sufficiently allege purposeful availment in the first instance. The balance of these factors in addition to the policy concerns in subjecting federal employees to personal suit in a remote forum creates a compelling case that personal jurisdiction here would be both unfair and unreasonable.

For these reasons, this Court should decline to exercise personal jurisdiction over AUSA Heath and SA Smith.

## IV.    CONCLUSION

For all of the foregoing reasons, AUSA Heath and SA Smith respectfully request this Court dismiss Count One, with prejudice, and dismiss them from this suit altogether.

Dated: July 20, 2017                                        Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHAD A. READLER
Acting Assistant Attorney General, Civil Division

BRIAN J. STRETCH
United States Attorney, Northern District of
California

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Trial Attorney, Torts Branch, Civil Division

Attorneys for Defendants Candina Heath and
Robert Smith

## [PROPOSED] ORDER

Having considered Defendants Heath and Smith's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and any opposition, reply, and oral argument presented, the Court finds that Count One fails to state a claim for relief. The Court further finds that it lacks personal jurisdiction over Defendants Heath and Smith. IT IS HEREBY ORDERED that this action is dismissed with prejudice. In making this determination, the Court considered the following documents:

    A.    Subpoena to Testify at a Hearing or Trial in a Criminal Case and Attachment (filed with redactions for purposes of this civil litigation)

    B.    Summary of Account and Affidavit in response to the WePay Subpoena (filed with redactions for purposes of this civil litigation)

    C.    Excerpts from the 09/04/2014 Transcript of Hearing, *United States v. Brown*, No. 12-413 (N.D. Tex.)

The Court also took judicial notice of the following documents from *United States v. Brown*, No. 12-317 (N.D. Tex.):

    D.    The Docket Sheet

    E.    Governments Motion to Direct Funds Be Paid, filed under seal on February 12, 2013 (filed with redactions for purposes of this civil litigation)

    F.    Order, dated March 29, 2013 (ECF 49)

    G.    Order, dated April 17, 2013 (ECF 50)

    H.    Order, dated May 30, 2013 (ECF 64)

    IT IS SO ORDERED.

Dated: _____      _____

                                           MARIA-ELENA JAMES
                                         UNITED STATES MAGISTRATE JUDGE