CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRIAN STRETCH
United States Attorney
Northern District of California

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch, Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch, Civil Division

PHILIP D. MACWILLIAMS
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice

SAMUEL M. SINGER
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883, Washington, DC 20044
Tel. (202) 616-8014; Fax (202) 616-8470
Email: samuel.m.singer@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KEVIN GALLAGHER, on behalf of himself; and DONOR NO. 1, individually and on behalf of all anonymous donors to Free Barrett Brown**,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>**UNITED STATES; CANDINA HEATH; ROBERT SMITH; DOES 1-10, et al.**,<br><br>Defendants. | Case No.: 17-0586 MEJ<br><br>**THE UNITED STATES' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br><br>Date:  September 28, 2017<br>Time:  10:00 a.m.<br>Judge: Maria-Elena James<br><br>Courtroom B, 15th Floor,<br>450 Golden Gate Ave., San Francisco, CA |

1

**TABLE OF CONTENTS**

2

TABLE OF CONTENTS.............................................................................................................ii

3

TABLE OF AUTHORITIES ....................................................................................................iv

4

INTRODUCTION .....................................................................................................................1

5

BACKGROUND........................................................................................................................3

6

I.    Brown's Criminal Case And The WePay Subpoena...................................................3

7

II.   The Amended Complaint............................................................................................5

8

STANDARD OF REVIEW .......................................................................................................6

9

ARGUMENT..............................................................................................................................7

10

I.    Plaintiffs Have Failed To State a Claim for Damages against the United States Based on the
      Alleged SCA Violation...............................................................................................7

11

12

      A.   For Multiple Reasons, the Amended Complaint Does Not Support a Plausible
           Conclusion that the United States Violated the SCA. ........................................7

13

14

           1.   WePay Was Not A Service Provider Covered by the SCA..........................8

15

           2.   WePay Did Not Disclose the Contents of Any Communications. ..........12

16

           3.   The Information Subpoenaed Was Not In "Electronic Storage." ............14

17

18

      B.   Plaintiffs Have Not Plausibly Alleged that the Alleged SCA
           Violations Were Willful...................................................................................16

19

20

      C.   Plaintiffs Have Not Plausibly Alleged Actual Damages...................................17

21

II.   The Court Lacks Jurisdiction Over The SCA Claim...................................................19

22

III.  The Court Lacks Subject Matter Jurisdiction Over The Third Claim For Relief...................21

23

24

      A.   The United States Has Not Waived Sovereign Immunity For The "Official Capacity"
           Claim at Count III .........................................................................................20

25

26

27

28

B.   The FTCA Does Not Waive Sovereign Immunity for Count III ...................................... 22

    1.   Donor No. 1 Failed To Satisfy the Requirements of 28 U.S.C. § 2675(a)................ 23

        a.   The failure of Donor No. 1 to identify himself impeded the agency's investigation........................................................................................... 24

        b.   The administrative claim was not presented under the FTCA. .......................... 25

        c.   The administrative claim fails to state a sum certain ............................................ 27

C.   Alternatively, the Exclusive Remedy Provision of 18 U.S.C. § 2712(d) Bars the Third Claim for Relief. ................................................................................................ 28

D.   Money Damages Are Not A Remedy For A Violation of Article 1, section 1 of the California Constitution, Nor Has Donor No. 1 Alleged Acts or Omissions For Which a Private Person Would Be Liable. .......................................................................... 30

    1.   Money damages are not an available remedy for a violation of Article I, section 1 of the California Constitution. ............................................................................... 31

    2.   The facts alleged do not establish a violation of Article 1, Section 1......................... 32

CONCLUSION ..................................................................................................................... 36

# TABLE OF AUTHORITIES

*ACLU v. Clapper,*
   785 F.3d 787 (2d Cir. 2015) ...................................................................................28

*ACLU v. Clapper,*
   959 F. Supp. 2d 724 (S.D.N.Y. 2013) ...................................................................28

*Adams v. Sumner,*
   39 F.3d 933 (9th Cir. 1994) ...................................................................................16

*Am. Acad. of Pediatrics v. Lungren,*
   16 Cal. 4th 307 (1997) ..........................................................................................35

*Anderson v. United States,*
   127 F.3d 1190 (9th Cir. 1997) ...............................................................................22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................17

*Ball v. United States,*
   461 F. Supp. 311 (D. Nev. 1978) ...........................................................................26

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ...................................................................................6

*Bates v. Arata,*
   2008 WL 820578, *4 (N.D. Cal. March 26, 2008) ................................................31

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................6

*Blair v. United States,*
   304 F.3d 861 (9th Cir. 2002) .................................................................................27

*Blanco v. County of Kings,*
   142 F. Supp. 3d 986 (E.D. Cal. 2015) ..............................................................31, 32

*Brady v. United States,*
   211 F.3d 499 (9th Cir. 2000) .................................................................................23

*Brown v. Buhman,*
   822 F.3d 1151 (10th Cir. 2016) .............................................................................22

*Cadwalder v. United States,*
   45 F.3d 297 (9th Cir. 1995) ..............................................................................24, 25

*Chapman v. Pier 1 Imps. (U.S.), Inc.,*
   631 F.3d 939 (2011) ................................................................................................. 19

*Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (2013) ........................................................................................ 5, 19

*Clausing v. S.F. Unified Sch. Dist.,*
   221 Cal. App. 3d 1224 (1990) .................................................................................. 31

*Clemmons v. City of Long Beach,*
   No. 05-5525, 2006 WL 4599674 (C.D. Cal. July 25, 2006) ...................................... 32

*Crowley v. CyberSource Corp.,*
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) ................................................................ 9, 10

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ................................................................................................. 19

*Dancy v. United States,*
   668 F.2d 1224 (Fed. Cl. 1982) .................................................................................. 26

*Delta Savings Bank v. United States,*
   265 F.3d 1017 (9th Cir. 2001) .................................................................................. 25

*Doe v. Chao,*
   540 U.S. 614 (2004) ............................................................................................ 17, 18

*Ducey v. United States,*
   713 F.2d 504 (9th Cir. 1983) .................................................................................... 31

*Edwards v. First Am. Corp.,*
   610 F.3d 514 (9th Cir. 2010) .................................................................................... 20

*Espinosa v. County of San Francisco,*
   No. 11–02282, 2011 WL 6963094 (N.D. Cal. Sept. 7, 2011) .................................... 32

*Emory v. United Air Lines, Inc.,*
   720 F.3d 915 (D.C. Cir. 2013) .................................................................................. 22

*FAA v. Cooper,*
   566 U.S. 284 (2012) ................................................................................................. 28

*Farmers State Savings Bank v. FmHA,*
   866 F.2d 276 (8th Cir. 1989) .................................................................................... 24

*FDIC v. Meyer,*
   510 U.S. 471 (1994) ........................................................................................ 6, 21-23

*Fikre v. FBI,*
    142 F. Supp. 3d 1152 (D. Or. 2015) ............................................................16

*Fox v. Bd. of Trustees of the State Univ.,*
    42 F.3d 135 (2d Cir. 1994)..........................................................................22

*Gallo Cattle Co. v. U.S. Dep't of Agric.,*
    159 F.3d 1194 (9th Cir. 1998)........................................................................9

*Gollehon Farming v. United States,*
    17 F. Supp. 2d 1145 (D. Mont. 1998) ..........................................................25

*Gordon v. Virtumundo, Inc.,*
    575 F.3d 1040 (9th Cir. 2009)......................................................................10

*Gritchen v. Collier, Inc.,*
    254 F.3d 807 (9th Cir. 2001).......................................................................21

*Haiping Su v. NASA,*
    2013 WL 1663608 (N.D. Cal. Apr. 7, 2013) ...............................................32

*Hernandez v. Hillsides, Inc.,*
    47 Cal. 4th 272 (2009) ........................................................................*passim*

*Hill v. NCAA,*
    7 Cal. 4th 1 (Cal. 1994) ...............................................................30, 32-34

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999) .......................................................................5

*Ibrahim v. Dep't of Homeland Sec.,*
    538 F.3d 1250 (9th Cir. 2008).....................................................................24

*In re Doubleclick, Inc. Privacy Litig.,*
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) .....................................................9, 15

*In re Facebook Internet Tracking Litig.,*
    140 F. Supp. 3d 922 (N.D. Cal. 2015) .....................................................14, 15

*In re Jetblue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..........................................................10

*In re Michaels Stores PIN Pad Litig.,*
    830 F. Supp. 2d 518 (N.D. Ill. 2011) ...........................................................10

*In re Zynga Privacy Litig.,*
    750 F.3d 1098 (9th Cir. 2014).................................................................12-14

*Internmatch v. Nxtbigthing, LLC,*
  2016 WL 1212626 (N.D. Cal. Mar. 28, 2016) ................................................................. 10

*IPC Systems, Inc. v. Garrigan,*
  No. 1:11-CV-3910, 2012 WL 12872028 (N.D. Ga. May 21, 2012) ................................... 9

*Jeffrey H. v. Imai, Tadlock & Keeney,*
  85 Cal. App. 4th 345 (Cal. Ct. App. 2000) ..................................................................... 33

*Jerves v. United States,*
  966 F.2d 517 (9th Cir. 1992) ........................................................................................... 25

*Johnson v. United States,*
  704 F.2d 1431 (9th Cir. 1983) ......................................................................................... 25

*Katzberg v. Regents of Univ. of Cal.,*
  29 Cal.4th 300 (2002) ...................................................................................................... 31

*Kelley v. FBI,*
  67 F. Supp. 3d 240 (D.D.C. 2014) ............................................................... 17, 28, 29, 30

*Klayman v. Obama,*
  957 F. Supp. 2d 1 (D.C. 2013) ......................................................................................... 28

*Latz v. Gallagher,*
  562 F. Supp. 690 (W.D. Mich. 1983) .............................................................................. 263

*Long v. Insight Commc'ns of Cent. Ohio, LLC,*
  804 F.3d 791 (6th Cir. 2015) ........................................................................................... 16

*Low v. LinkedIn Corp., LLC,*
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................... 8, 10

*Lunsford v. United States,*
  570 F.2d 221 (8th Cir. 1977) ........................................................................................... 25

*Mayfield v. United States,*
  599 F.3d 964 (9th Cir. 2010) ............................................................................................. 5

*McAuliffe v. U.S. Dep't of Veterans Affairs,*
  2007 WL 2123690 (N.D. Cal. July 23, 2007) ................................................................. 22

*McClelland v. Modesto,*
  No. 09-1031, 2009 WL 2941480 (E.D. Cal. Sept. 10, 2009) .......................................... 32

*McNeil v. United States,*
  508 U.S. 106 (1993) ......................................................................................................... 24

*Meier v. United States,*
  2006 WL 3798160 (N.D. Cal. Dec. 22, 2006) ..................................................32

*Moe v. United States,*
  326 F.3d 1065 (9th Cir. 2003) ..................................................23

*Moon v. Takisaki,*
  501 F.2d 389 (9th Cir. 1974) ..................................................22

*Optiver Australia Party Ltd. v. Tibra Trading Party Ltd.,*
  2013 WL 256771 (N.D. Cal. Jan. 23, 2013) ..................................................12

*Oregon v. Legal Servs. Corp.,*
  552 F.3d 965 (9th Cir. 2009) ..................................................6

*Palmieri v. United States,*
  72 F. Supp. 3d 191 (D.D.C. 2014) ..................................................19

*Pettus v. Cole,*
  49 Cal. App. 4th 402 (Cal. Ct. App. 1996) ..................................................33

*Pioneer Electronics (USA), Inc. v. Superior Court,*
  40 Cal.4th 360 (2007) ..................................................33, 34

*Quon v. Arch Wireless Operating Co.,*
  529 F.3d 892 (9th Cir. 2008) ..................................................9, 11

*Richards v. United States.,*
  369 U.S. 1 (1962) ..................................................31

*Richardson-Tunnell v. Sch. Ins. Program for Emps.,*
  69 Cal. Rptr. 3d 176 (Cal. Ct. App. 2007) ..................................................31

*Rodriguez v. Kwok,*
  No. 13-04976, 2014 WL 889570 (N.D. Cal. Mar. 3, 2014) ..................................................32

*Rooney v. United States,*
  634 F.2d 1238 (9th Cir. 1980) ..................................................24

*Ruiz v. Gap, Inc.,*
  622 F. Supp. 2d 908 (N.D. Cal. 2009) ..................................................19

*South Delta Water Agency v. DOI,*
  767 F.2d 531 (9th Cir. 1985) ..................................................21

*St. Clair v. City of Chico,*
  880 F.2d 199 (9th Cir. 1989) ..................................................6

*Theofel v. Farey Jones,*
    341 F.3d 978 (9th Cir. 2003) ........................................................................... 11

*Theofel v. Farey Jones,*
    359 F.3d 1066 (9th Cir. 2004) ........................................................... 13, 15, 20

*Thomas R.W. by & Through Pamela R. v. Mass. Dep't of Educ.,*
    130 F.3d 477 (1st Cir. 1997) ........................................................................... 22

*United States v. Allen,*
    53 M.J. 402 (C.A.A.F. 2000) ........................................................................... 14

*United States v. Mitchell,*
    445 U.S. 535 (1980) ........................................................................................ 21

*United States v. Mullins,*
    992 F.2d 1472 (9th Cir. 1993) ........................................................................ 10

*United States v. Orleans,*
    425 U.S. 807 (1976) ........................................................................................ 23

*United States v. Reed,*
    575 F.3d 900 (9th Cir. 2009) .................................................................... 12, 13

*United States v. Smith*
    499 U.S. 160 (1991) ........................................................................................ 22

*United States v. Standefer,*
    No. 6-CR-2674-H, 2007 WL 2301760 (S.D. Cal. Aug. 8, 2007) .............. 10-12

*Valley Bank v. Superior Court,*
    15 Cal. 3d 652 (Cal. 1975) .............................................................................. 33

*Van Alstyne v. Elec. Scriptorium Ltd.,*
    560 F.3d 199 (4th Cir. 2009) .......................................................................... 18

*Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.,*
    724 F.2d 776 (9th Cir. 1984) .......................................................................... 24

*Westbay Steel Inc. v. United States,*
    970 F.2d 648 (9th Cir. 1992) .......................................................................... 22

*Wilson v. Drake,*
    87 F.3d 1073 (9th Cir. 1996) .......................................................................... 22

**STATUTES & REGULATIONS**

12 U.S.C. § 3402 ................................................................................................... 25

18 U.S.C. § 2510 ..................................................................................................*passim*
18 U.S.C. § 2520 ...................................................................................................18
18 U.S.C. § 2701 .................................................................................................7, 28
18 U.S.C. § 2703 ..................................................................................................*passim*
18 U.S.C. § 2707 ...................................................................................................16
18 U.S.C. § 2711 ............................................................................................8, 10, 12
18 U.S.C. § 2712(a) ...............................................................................................*passim*
18 U.S.C. § 2712(b) .........................................................................................20, 26, 28
18 U.S.C. § 2712(d) .............................................................................................28, 29
18 U.S.C. § 2724 ...................................................................................................18
18 U.S.C. § 3006A .................................................................................................17
18 U.S.C. § 3006A(f) ...............................................................................................4
28 U.S.C. §1331 ....................................................................................................22
28 U.S.C. § 1346 ..................................................................................................*passim*
28 U.S.C. § 2401(b) ...............................................................................................24
28 U.S.C. § 2675 ..................................................................................................*passim*
28 U.S.C. § 2679(b) ...............................................................................................22

**LEGISLATIVE MATERIALS**

S. Rep. No. 99-541 (1986) ....................................................................................9, 12
H.R.. Rep. No. 99-647 (1986) .................................................................................8, 16

**OTHER MATERIALS**

David S. Kris & J. Douglas Wilson, *National Security Investigations and Prosecutions (2d)* § 14:9 ............16

Archive of *WePay Privacy Policy*, WePay.com,
https://web.archive.org/web/20130309195717/https://www.wepay.com/legal/privacy-policy
(2011) ..............................................................................................................34

*WePay Privacy Policy – United States*, WePay.com,
https://go.wepay.com/privacy-policy-us (2017) ..........................................................34

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on September 28, 2017, at 10:00 a.m., before the Honorable Maria-Elena James, Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, the United States will and hereby does move this Court for an order dismissing Plaintiffs Kevin Gallagher's and Donor No. 1's First Amended Complaint (FAC). For the reasons set forth in the accompanying memorandum, the United States is entitled to dismissal on all counts pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Court's files and records in this action; Plaintiffs' complaint; any matter that may be judicially noticed; and any other matter that the Court may consider at any oral argument that may be presented in support of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In 2013, while Barrett Brown was awaiting trial on federal criminal charges, the U.S. Attorney's Office issued a subpoena to WePay, Inc. for information about an online crowd-funding campaign Brown's supporters had set up at WePay to raise money for his legal defense. Now, more than four years later, individuals who claim to have created and contributed to the WePay campaign seek to hold the United States liable for damages and other relief on the theory that the subpoena violated federal and state privacy laws. According to the amended complaint, the WePay subpoena was part of a secret "monitoring program" launched by the FBI to surveil Brown's supporters. Plaintiffs allege that law enforcement officials initiated the "unlawful surveillance scheme" to "settle personal scores," to "harass the donors" and "retaliate against them," and to "deter further protected expression." They insist the scheme "continues today" and is "currently being used to monitor Brown's supporters."

The facts are far less interesting. The United States sought information about the crowd-funding campaign because it had reason to believe Brown had wrongly obtained court-appointed counsel. A public defender had been appointed in the criminal case based on Brown's representation that he could not afford to pay for a lawyer. The WePay campaign cast doubt on that representation, and the prosecution used the donation logs it obtained from the subpoena in support of a motion to redirect the WePay funds to the public defender. When Brown's updated financial affidavit revealed $20,000

in undisclosed contributions, the court determined the funds were "clear[ly]" intended for Brown's legal defense and had them deposited in the court's registry. Given this result, and the prosecution's *actual* use of the WePay subpoena, Plaintiffs' already-farfetched theory about a secret surveillance program becomes entirely implausible.

As with their broader factual account, Plaintiffs' legal claims against the United States rest on mischaracterizations about the information the Government sought from WePay and its reasons for seeking it. In Count II, Plaintiffs claim the United States failed to comply with provisions in the Stored Communications Act (SCA) governing law enforcement's access to electronically stored "content" information held by certain network service providers. This claim fails for multiple reasons. First, the SCA does not apply here because WePay was not acting as a regulated service provider when it processed donations from Brown's supporters. Second, even if the statute does apply, the specific SCA rules invoked in the amended complaint do not: the SCA draws a hard line between the "content" of a communication and non-content information about a communication, and even the broadest interpretation of content does not cover the type of transactional logs WePay disclosed to the Government. Third, assuming WePay disclosed content information, Plaintiffs have failed to plausibly allege that the information was being held in "electronic storage" when it was disclosed. Fourth, even if they could identify a statutory violation, the amended complaint still does not support a plausible conclusion that the violation was "willful" or that it caused actual damages – both independent conditions for recovering damages against the United States. And fifth, both plaintiffs can be dismissed on jurisdictional grounds, one (Gallagher) for failing to establish standing, the other (Donor No. 1) for failing to properly present his administrative claim to the agency.

The third claim for relief ("Count III") should be dismissed for lack of subject matter jurisdiction. If Donor No. 1 has abandoned his prayer for damages, the claim is barred by sovereign immunity. If he still seeks damages, his claim should be dismissed because (i) he failed to appropriately present an administrative claim before filing this action; (ii) the claim is barred by the SCA's exclusive-remedy provision, 18 U.S.C. § 2712(d); (iii) a plaintiff cannot recover money damages for a violation of Article 1, Section 1 of the California constitution, which is the only form of relief available under the Federal Tort Claims Act (FTCA); and (iv) Donor No. 1 cannot establish that the conduct at issue would render

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 2 -

a private person liable under state law, a prerequisite for subject matter jurisdiction.

## BACKGROUND

### I. BROWN'S CRIMINAL CASE AND THE WEPAY SUBPOENA[1]

On September 12, 2012, Barrett Brown was arrested on a criminal complaint for threatening law enforcement. *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 5). Brown was appointed a public defender, based on information he provided in a financial affidavit. *Id.* (ECF 10). Over the ensuing months, the criminal case against him would expand significantly, with three federal grand juries returning indictments in three separate criminal cases.[2] Throughout this period, Brown was represented by a public defender at no cost.

In September 2012, just weeks after his arrest, Brown's supporters created a website to raise funds for his legal defense. FAC ¶¶ 24-25. The website provided a donation link to WePay.com, where interested donors could send funds to a WePay account through a credit card or bank transfer. The webpage also offered donors the option to send Brown a message of support. According to the amended complaint, the donations totaled "over $40,000" and came from "hundreds" of individual donors, many of whom sent messages of support. *Id.* ¶¶ 2, 26.

In January 2013, having reason to believe Brown was wrongly receiving court-appointed counsel, the U.S. Attorney's Office issued a trial subpoena to WePay for "any and all records and information for the account of "WePay-FREE-BARRETT BROWN," specifically enumerating six categories of transactional records: (1) subscriber records and information for the user of the account; (2) financial information regarding the user; (3) sources of the funds; (4) physical location of the funds; (5) a

---

[1] Along with the motions to dismiss, Defendants have filed a motion for the Court to take judicial notice of the WePay subpoena, WePay's response, and the court filings from the Brown criminal case.

[2] *See United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 19) (one count for making internet threats, one count for conspiracy to make publically available restricted personal information of an employee of the United States, and one count for retaliation against a federal law enforcement officer); *United States v. Brown*, No. 12-413 (N.D. Tex. Dec. 4, 2012) (ECF 1) (one count for trafficking in stolen authentication features, and eleven counts of aggravated identity theft); *id.* (ECF 69) (superseding information charging Brown with being an accessory after the fact to the unauthorized access of a protected computer and obstructing the execution of a search warrant); *United States v. Brown*, No. 13-30 (N.D. Tex.) (ECF 1) (two counts for obstruction for concealing evidence).

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 3 -

complete transaction history; and (6) all records and information obtained from any verification checks on purchasers. *See* Subpoena to Testify at a Hearing or Trial in a Criminal Case.

In response to the subpoena, WePay produced a three-page "transaction history" reflecting the donations the Brown campaign had received as of January 28, 2013. *See* WePay Summary of Account and Affidavit ("WePay Response"). The transaction history logged (among other items not relevant here) the date of the donation, the donor's name, the payment method, the amount of the donation, and the service fee charged by WePay. *Id.* WePay explained that the transaction history was "made" by WePay "at or near the time of the" logged donations, and that the company generated such "data compilations" in the normal course of business. *Id.* At the time of the response, Brown's mother, Karen Lancaster, administered the account, and 26 individuals had donated a total of $4,411.96 to the fund. *Id.*

In February 2013, the United States filed a motion to have the WePay funds redirected to the court and applied to the cost of the representation the public defender had provided to Brown. *See* Government's Motion to Direct Funds Be Paid, *United States v. Brown*, No. 12-317 (N.D. Tex. Feb. 12, 2013) (filed under seal in the criminal case). A court can order repayment for legal expenses incurred in providing representation to a defendant if it finds that "funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f). In response to the Government's motion, the district court ordered Brown to submit an updated financial affidavit and referred the matter to the magistrate judge. *See* Order, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 49). On April 17, 2013, the magistrate judge reviewed Brown's updated financial affidavit, which revealed that he had amassed some $20,000 in contributions for his legal defense, and ordered the funds placed in the court registry. *See* Order, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 50). A hearing on the Government's motion to redirect the funds was set for May 1, 2013, but, upon learning that Brown since had retained private counsel, the magistrate judge denied the motion, finding that releasing money to Brown's new lawyer would "save the taxpayers more than if the Court forfeited the funds to pay for a portion of the costs of the Federal Public Defender." *See* Order, at 1, *United States v. Brown*, No. 12-317 (N.D. Tex.) (ECF 64) ("5/30/2013 Order"). At the same time, the magistrate judge recognized that the WePay funds were "clear[ly] obtained on behalf of [Brown] for the purpose of

1   retaining counsel," and that the Government's motion "was filed in the interests of justice and to

2   assure the Defendant is not wrongly receiving court-appointed counsel when he should not." *Id.* at 1.

3   **II.   THE AMENDED COMPLAINT**

4      Plaintiffs Kevin Gallagher (on behalf of himself) and Donor No. 1 (individually and on behalf of

5   a putative class of all anonymous donors to the WePay campaign) have sued the United States seeking

6   damages for alleged violations of the SCA (Count II) and declaratory relief for alleged violations of

7   the privacy rights enumerated in the California Constitution (Count III).[3] Gallagher alleges that he set

8   up the WePay campaign to raise money for Brown's legal defense. FAC ¶ 2. Donor No. 1 alleges that

9   he made a donation to the WePay campaign under the assumption that his donation would remain

10  anonymous.[4] *Id.*

11     The amended complaint alleges "on information and belief" that Assistant U.S. Attorney (AUSA)

12  Candina Heath and FBI Special Agent (SA) Robert Smith conspired to draft and serve a subpoena on

13  WePay to "unlawfully identify, target, and surveil supporters of" Brown. *Id.* ¶ 30. Plaintiffs allege that,

14

15     [3] Donor No. 1 also seeks to expand Count I, originally styled as a First Amendment claim against

16  the individual-capacity defendants, to include a claim against defendants Heath and Smith in their
    official capacities, purportedly under the Administrative Procedure Act. But if Donor No. 1 intends

17  to seek prospective relief against the United States based on alleged injuries arising from a subpoena
    the Government issued more than four years ago, he will need to do more than merely repurpose his

18  allegations against the individual-capacity defendants for use under a different legal rubric. Standing
    to seek damages against federal officials in their individual capacities does not serve as a basis for

19  standing to seek equitable relief against the United States, *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037,
    1040 n.1 (9th Cir. 1999) (en banc), and Donor No. 1 has no credible allegation that he is experiencing

20  the type of "certainly impending" First Amendment injury that would warrant prospective relief
    against the United States, *see Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1147 (2013), or that the

21  extraordinary relief he seeks—injunctions requiring the United States to destroy "sensitive" donor
    information and refrain from "similar unlawful surveillance" in the future, FAC at 22—would redress

22  his alleged constitutional injury, *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010). Thus, in
    addition to the grounds for dismissal laid out in the individual-capacity defendants' motion to dismiss,

23  the First Amendment claim against the United States should be dismissed because Donor No. 1 lacks
    standing to seek prospective relief, and because the FAC, by failing to include even a basic statement

24  showing why Donor No. 1 is entitled to prospective relief, falls short of the minimum pleading
    requirements in Rule 8 of the Federal Rules of Civil Procedure.

25

26     [4] Based on his counsel's representation that Donor No. 1 donated to the campaign on or before

27  January 28, 2013, *see* Stipulation RE Anonymity and Case Management, (ECF 23), the United States
    assumes for the purposes of this motion that Donor No. 1's donation is reflected in the transaction

28  history provided in the WePay Response.

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 5 -

as part of this scheme, another subpoena was sent to a web-hosting company called CloudFlare, Inc., but the amended complaint says nothing about this subpoena or what it sought. *Id.* Again without specifics, the amended complaint alleges "on information and belief" that the scheme sought information from social media sites, payment processing companies, financial institutions, and other crowd-funding websites to collect as much information as possible about Brown's supporters. *Id.*

Plaintiffs raise two principal claims against the United States. First, they claim that the Government compelled the contents of communications from WePay without using the legal process required under the SCA. FAC ¶¶ 56-73. They allege that "donations" to the WePay campaign and "messages of support" for Brown "encompass the contents of electronic communications," *id.* ¶ 69; and that the United States unlawfully compelled records relating to the crowd-funding campaign without a search warrant or prior notice to Gallagher or the WePay subscribers, *id.* ¶¶ 64-70. For the alleged violation of the SCA, Plaintiffs seek damages under 18 U.S.C. § 2712(a), as well as an order "directing the FBI and the DOJ to initiate a proceeding to determine whether discipline is warranted against [SA Smith and AUSA Heath]." *Id.* at Prayer for Relief.

Second, in Count III, Donor No. 1 asserts a violation of the right to privacy under Article 1, Section 1 of the California Constitution.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet its burden of establishing subject-matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Rule 12(b)(1) dismissal is proper when the plaintiff fails to establish the elements of standing. *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009). Further, in a suit purportedly brought under the FTCA, Rule 12(b)(1) dismissal is proper where a claim arising out of allegedly tortious conduct by government employees acting in the scope of their employment fails to satisfy each of the six elements set forth at 28 U.S.C. § 1346(b)(1), *see FDIC v. Meyer*, 510 U.S. 471, 477 (1994).

The Court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 6 -

699 (9th Cir. 1990).

**ARGUMENT**

I.  **PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR DAMAGES AGAINST THE UNITED STATES BASED ON THE ALLEGED SCA VIOLATION.**

Congress created a limited waiver of sovereign immunity for suits against the United States to recover money damages for willful violations of the SCA. 18 U.S.C. § 2712(a). To state a claim under § 2712(a), Plaintiffs must plausibly allege not only that the Government violated the SCA, but also that the alleged violation was "willful" – *i.e.*, that a federal official carried out the offending conduct knowing it was against the law. Further, to recover damages against the United States for a violation of the SCA, Plaintiffs must first show that the violation caused some form of pecuniary harm. Plaintiffs have made none of these showings.

**A.  For Multiple Reasons, the Amended Complaint Does Not Support a Plausible Conclusion that the United States Violated the SCA.**

Congress enacted the Stored Communications Act, 18 U.S.C. §§ 2701-2712, as Title II of the Electronic Communications Privacy Act (ECPA). The SCA addresses stored electronic communications in a variety of ways, both protecting the privacy interests of internet users and creating channels for law enforcement to obtain information from electronic service providers. *See* S. Rep. No. 99–541, at 3 (1986).

The government's ability to compel service providers to disclose their customers' information is governed by 18 U.S.C. § 2703. Section 2703 sets up a tiered system that offers varying standards of legal protection depending on whether the information sought is "content" or non-content; whether it has been opened or remains in "electronic storage" pending delivery; and whether it is being held by "electronic communication services" (ECS), which give customers the ability to send and receive communications, or "remote computing services" (RCS), which store or process their customers' data. *See id.* § 2703(a)-(c). Like the structure of the SCA more broadly, the multiple tiers of protection in § 2703 reflect congressional judgments about what kinds of information implicate greater or lesser privacy interests. Thus, subsection (a), the highest tier, protects content information held in electronic storage by an ECS. Subsection (b), the middle tier, protects content information held by an RCS. Subsection (c), the lowest tier, protects non-content record information concerning an ECS or RCS.

This case is about subsections (a) and (b), and specifically the claim that the Government compelled WePay to disclose the "contents" of communications protected by the SCA without valid legal process. Under subsection (a), law enforcement needs a search warrant to compel disclosure of contents of communications held by an ECS in "electronic storage" for 180 days or less, *id.* § 2703(a); after 180 days, it can use a subpoena or a special court order, but only if notice is provided to the service provider's customer, *id.* § 2703(b)(B)(i). Under subsection (b), information in RCS storage is treated in the same manner as information held in ECS storage for more than 180 days: law enforcement needs some combination of a subpoena or special court order and notice to the service provider's customers. *Id.*

The Government did not follow subsections (a) or (b) when it sought records from WePay (there was no search warrant, and the subpoena did not come with notice to subscribers), but that hardly means it broke the law. To state a claim, Plaintiffs have to establish that the information subpoenaed was protected by §§ 2703(a) or (b) in the first place – that is, that WePay was (i) an "electronic communications service" or a "remote computing service" (ii) holding the "contents of a wire or electronic communication," (iii) in "electronic storage." If the allegations fail to support any one of these showings, the SCA claim must be dismissed. As set forth below, the SCA claim fails at each turn.

### 1. WePay Was Not A Service Provider Covered by the SCA.

In drafting the SCA, Congress sought to regulate the two primary uses of computer networks that existed in 1986: electronic communication services that facilitated "data transmissions and electronic mail" and remote computing services that provided outsourced computer processing and data storage. *See* H.R. Rep. No. 99-647, at 21, 23. Congress designed the SCA around these two types of regulated entities and applied different privacy protections to each. An ECS is defined as any service that "provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). An RCS is "the provision to the public of computer storage or processing services by means of an electronic communications system." *Id.* § 2711(2). "Whether an entity is acting as an RCS or an ECS (or neither) is context dependent, and depends, in part, on the information disclosed." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1023 (N.D. Cal. 2012). If a particular communication does not fall within the scope of either category of provider, the communication is not protected by the SCA.

The allegations in the amended complaint do not support a claim under either an ECS or an RCS theory. While WePay may act as an ECS with respect to some communications (for example by providing messaging services to users through the WePay website), WePay acted in neither an ECS nor an RCS capacity with respect to the particular communications at issue here – namely, the donations reflected in the transactional logs disclosed to the Government. In allowing users to transfer money, WePay does not provide users with the "ability to send or receive" electronic communications," or with "computer storage or processing services," as those terms are defined in the SCA. WePay therefore is not a covered provider under the SCA.

ECS: When a website "provides to users thereof the ability to send or receive wire or electronic communications," it is acting as an ECS. 18 U.S.C. § 2510(15). When Congress enacted the SCA, it identified "telephone companies" and "electronic mail companies" as the quintessential examples of ECS providers, because both provide a service that allows members of the public to communicate with each other. *See* S. Rep. No. 99-541, at 14; *see also Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 900-03 (9th Cir. 2008) (text messaging service is a provider of ECS), *rev'd on other grounds*, 560 U.S. 746 (2010). With the expansion of the Internet, the SCA's definition of ECS has come to include Internet service providers (ISPs). *See, e.g.*, *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 643 & n. 4 (E.D. Va. 2004) (America Online); *In re Doubleclick, Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 508 (S.D.N.Y. 2001) (Internet access is electronic communication service). Like telephone and electronic mail companies, ISPs are providers of electronic services because they enable their customers to engage in wire and electronic communications with other parties.

A provider cannot offer ECS with respect to a communication if the service did not provide the user with the ability to send or receive *that specific communication. Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001). For this reason, the SCA's definition of ECS does not extend to entities that merely "sell goods or services on the internet or otherwise make use of internet services to conduct their day to day business activities." *IPC Systems, Inc. v. Garrigan*, 2012 WL 12872028, at *9 (N.D. Ga. May 21, 2012). Such businesses are users of ECS rather than providers of them. Thus, an internet company that facilitates the exchange of gold ownership between users is not covered by the SCA because it does not "*provide*[] users the ability to send or receive electronic communications," but

rather "*utilizes* the ability to send or receive electronic communications to permit the instant transfer of gold ownership between its users." *United States v. Standefer*, No. 6-CR-2674-H, 2007 WL 2301760, at *4 (S.D. Cal. Aug. 8, 2007). Similarly, a retailer that uses PIN pads to process and transfer credit card payment information to outside financial companies is not an ECS because the internet or phone service through which the PIN pad communicates is provided by someone other than the retailer. *In re: Michaels Stores PIN Pad Litig.*, 830 F. Supp. 2d 518, 524 (N.D. Ill. 2011).[5]

Under these precedents, WePay is a user of electronic services, not a provider. *See* 18 U.S.C. § 2510(13), 2711(1) (defining "user" as any person or entity who "uses an electronic communication service" and "is duly authorized" to do so). WePay's customers do not depend on WePay's website for their "ability to send or receive electronic communications," 18 U.S.C. § 2510(15); they get that capability from their own ISPs. *Cf. Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009) (recognizing that ISP is a term generally reserved for companies that provide access to the internet). As with the online gold exchange in *Standefer* and the retailer in *Michaels*, WePay provides customers and donors with the "service which facilitates the data transport," not the "underlying service which transports the data." *Michaels*, 830 F. Supp. 2d at 524. While Plaintiffs allege that WePay enables customers to engage donors and process their donations, FAC ¶ 66, they do not allege that WePay provides the internet service through which customers and donors reach the website.

Further, it is no help to Plaintiffs that some of Brown's donors included messages of support when they sent money to the WePay campaign. Under the context-sensitive test used to classify service providers, the focus is on the specific communication the provider disclosed to the Government. *See Low*, 900 F. Supp. 2d at 1023. Whether WePay acts as an ECS with respect to donor messages is ultimately irrelevant, because WePay did not disclose donor messages in response to the Government's

---

[5] *See also Internmatch v. Nxtbigthing, LLC*, 2016 WL 1212626 (N.D. Cal. Mar. 28, 2016) (insurance company that stored electronic communications with customers online was a consumer of ECS rather than a provider of them); *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (Amazon.com is a user and not a provider ECS, even though it can communicate with customers through email); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (air carrier's online reservation system was not an ECS). *Cf. United States v. Mullins*, 992 F.2d 1472, 1478 (9th Cir. 1993) (airline that provides travel agents with computerized travel reservation system accessed through separate computer terminals can be a provider of ECS).

subpoena. WePay disclosed only the transaction history, and it is WePay's role with respect to the payments reflected in that document—not its role in facilitating messaging relating to the payments—that should determine whether the company was acting as a covered provider. On these facts, the Court has no plausible basis to conclude that WePay acts as an ECS in allowing users to transfer payments through its website.

RCS: Plaintiffs' claim fares no better under an RCS theory. A service provider must meet strict requirements to qualify as an RCS. It must provide the public with "computer storage or processing services by means of an electronic communications system, and customers must use the provider's services "*solely* for the purpose of providing storage or computer processing services." 18 U.S.C. § 2703(b)(2) (emphasis added). The provider cannot be authorized to access the [customer's] content for the purposes of providing any services other than storage or computer processing." *Id.*

A website provides "storage" services when it "operates as a virtual filing cabinet." *Quon*, 529 F.3d at 902. Merely storing information for a website's own back-up purposes does not transform the site into an RCS provider; rather, the subscriber must be using the website's services for "storage." *Id.* at 901-02; *Theofel v. Farey Jones*, 341 F.3d 978, 984-85 (9th Cir. 2003) (where emails not held for long-term storage, website not an RCS); *Standefer*, 2007 WL 2301760, at *5 (transactions on website permitting users to buy and sell gold were not for RCS "storage"). Further, the term "computer processing services" does not refer to every single act a website's server performs in the normal course of business. *See Quon*, 529 F.3d at 902. Instead, it refers to the outsourcing of data processing to a remote third party provider for "sophisticated processing" that could not be accomplished by a user. *Id.* at 902 (The SCA's legislative history "is clear that, before the advent of advanced computer processing programs such as Microsoft Excel, businesses had to farm out sophisticated processing to a service that would process the information.").

Plaintiffs have not alleged that the donations at issue here were held by WePay for storage or processing services. Nothing in the amended complaint suggests that donation information was disclosed while being held in long-term "storage" for WePay's users, or that a user could access these records on WePay similar to a "virtual filing cabinet." Nor do Plaintiffs allege that WePay was "providing computer services" at any time relevant to this case. The amended complaint makes only

1    fleeting reference to "remote computing services" (the term did not appear in the original complaint),

2    and there is no allegation that donors were using WePay "solely" for RCS,[6] or that WePay was not

3    authorized to access the content of their communications for anything other than ECS. Plaintiffs

4    allege nothing more than that WePay runs a money-transfer website. But the type of sophisticated

5    processing contemplated by the SCA's definition of RCS is not performed by standard websites like

6    WePay, *see Standefer*, 2007 WL 2301760, at *5, and the transfer of money from one WePay user to

7    another has nothing do with complex processing.

8         **2.   WePay Did Not Disclose the Contents of Any Communications.**

9         The amended complaint does not support a plausible inference that the Government compelled

10   the disclosure of "content information" from WePay. "Content" is defined only in terms of what it

11   "includes," namely, "any information concerning the substance, purport, or meaning of [an electronic]

12   communication." *Id.* §§ 2510(8), 2711(1). The contents of a communication in a network account are

13   the actual files stored in the account, such as the subject line and body of emails, a voice mail message,

14   or the text of a word processing document. The definition of content does not include "record

15   information," such as activity logs maintained by network providers. Such information is regulated by

16   a different part of the statute. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("[T]he

17   term "contents" refers to the intended message conveyed by the communication, and does not include

18   record information regarding the characteristics of the message that is generated in the course of the

19   communication."); *see also United States v. Reed*, 575 F.3d 900, 914 (9th Cir. 2009) (information about a

20   phone call's "origination, length and time" was non-content record information); *Optiver Australia Pty.*

21   *Ltd. & Anor. v. Tibra Trading Party. Ltd.*, 2013 WL 256771, at *3 (N.D. Cal. Jan. 23, 2013) (distinguishing

22   the body and subject line of an email from "non-content" information identifying recipient, sender,

23   and date sent). The legislative history also confirms Congress's intent to exclude from the definition

24   of "content" the identity of the parties or the existence of the communication or transactional records

25   about it. *See* S. Rep. No. 99-541 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3555, 3567. As with the

26

27   ───────────────
     [6] On the contrary, WePay's response to the subpoena shows that the company stores donor
28   information for at least one purpose other than RCS: as records of transfers of money coming into
     WePay.

1   ECS/RCS analysis, the focus here is the customer information WePay actually disclosed to the

2   Government; the SCA is not concerned with information WePay held but did not disclose, nor with

3   information the Government sought but did not receive. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1075

4   (9th Cir. 2004) (by causing "disclosure of documents that otherwise would have remained private,"

5   the false subpoena "effected an invasion of the specific interests that the [SCA] seeks to protect")

6   (internal citation omitted); *cf.* 18 U.S.C. § 2712(a) (providing cause of action for individuals "*aggrieved*"

7   by willful violations of the SCA).

8          Under these authorities, it should be clear that WePay did not disclose the "content" of donor

9   communications, but rather "record information" reflecting the attributes of such communications –

10   namely, who donated what, when, and by what means. *See* WePay Response. The "transaction history"

11   WePay disclosed is non-content "record information": it was "made" by the service provider "at or

12   near the time" of the communication, it was kept in the normal course of the provider's business, it

13   includes a log revealing who the users are and what they did while online, and it provides "information

14   regarding the characteristics of the message[s]" without revealing what the donors actually said or

15   communicated to the Brown campaign. *Zynga Privacy Litig.*, 750 F.3d at 1106. The statute's text and

16   judicial precedent thus both dictate that this is record information, plainly distinct from content, and

17   outside the scope of section 2703(a) and (b).

18          Further, contrary to the working theory in the amended complaint, the WePay record was not

19   transformed into "content" simply because it revealed the existence of the donations and the identity

20   of the users who made them. That is not how the SCA works, and similarly expansive interpretations

21   of "content" have been rejected in the Ninth Circuit. *See, e.g.*, *Zynga Privacy Litig.*, 750 F.3d at 1107;

22   *Reed*, 575 F.3d at 917. In *Zynga*, for example, the plaintiffs claimed that Facebook had been unlawfully

23   disclosing content information to advertisers each time users clicked on certain links. The court held

24   that a user's Facebook ID and the webpage the user visited were record information, insofar as they

25   simply disclosed discrete attributes of the underlying communications such as the user's name or

26   electronic address. *Id.* The court acknowledged that revealing such attributes could enable advertisers

27   to locate a user's Facebook profile, but ultimately found that prospect irrelevant to the statutory

28   analysis because "[the SCA] do[es] not preclude the disclosure of personally identifiable information;

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 13 -

indeed, [it] expressly allow[s] it," *Zynga Privacy Litig.*, 750 F.3d at 1107; *see also In re Facebook Internet Tracking Litigation*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) (browsing history and user identification information did not constitute content, even though it allowed Facebook to receive personal information about logged-out users and the webpages they visited).

The same reasoning applies here. Just as the disclosure of personally identifying information did not implicate the content of Facebook communications, *Zynga Privacy Litig.*, 750 F.3d at 1107, neither does the disclosure of donor names and activity implicate the content of the actual electronic transmissions sent to WePay. Those transmissions, which often included "messages of support" for Brown, were not disclosed to the Government. And while the document that was disclosed may have revealed details about the underlying transmissions, those revelations do not change the document's status as "record information"; if anything, they reinforce it. *See Zynga Privacy Litig.*, 750 F.3d at 1107; *United States v. Allen*, 53 M.J. 402, 409 (C.A.A.F. 2000) ("log identifying the date, time, user, and detailed internet address of sites accessed by appellant over several months" was "transactional records" under Wiretap Act). In codifying a clear boundary between the content of a communication and record information relating to a communication, Congress recognized that the content/non-content distinction generally provides a consistent and reliable basis for protecting the more sensitive or revealing aspects of communication. To the extent Plaintiffs contend that information that falls on the non-content side of the line should be afforded greater protection, their dispute is with Congress.

### 3. The Information Subpoenaed Was Not In "Electronic Storage."

Even assuming Plaintiffs could plausibly allege that the WePay subpoena compelled the disclosure of "content" information, their own allegations foreclose any conclusion that the information subpoenaed was in "electronic storage" when it was disclosed to the Government. The statutory definition of "electronic storage" is much narrower than its name suggests. The term does not simply mean storage of information by electronic means. Instead, electronic storage refers only to "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* § 2510(17).

The first part of the definition means that the SCA protects only electronic communications

stored for a limited time in the middle of a transmission, *i.e.*, when a service provider temporarily stores a communication while waiting to deliver it. *In re Facebook Internet Tracking Litigation*, 140 F. Supp. 3d 922, 936 (N.D. Cal. 2015). With respect to the second part, although some courts disagree about whether "backup protection" includes only temporary storage pending delivery or also includes "post-transmission storage," *compare Theofel*, 359 F.3d at 1075, *with In re DoubleClick*, 154 F. Supp. 2d at 525, even the broadest interpretation of "backup protection" limits the term to a temporary copy pending delivery of a message or a second copy in case a user needs to download it again, *see Theofel*, 359 F.3d at 1075.

The information WePay disclosed to the Government falls in neither category. The transaction history was not a communication in pre-transmission storage waiting to be accessed by a user. Indeed, it was not a "communication" at all: it was a log of donation activity generated by WePay in the course of its normal business operations. *See* WePay Response. The transaction history was stored permanently, not temporarily, and it was stored for purposes of recordkeeping, not as an incident to its transmission to another location. *Id.*

Further, the transaction history was not in "backup" storage because it had never been, and was never meant to be, retrieved by WePay users. *See Theofel*, 359 F.3d at 1070. Plaintiffs do not allege that individual users had access to WePay transaction histories, but even if they did, the transaction histories presumably could not have been used to retransmit the original donor communications because they were stored in a completely different form and for fundamentally different purposes. Thus, when Plaintiffs allege that WePay stored communications for the "back-up purpose" of "allow[ing] Mr. Gallagher to manually review the donations after they occurred," FAC ¶ 71, they almost certainly are referring to the original donor communications, not the transaction history WePay kept for its own records. In any case, whatever information WePay provided to Gallagher for processing and review was not being stored for "backup" purposes. Even under the broadest reading of its scope, backup storage has been limited to situations in which an ISP is holding a previously delivered message as a duplicate copy to be used in the case of loss or unavailability. *See Theofel*, 359 F.3d at 1070. Here, Plaintiffs allege only that Gallagher was given access to donor communications through WePay's website; there is no allegation that the communications he reviewed were backup

copies stored by WePay for later retrieval, and indeed no reason to believe WePay had cause to create

such copies in the first place.

**B. Plaintiffs Have Not Plausibly Alleged that the Alleged SCA Violations Were Willful.**

The SCA claim can be dismissed on the independent ground that Plaintiffs have failed to allege

the type of culpable conduct required by 18 U.S.C. § 2712(a). Under this provision, a civil cause of

action "against the United States to recover money damages" may be brought by "any person who is

aggrieved by any *willful* violation of the Act."

To establish that the Government committed a "willful violation" of the SCA, Plaintiffs must

plausibly allege that the offending official knew her conduct was unlawful. Congress understood

"willful" in this context as being synonymous with intentional. *See* David S. Kris & J. Douglas Wilson,

*National Security Investigations and Prosecutions (2d)* § 14:9; *Adams v. Sumner*, 39 F.3d 933, 935-36 (9th Cir.

1994) (legislative history of the Wiretap Act shows that "willful" means "done with a bad purpose");

H.R. Rep. No. 99-647, at 64 ("knowing" under SCA does not encompass "reckless" or "negligent"

conduct).[7]  Further, by using "willful" to directly modify "violation" (rather than the act that caused

the violation), Congress made it clear that "willful violation" is not meant to differentiate between

deliberate and unwitting conduct; it is meant to differentiate between deliberate and unwitting *violations*.

*See Long v. Insight Comm'ns of Cent. Ohio, LLC*, 804 F.3d 791, 797 (6th Cir. 2015) ("it is the conduct

constituting the [SCA] violation (not just the act of disclosure) that must have been knowing or

intentional"); *Fikre v. FBI*, 142 F. Supp. 3d 1152, 1170 (D. Or. 2015) (dismissing statutory claims under

Section 2712 because plaintiff failed "to allege facts to support the proposition that the surveillance

information was disclosed for an *unlawful purpose*") (emphasis added).[8]

Plaintiffs have not met their pleading burden to plausibly allege willful conduct. Although the state

---

[7] *But see Fikre v. FBI*, 142 F. Supp. 3d 1152, 1170 (D. Or. 2015) (concluding that "willful violations" under section 2712 encompass both knowing and reckless violations).

[8] By comparison, the general cause of action for the SCA, from which the United States is expressly exempted, provides a cause of action for damages for anyone aggrieved by a violation of the SCA "in which *the conduct constituting the violation* is engaged in with a knowing or intentional state of mind."  18 U.S.C. § 2707(a).  It is only if "the *violation* is willful or intentional" that the court may assess punitive damages. 18 U.S.C. § 2707(c).

of mind of the offending government official is an obvious focus of section 2712, the original complaint did not mention the element of willfulness, and the mere recital of the term in the amended complaint cannot save it from dismissal. The amended complaint remains devoid of allegations from which the Court could plausibly conclude that AUSA Heath, SA Smith, or any other federal official willfully violated the SCA. The closest Plaintiffs come to alleging that federal agents knowingly broke the law is their naked assertion that the subpoena was part of a secret "monitoring program" initiated to harass and surveil Brown's supporters. But if this theory were not baseless on its face, it is rendered entirely implausible by the obvious alternative explanation: the Government subpoenaed the information to determine whether Brown was financially eligible for court-appointed counsel.[9] *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.") (citation omitted). Absent a plausible basis to infer that the subpoena was unlawful, *see Kelley v. FBI*, 67 F. Supp. 3d 240 (D.D.C. 2014), the Court cannot accept Plaintiffs' theory and should dismiss the amended complaint.[10]

### C. Plaintiffs Have Not Plausibly Alleged Actual Damages.

Plaintiffs' SCA claim also fails because they failed to plead actual damages resulting from the alleged SCA violation. The plain language of the SCA requires proof of actual damages as a condition to recovering statutory damages. Specifically, in an action against the United States, if a person is aggrieved by a violation of the SCA, the Court may assess as damages "actual damages, but not less than $10,000, whichever amount is greater." 18 U.S.C. § 2712(a)(1).

In *Doe v. Chao*, the Supreme Court interpreted a substantively identical damages provision in the Privacy Act and held that proof of actual damages is necessary. 540 U.S. 614 (2004). The Privacy Act provision at issue in *Doe* provided that in cases in which the United States had willfully violated the

---

[9] After saying nothing about the 18 U.S.C. § 3006A motion in the original complaint, Plaintiffs now seek to cast doubt on the propriety and necessity of the Government's motion, with the aim of discrediting its stated reasons for issuing the subpoena. FAC ¶¶ 47-50. For the reasons explained in the individual-capacity defendants' motion to dismiss, none of these arguments withstand scrutiny.

[10] Indeed, even if there were a "secret monitoring program," that alone does not support a plausible conclusion that any subpoena issued in service of such a program would necessarily violate the SCA.

1   Act, it would be liable for "actual damages sustained by the individual as a result of the refusal or

2   failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000.' 5 U.S.C.

3   § 552a(g)(4)(A). The Court concluded that Congress used the phrase "actual damages sustained" to

4   "make specific provision . . . for what the victim within the limited class may recover," 540 U.S. at 620,

5   and that the "simplest reading" of the "a person entitled to recover" clause "looks back to the

6   immediately preceding provision for recovering actual damages." *Id.* A contrary view "simply pays no

7   attention to the fact that the statute does not speak of liability (and consequent entitlement to

8   recovery) in a freestanding, unqualified way, but in a limited way, by reference to enumerated damages."

9   *Id.* at 621.[11]

10      Section 2712(a)(1) mirrors the language construed by the Supreme Court in *Doe.*  Like the Privacy

11   Act, the SCA limits an award of damages to the "actual damages" suffered, thereby "mak[ing] specific

12   provision . . . for what a victim . . . may recover." *Doe*, 540 U.S. at 620. And like the Privacy Act, the

13   SCA qualifies that limitation with a minimum dollar amount—"but not less than $10,000"—which

14   "looks back to the preceding provision for recovering actual damages." *Id.* The principal difference

15   between the two provisions is the SCA's use of the phrase "whichever is greater" ("actual damages,

16   but not less than $10,000, whichever is greater"), but that language does not alter the statutory analysis

17   or make it any more likely that the preceding phrase ("not less than $10,000") is referring to statutory

18   damages. If Congress wanted a different result, it would have been easy enough to say so, as it did in

19   the Wiretap Act (which, like the SCA, is part of the ECPA): "the court may assess as damages

20   whichever is greater of . . . the sum of the actual damages suffered . . . or statutory damages of

21   whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2);

22   *see also* The Driver's Privacy Protection Act, 18 U.S.C. § 2724 ("actual damages, but not less than

23   liquidated damages in the amount of $2,500").

24      Under this framework, the SCA claim fails because Plaintiffs have not asserted actual damages

25

26   _____

27   [11] Relying on *Doe*, several courts have construed the general damages provision in the SCA to restrict statutory damages only to plaintiffs who first proved that they suffered actual damages. *See, e.g., Van Alstyne v. Elec. Scriptorium Ltd.*, 560 F.3d 199 (4th Cir. 2009).

28

from an adverse effect caused by the alleged violations. Plaintiffs do not allege that the information disclosed had quantifiable value, or that the disclosure of the donation information led to consequential harm – for example, that someone exploited the information in a way that caused an actual financial loss to the Plaintiffs. Rather, Plaintiffs allege that they suffered actual damages, in the form of a "cognizable First Amendment injury," when the "veil of their anonymity was unlawfully pierced" by the WePay subpoena. FAC ¶ 69.  But courts uniformly have rejected the suggestion that disclosure of personal information, by itself, constitutes actual damages, *see, e.g.*, *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), *aff'd,* 380 F. App'x 689 (9th Cir. 2010), and Plaintiffs cannot overcome this shortcoming simply by describing the statutory violation in constitutional terms[12]

## II.   THE COURT LACKS JURISDICTION OVER THE SCA CLAIM.

Beyond the merits, neither plaintiff has met his burden of establishing that the Court has jurisdiction over the SCA claim. For his part, Gallagher lacks standing to sue because he has not been harmed by the alleged violation of the statute. And Donor No. 1's claim is barred by sovereign immunity because he failed to properly present his administrative claim to the agency under the procedures in the FTCA.

First, Gallagher has not alleged factual matter sufficient to establish his standing to sue under the SCA. To establish Article III standing, plaintiffs must identify an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.  *Clapper*, 133 S. Ct. at 1147. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006). *See Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 947 (2011) ("The existence of federal standing 'often turns on the nature and source of the claim asserted.'"). Where standing is predicated on the invasion of a statutory right, the "standing question . . . is whether the constitutional or statutory provision on which the

---

[12] In addition to damages, the plaintiffs seek a declaration that the United States violated the SCA and an order "directing the FBI and the DOJ to initiate a proceeding to determine whether discipline is warranted against [Agent Smith and AUSA Heath]."  However, there is no waiver of sovereign immunity for equitable claims against the United States under the SCA. *Palmieri v. United States*, 72 F. Supp. 3d 191, 204 (D.D.C. 2014).

claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (citation omitted). The focus is on whether they personally have been aggrieved by the alleged statutory violation. *Cf. Theofel*, 359 F.3d at 1074 (the challenged subpoena "effected an 'invasion . . . of the specific interests that the [SCA] seeks to protect'") (citation omitted).

Gallagher lacks standing to seek relief under the SCA because he has not alleged that he has been personally aggrieved by a violation of the statute. For the purposes of the standing analysis, an injury occurs under the SCA when a customer's protected content is disclosed. *See Theofel*, 359 F.3d at 1074 (disclosure prompted by unlawful subpoena effected an "invasion . . . of the specific interests that the [SCA] seeks to protect"); *see also* FAC ¶ 4 (alleging that the subpoena violated the SCA because it "sought the 'contents' of 'electronic communications' in 'electronic storage' without a search warrant or prior notice"). Gallagher does not allege that he donated to the WePay campaign, that he received payments from donors in the role of a merchant, or even that he was party to communications captured by the subpoena. Instead, he appears to base his injury on his alleged role in setting up the WePay account. But he never explains what, if anything, his involvement has to do with the alleged SCA violation. Gallagher's allegation that he set up the WePay account does not support a plausible inference that he was aggrieved by the disclosure of records relating to account donations, and even if it did, the record contradicts Gallagher's allegation that he set up the account. *See* WePay Response (identifying Karen Lancaster as the account administrator). For this reason, the SCA claim should be dismissed for lack of jurisdiction as to Gallagher.

Finally, as explained further below, *infra* at section III. B, the Court lacks jurisdiction over Donor No. 1's SCA claim because he failed to properly present his administrative claim under the procedures of the FTCA (28 U.S.C. § 2675(a)), a prerequisite to falling within the limited waiver of sovereign immunity under 18 U.S.C. § 2712(b). Specifically, by proceeding anonymously, Donor No. 1 failed to provide information necessary for the agency to begin an investigation. *See infra* at section III.

**III.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE THIRD CLAIM FOR RELIEF.**

   **A.  The United States Has Not Waived Sovereign Immunity For The "Official Capacity" Claim at Count III.**

The prayer for relief in the original complaint sought "damages according to proof at trial," but that particular request for relief was eliminated in the amended complaint, which seeks only a "declar[ation] that the conduct alleged above violated the California constitutional right to privacy," as well as attorney's fees and costs, and "other relief" the Court deems proper. FAC at 21-22. The amended complaint, which is not a model of clarity, asserts no valid jurisdictional basis to proceed as such. Paragraph 7 refers to a single "individual capacity claim" against AUSA Heath and SA Smith, and indicates that this individual capacity claim is the purported *Bivens* claim at Count I (which, confusingly, also contains a separate prayer for official-capacity injunctive relief). *Id.* ¶ 7; *see also id.* at 21. Paragraph 8 refers to a single "official capacity claim" brought under the Administrative Procedure Act, and also asserts that the declaratory and injunctive relief sought against AUSA Heath and SA Smith is authorized by the Declaratory Judgment Act. Presumably, the "official capacity claim" referred to in Paragraph 8 is the California constitution privacy claim at Count III, as that is the only other claim against AUSA Heath and SA Smith. However, the Court lacks subject matter jurisdiction over the "official capacity" claim at Count III.

The United States is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the United States. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *South Delta Water Agency v. DOI*, 767 F.2d 531, 536 (9th Cir. 1985) (citation omitted) ("The United States is immune from suit except in instances where it consents to being sued."). Absent a specific waiver, sovereign immunity bars the suit for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

"Federal agencies and instrumentalities, as well as federal employees acting in their official capacities within their authority, are similarly immune from suit." *South Delta Water Agency*, 767 F.2d at 536 (citation omitted). Thus, Donor No. 1 cannot bring suit against AUSA Heath and SA Smith in their official capacities. In so far as Count III is brought against the United States, the first asserted basis for jurisdiction is the Declaratory Judgment Act, but that Act merely expands the remedies

available where a valid claim and an independent basis for jurisdiction already exist.  *See Gritchen v. Collier*, 254 F.3d 807, 811 (9th Cir. 2001).  The second asserted basis for jurisdiction is the Administrative Procedure Act ("APA").  The waiver of sovereign immunity in section 702 of the APA is limited to suits seeking judicial review of federal agency action under 28 U.S.C. §1331.  *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998).  Because the alleged violations of state law in Count III do not invoke federal question jurisdiction, Plaintiffs cannot rely on section 702 as a waiver of sovereign immunity.  Finally, if money damages are not sought for the alleged violation of the California constitution, then the FTCA provides no subject matter jurisdiction over Count III, because the FTCA waives sovereign immunity only for an action seeking money damages. 28 U.S.C. § 1346(b)(1); *see also FDIC v. Meyer*, 510 U.S. 471, 477 (1994).  Thus, an action seeking other forms of relief, including declaratory relief and attorney's fees, cannot be brought against the United States through the FTCA.  *See Westbay Steel Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992) (equitable relief unavailable under the FTCA); *Moon v. Takisaki*, 501 F.2d 389, 390 (9th Cir. 1974) ("[T]he Act does not submit the United States to injunctive relief."); *McAuliffe v. U.S. Dep't of Veterans Affairs*, 2007 WL 2123690, *5 (N.D. Cal. July 23, 2007); *Anderson v. United States*, 127 F.3d 1190, 1191-92 (9th Cir. 1997) (attorney's fees and expenses are not available under the FTCA).

**B.  The FTCA Does Not Waive Sovereign Immunity for Count III.**

Alternatively, if Donor No. 1 has not dropped his request for damages, then the United States is the only proper Defendant for Count III pursuant to 28 U.S.C. § 2679(b) and Count III must be treated as a claim brought against the United States under the FTCA, as the FTCA is the exclusive remedy for claims for money damages arising out of the allegedly tortious conduct of Government employees acting in the scope of employment.  *United States v. Smith*, 499 U.S. 160, 163 (1991); *Wilson v. Drake*, 87 F.3d 1073, 1077 (9th Cir. 1996).[13]

---

[13] A boilerplate request for "other relief" generally is not viewed as including money damages. *See Brown v. Buhman*, 822 F.3d 1151, 1169 n.19 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017); *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 921 n.10 (D.C. Cir. 2013); *Thomas R.W. by & Through Pamela R. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997); *Fox v. Bd. of Trustees of the State Univ.*, 42 F.3d 135, 141-42 (2d Cir. 1994).  Nevertheless, if the Amended Complaint were to include

The FTCA is a limited waiver of sovereign immunity. The terms of the United States' consent to be sued as delineated in the FTCA define the parameters of a federal court's jurisdiction to entertain such suits. *See United States v. Orleans*, 425 U.S. 807, 814 (1976) ("the United States can be sued only to the extent that it has waived its immunity"). The FTCA authorizes suits against the United States for:

> money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

For the several reasons set forth below, the FTCA does not waive immunity for Count III and, therefore, this Court must dismiss Count III for lack of subject matter jurisdiction.[14]

### 1.   Donor No. 1 Failed To Satisfy the Requirements of 28 U.S.C. § 2675(a)

The district courts have exclusive jurisdiction of actions brought under the FTCA, "[s]ubject to the provisions of chapter 171 of this title." 28 U.S.C. § 1346(b)(1). One of the sections codified

---

a request for such damages, the additional factual allegations do not alter the United States' position set forth in its motion to substitute for defendants Heath and Smith with respect to Count III. *See* Dkt. # 27. Thus, in so far as Donor No. 1 seeks money damages, the United States reaffirms its position set forth in said motion to substitute, which remains pending before the Court and awaits Donor No. 1's response.

[14] The failure to exhaust administrative remedies pursuant to 28 U.S.C. § 2675(a) before instituting an action in district court requires that the action be dismissed for lack of subject matter jurisdiction. *See Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000). Furthermore, when another statute provides the exclusive remedy for the alleged conduct, then an action under the FTCA must be dismissed for lack of subject matter jurisdiction. *See Moe v. United States*, 326 F.3d 1065, 1068 (9th Cir. 2003) (district court did not have jurisdiction over FTCA claim because Federal Employee Compensation Act provided exclusive remedy). Also, district courts have jurisdiction over a claim brought under the FTCA only if each of the six elements set forth at 1346(b)(1) are met. *See FDIC v. Meyer*, 510 U.S. 471, 477 (1994). Because Donor No. 1 cannot obtain "money damages" for a violation of a violation of the right to privacy under the California constitution, this Court has no subject matter jurisdiction under the FTCA to hear such a claim. Likewise, because a private person could not be liable under the California constitution based on the acts or omissions alleged in the Complaint, another critical element of § 1346(b)(1) is not met, and, thus, subject matter jurisdiction under the FTCA is lacking.

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 23 -

within chapter 171 is 28 U.S.C. § 2675(a), which provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).[15]

To satisfy the requirements of 28 U.S.C. § 2675(a), the administrative claim must contain "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (citations omitted). Thus, § 2675(a) requires that the claimant exhaust certain administrative remedies by presenting his claim for injury or loss of property for consideration and possible settlement by the appropriate Federal agency before instituting an action upon the claim under the FTCA. *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2008); *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995); *accord McNeil v. United States*, 508 U.S. 106, 113 (1993) (requiring "strict adherence to the procedural requirements" of § 2675(a)).

Donor No. 1's administrative claim is defective because of his failure to properly identify himself to the appropriate agency. His administrative claim also is defective because it was presented under the SCA, rather than the FTCA, and because it fails to provide a sum certain for any damages sought in Count III. Thus, the Court must dismiss Count III.

        **a. The failure of Donor No. 1 to identify himself impeded the agency's investigation.**

Donor No. 1's administrative claim is defective because it fails to provide the necessary information for the agency to begin an investigation. In particular, to satisfy 28 U.S.C. § 2675(a), the

---

[15] Furthermore, a tort claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b).

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 24 -

claim, among other things, "must adequately identify the claimant(s)." *Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980); *see also Farmers State Savings Bank v. FmHA*, 866 F.2d 276, 277 (8th Cir. 1989) (the administrative claim must provide "the identity of the claimants") (citing *Lunsford v. United States*, 570 F.2d 221, 226 (8th Cir. 1977); *Gollehon Farming v. United States*, 17 F. Supp. 2d 1145, 1160 (D. Mont. 1998) ("the administrative claim must be filed in the name of the claimant") (citing *Cadwalder*, 45 F.3d at 301), *aff'd* 207 F.3d 1373 (Fed. Cir. 2000).[16]  The administrative claim does not identify Donor No. 1, nor does it provide any information from which the agency could have learned his identity.  By withholding such information, Donor No. 1 precluded the agency from investigating such critical facts as whether Donor No. 1 actually donated to the Fund or, if so, whether his donation was made before or after the subpoena was issued. The refusal to identify himself also precluded the agency from investigating whether or to what extent he was harmed, and, therefore, from assessing whether the claim could or should be settled.  The purpose of the FTCA's administrative claim procedure is "to encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts." *Jerves v. United States*, 966 F.2d 517, 520 (9th Cir. 1992).  Donor No. 1's refusal to provide his identity, which prevented the agency from investigating his claim and assessing whether it should be settled administratively, frustrates the very purpose of the FTCA's claims process.

### b.  The administrative claim was not presented under the FTCA.

Donor No. 1 prematurely instituted this action in district court because he failed to present an administrative tort claim to the appropriate Federal agency, as required by 28 U.S.C. § 2675(a).  The stated basis for the claim is the "VIOLATION OF THE RIGHT TO FINANCIAL PRIVACY ACT AND STORED COMMUNICATIONS ACT PURSUANT TO 12 U.S.C. § 3402, 18 U.S.C. § 2712, & 28 U.S.C. § 2675."  Nowhere does this claim assert a claim for a violation of the right to privacy under the California constitution (or, for that matter, any alleged tort under State law).  Rather, Donor No. 1's administrative claim is based exclusively on the alleged violation of the SCA and the Right to

---

[16] *Accord Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983) (wife of an injured service member could not maintain an action under the FTCA for the loss of her husband's consortium because administrative claim of husband did not adequately identify her as a claimant).

Financial Privacy Act, 12 U.S.C. § 3402.   However, causes of action for violations of federal statutes cannot be brought under the FTCA.  *See Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (claim for violations of Federal civil rights statutes not cognizable under the FTCA). Because the administrative claim is based wholly on the violations of Federal statutes that cannot be the basis for an FTCA action, it failed to exhaust the administrative remedies with regard to Donor No. 1's claims for violation of his right to privacy under the California constitution.

Further bolstering the fact that this administrative claim was not a tort claim presented under the FTCA is the fact that it sought relief under a separate statutory scheme.  The SCA provides that "[a]ny action against the United States under this section may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act, as set forth in [28 U.S.C. § 2675]."  18 U.S.C. § 2712(b)(1).  However, simply because the SCA requires compliance with same procedures governing claims under the FTCA does not convert a claim under the SCA into a claim under the FTCA.  Rather, they are distinct claims brought under separate statutory schemes.  When a claim is presented to a Federal agency under a different statute (here, the SCA), it is not treated as an administrative claim presented under the FTCA.  *See Gordon H. Ball, Inc. v. United States*, 461 F. Supp. 311, 315-16 (D. Nev. 1978) (claim for relief under the Teton Dam Disaster Assistance Act was not an administrative claim for purposes of the FTCA).[17]  This is especially so when, as here, the SCA is the exclusive remedy for the allegedly wrongful conduct.  *See infra* at V, C. A key factor in the *Ball* decision was that if the claimant elected to proceed under the Teton Dam Disaster Assistance Act, he or she could not bring a claim against the United States under any other law, thus evincing the distinction between a claim under the Teton Dam Disaster Assistance Act and a claim under the FTCA.  *Id.* at 316 (citation omitted).  This distinction is even clearer here, as the SCA expressly states that "[a]ny action against the United States under this subsection shall be the exclusive remedy against the United States for any claims within the purview of this section."   18

---

[17] *See also Dancy v. United States*, 668 F.2d 1224, 1228 (Fed. Cl. 1982) (rejecting argument that claim filed with the Merit Systems Protection Board could satisfy the administrative claim filing requirement under 28 U.S.C. § 2675); *Latz v. Gallagher*, 562 F. Supp. 690, 692 (W.D. Mich. 1983) (filing claim under National Flood Insurance Act not sufficient to provide notice of FTCA claim).

U.S.C. § 2712(d).  Thus, a claim under the SCA – which Donor No. 1's administrative claim purports to be – cannot simultaneously be a claim under the FTCA.  Because Donor No. 1 did not also present an administrative tort claim under the FTCA, he has not satisfied 28 U.S.C. § 2675.

### c.  The administrative claim fails to state a sum certain

In *Blair v. United States*, 304 F.3d 861 (9th Cir. 2002), the plaintiff was arrested by the IRS, and he subsequently presented an administrative claim to the IRS for injuries he allegedly suffered while in custody.  In particular, the claim asserted $17,499,436 in lost wages, but, with respect to medical expenses, the claim failed to assert a sum certain, stating instead that "[m]edical expenses are still being incurred, with no end presently in sight."  *Id.* at 863.  The claim did contain medical bills from which, the plaintiff argued, a dollar figure could be discerned.  The Court of Appeals found this argument unavailing, and held that the action was limited to the claim for lost wages, because the claim for lost medical expenses was not properly exhausted based on the failure to provide a sum certain relating to such damages.  *Id.* at 868-69.

The distinction between the relief sought in the administrative claim and the relief now sought pursuant to Count III is even more profound than it was for the different categories of damages available under applicable state tort law that were sought in *Blair*.  The administrative claim seeks $10,100 "in *statutory penalties* per unlawful request per donor" pursuant to 18 U.S.C. § 2712(a).  *See* Exhibit A (emphasis added).  In other words, the administrative claim expressly limits itself to a particular remedy available under the SCA for alleged violations of 18 U.S.C. § 2703.  The Complaint seeks the specific remedy provided by 18 U.S.C. § 2712(a) (per the second cause of action), but, in so far as it also seeks damages (per the third cause of action) for the alleged violation of the right to privacy under the California constitution, the administrative claim failed to include a sum certain for damages caused by this alleged violation. Indeed, it fails entirely to assert such a cause of action at all. Rather, it is limited to particular statutory damages allegedly available under the SCA.  This failure to include a sum certain for the particular types of damages supposedly available under the California constitution, like the failure in *Blair* to include a sum certain for the particular damages relating to medical expenses, precludes an FTCA action based on the alleged violation of the California

constitution.[18]

**C. Alternatively, the Exclusive Remedy Provision of 18 U.S.C. § 2712(d) Bars the Third Claim for Relief.**

The SCA governs the disclosure of wire and electronic communications and transactional records possessed by third-party service providers of electronic communications or providers of remote computing services. 18 U.S.C. § 2701 *et seq.* The SCA also provides for civil remedies if the Act's provisions are violated. Section 2712 provides that a civil action "against the United States to recover money damages" may be brought by "any person who is aggrieved by any willful violation of the Act." 18 U.S.C. § 2712(a). As noted above, in order to bring suit under this section, the plaintiff is required to first present a claim "to the appropriate department or agency under the procedures of the Federal Tort Claims Act, as set forth in title 28, United States Code." 18 U.S.C. § 2712(a), (b)(1). If these prerequisites are satisfied, a court is authorized to award a prevailing plaintiff money damages. Because Congress has deemed a cause of action that falls within the purview of section 2712(a) to be the "exclusive remedy against the United States," actions brought against the United States for money damages based upon other statutes or, in this case, a state constitution, are precluded. *See Kelley, et al. v. FBI*, 67 F. Supp. 3d 240 (D.D.C. 2014); *see also ACLU v. Clapper*, 959 F. Supp. 2d 724, 739-40 (S.D.N.Y. 2013) (citing §2712(d), court held that the waiver of sovereign immunity in the Administrative Procedure Act ("APA") did not apply in an action brought under FISA); *Klayman v. Obama*, 957 F. Supp. 2d 1, 23 n. 30 (D.C. 2013) ("Section 2712's provision of a certain remedy, money damages, for violations of only certain provisions of FISA should be read to further show Congress's intent to preclude judicial review of APA claims for injunctive relief by third parties regarding any provision of FISA, including section 1861."), *vac. and rem. on other grds*, 800 F.3d 559 (D.C. Cir. 2015); *cf. ACLU v. Clapper*, 785 F.3d 787, 809-10 (2d Cir. 2015) (in holding that section 2712(d) did not preclude judicial

_____

[18] The SCA permits the recovery of a minimum statutory penalty – which is what the administrative claim sought – or "actual damages." 18 U.S.C. § 2712(a). "Actual damages" has been defined by the Supreme Court (in the context of the Privacy Act) to mean "special damages for proven pecuniary loss." *FAA v. Cooper*, 566 U.S. 284, 298 (2012). Even if the administrative claim provided a sum certain for "actual damages" under the SCA, Donor No. 1 would still encounter the same problem posed by *Blair* in that the administrative claim does not state a sum certain for other types of damages supposedly available under California law.

DEFS.' MOT. TO DISMISS; 17-0586-MEJ - 28 -

review, under the APA, of violations of Wiretap Act, SCA, and provisions of FISA, court found that the "'exclusive remedy' provision applies only to claims within the purview of the remedial section, which does not cover all of FISA but rather specifies those FISA provisions to which it applies.")

*Kelley*, 67 F. Supp. 3d 240 (D.D.C. 2014), is analogous because the court dismissed a claim against the United States for equitable relief, holding that section 2712(d) precluded plaintiffs from relying on the APA to bring a claim that fell within the purview of the SCA.   In that case, recipients of anonymous e-mails, who were being investigated by the FBI, sued various federal agencies and individual federal employees, alleging violations of the Privacy Act, the SCA, the Fourth and Fifth Amendments to the U.S. Constitution, and the laws of various states.  With respect to the SCA claim, the amended complaint alleged that the United States failed to provide plaintiffs with notice that it accessed and publicly disclosed their stored communications.  In dismissing this claim, the court found that the SCA waives sovereign immunity in section 2712(a) in the following limited manner:  (1) section 2712 only established an action for money damages against the United States and, (2) the waiver is only triggered after the plaintiff has satisfied the administrative claim requirements of the FTCA, which the Plaintiffs failed to do.   Plaintiffs did not dispute that they failed to satisfy the FTCA's prerequisites, but argued that presentment was not required because they were seeking injunctive and declaratory relief under the APA, which allegedly created a vehicle for them to seek equitable relief for the alleged SCA violations and a waiver of sovereign immunity to provide the court with jurisdiction.  In rejecting this argument, the court pointed out that the APA may serve as a waiver of sovereign immunity under certain circumstances, but "it cannot be invoked where another statute 'expressly or impliedly forbids the relief which is sought," stating that "[t]he Stored Communications Act does exactly that." 67 F. Supp. 3d at 267 (citation omitted).   The court further explained that, in amending the SCA when it passed the PATRIOT Act in 2001, Congress "took several steps that support the conclusion that the APA cannot serve as a vehicle to bring SCA claims."  *Id.* at 268.   In noting that one of those steps was a Congressional declaration in section 2712(d), the court made the following finding:

> This means that a cause of action brought under section 2712(a) 'shall be the exclusive remedy against the United States' for any claim that the United States violated one of

the substantive provisions of the SCA.  This is another clear indication that Congress intended to preclude actions under the APA when it enacted section 2712.  This reading is not inconsistent with the legislative history that indicates that Congress sought to strengthen the protection offered to individuals to discourage violations of the SCA by law enforcement.

67 F. Supp. 3d at 268 (citations omitted).

This argument applies with equal force to the Third Claim for Relief because although the Second and Third Claims for Relief assert different causes of action against the United States (i.e., violations of the SCA and the California constitutional right of privacy), *see* FAC at ¶¶ 56-79, they are based on the same event—the WePay Subpoena—which Plaintiffs allege falls within the purview of the SCA. *See id.* at ¶ 4 ("The WePay Subpoena violated the Stored Communications Act . . ."), ¶ 5 ("The WePay Subpoena violated the California constitutional right of privacy. . . .").  More specifically, the Complaint alleges the WePay Subpoena violated the SCA "because it sought the 'contents' of 'electronic communications' in 'electronic storage' without a search warrant or prior notice to Mr. Gallagher, Donor No. 1, or any other affected donors."  *Id.* at ¶ 4. Based upon this event, it further alleges the "true goal of the WePay Subpoena . . . was to facilitate the unlawful surveillance of the anonymous donors of the crowdfunding campaign," *id.* at ¶ 33 which is the only grounds supporting the Third Claim for Relief. *Id.* ¶ 74.

Because Congress has deemed a cause of action that falls within the purview of section 2712(a) to be the "exclusive remedy against the United States," the Third Claim for Relief asserted against the United States under the FTCA is precluded and, therefore, should be dismissed with prejudice.

### D.  Money Damages Are Not A Remedy For A Violation of Article 1, section 1 of the California Constitution, Nor Has Donor No. 1 Alleged Acts or Omissions For Which a Private Person Would Be Liable.

Article I, section 1 of the California constitution states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  The FTCA waives sovereign immunity only for suits seeking money damages. 28 U.S.C. § 1346(b)(1).  Because a plaintiff is not entitled to money damages for a violation of this California constitutional provision, this Court lacks jurisdiction over this claim.  Even if money damages were a

possible remedy, this claim still must be dismissed because Donor No. 1 cannot establish the threshold elements of a violation of this provision, and, in any event, the gathering of the information was justified when balanced against the United States' "competing interests." *Hill v. NCAA*, 7 Cal. 4th 1, 38-40 (Cal. 1994).[19]

### 1. Money damages are not an available remedy for a violation of Article I, section 1 of the California Constitution.

It has not been established under California law that a violation of the California constitutional right to privacy contained in Article I, section I gives rise to a private cause of action for money damages. The California Supreme Court has yet to rule on this issue, and has noted that "it is an open question whether the state constitutional privacy provision, which is otherwise self-executing and serves as a basis for injunctive relief, can also provide direct and sole support for a damages claim." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (citing *Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th 300, 313 n. 13 (2002)). The lower California courts have consistently held that monetary damages are not a remedy for a violation of the right to privacy under the California constitution. *See, e.g., Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990) (Article I, Section I of the California constitution affords only a right to injunctive relief, but does not afford a right to money damages); *accord Richardson-Tunnell v. Sch. Ins. Program for Emps.*, 69 Cal. Rptr. 3d 176, 184 (Cal. Ct. App. 2007) ("[T]ort liability for damages . . . was not an intended result" of the 1972 ballot adoption of privacy into the constitution.). Furthermore, district courts within the Ninth Circuit that have analyzed and addressed the issue also have held that such a cause of action for money damages does not exist. *See Bates v. Arata*, 2008 WL 820578, *4 (N.D. Cal. March 26, 2008) (holding that a private right of

---

[19]  Solely for purposes of this motion, the United States assumes without conceding that California's constitution is applicable. It should be noted, however, that under the FTCA a court is to apply the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). This action arises out of the issuance of a subpoena in Texas. Thus, the Court would look to Texas choice of law rules to determine the applicable law. *See Ducey v. United States*, 713 F.2d 504, 508 n.2 (9th Cir. 1983) (in applying "the law of the place where the act or omission occurred" pursuant to section 1346(b), the whole law "including the choice of law principles" applies) (citing *Richards v. United States*, 369 U.S. 1, 11 (1962). However, the court need not resolve the choice of law question at this point, because Count III fails as a matter of law under California law.

action for damages under Article I § 1 does not exist); *see also Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) (holding that "the California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages") (citation omitted); *Clemmons v. City of Long Beach*, No. 05-5525, 2006 WL 4599674, at *11 (C.D. Cal. July 25, 2006), *rev'd on other grounds*, (violation of Article 1, Section 1 of the California Constitution does not support a claim for damages).[20] Given the California Supreme Court's reticence to provide monetary damages to remedy constitutional violations, and the Court of Appeals' statement that tort liability was not intended for this specific constitutional right, the Court should not find a cause of action for damages here. Accordingly, the Court has no jurisdiction over this claim pursuant to § 1346(b)(1).

**2.   The facts alleged do not establish a violation of Article 1, Section 1.**

Even if one could recover money damages for a violation of this provision of the California constitution, Donor No. 1 cannot do so under the circumstances alleged here. To obtain relief under this provision, a plaintiff must establish: (a) a legally protected privacy interest; (b) a reasonable expectation of privacy under the circumstances; and (c) conduct by the defendant that constitutes a serious invasion of privacy. *Hill*, 7 Cal. 4th at 39–40; *Hernandez*, 47 Cal. 4th at 287 (citation omitted). A defendant can prevail in a state constitutional privacy case by negating any of the three elements, or by proving that the alleged invasion "substantially furthers one or more countervailing interests."

---

[20] *Accord Rodriguez v. Kwok*, No. 13-04976, 2014 WL 889570, *4 (N.D. Cal. Mar. 3, 2014) ("the California Constitution does not provide a private right of action for damages to remedy an asserted violation of Article 1, Section 15 of the California Constitution."); *Espinosa v. County of San Francisco*, No. 11–02282, 2011 WL 6963094, *3 (N.D. Cal. Sept. 7, 2011) (citing cases holding that money damages not available for violations of various sections of Article 1 of the California Constitution); *McClelland v. Modesto*, No. 09-1031, 2009 WL 2941480, at *12 (E.D. Cal. Sept. 10, 2009) (money damages not available for violation of Article 1, section 7(a) or Article 1, section 13 of the California Constitution). *But see, e.g., Haiping Su v. NASA*, 2013 WL 1663608 (N.D. Cal. Apr. 7, 2013); *Meier v. United States*, 2006 WL 3798160 (N.D. Cal. Dec. 22, 2006).  As the court in *Blanco* noted, however, *Haiping Su* and *Meier* "appear to assume, without explicitly analyzing, that there is a private right of action for damages under California constitutional right to privacy." *Blanco*, 142 F. Supp. 3d at 1000 n.6.   The Court thus concluded that "[i]n the absence of affirmative authority that clearly establishes a right to money damages under the California right to privacy, particularly in light of the contrary authority provide by *Clausing*, the Court declines to permit a cause of action for damages under the California Constitution's right to privacy." *Id.*

*Id.*; *Hernandez*, 47 Cal. 4th at 287-88 ("*Hill* and its progeny further provide that no constitutional violation occurs, i.e., a 'defense' exists, if the intrusion on privacy is justified by one or more competing interests.") (citation omitted).[21] In so far as a plaintiff counters that less intrusive alternative means were available, a relevant inquiry is "whether the intrusion was limited, such that no confidential information was gathered or disclosed." *Hernandez*, 47 Cal. 4th at 288. Furthermore, in defending against this claim, a private person does not have to prove that there were no less intrusive means of accomplishing the legitimate objectives. *Hernandez*, 47 Cal. 4th at 297.

The intent of the California constitution is to guard against "the dissemination or misuse of sensitive and confidential information ('informational privacy')." *Hill*, 7 Cal. 4th at 35-36. Specifically, privacy language was added to the constitution to "'prevent[] government and business interests from [1] collecting and stockpiling unnecessary information about us and from [2] misusing information gathered for one purpose in order to serve other purposes or to embarrass.'" *Id.* at 34-35 & 54. Under this mantle, courts have found that the constitutional right covers information of a highly personal nature, such as medical records and financial records held by a bank.[22] By contrast, the fact that someone contributed to a private individual's legal defense fund is not the sort of highly personal information that has warranted constitutional protection, and the Government is unaware of any case law suggesting that such information would be protected by the California constitution. Simply put, such information is not the type that "well-established social norms recognize the need to maximize individual control over." *Hill*, 7 Cal. 4th at 35. Moreover, the information was not "collected" or "stockpiled" and then "misused" in order to "embarrass" those who donated to the fund. *See Hill*, 7

---

[21] "Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court." *Id.* at 40 (citations omitted). Furthermore, "[i]if the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id.* Also, the existence of a sufficient countervailing interest presents a threshold question of law for the court. *Id.*; *see also Hernandez*, 47 Cal. 4th at 293.

[22] *See Valley Bank v. Superior Court*, 15 Cal. 3d 652, 657 (Cal. 1975) (confidential financial affairs); *Pettus v. Cole*, 49 Cal. App. 4th 402, 439 (Cal. Ct. App. 1996) (psychological profile); *Pioneer Elecs., Inc. v. Superior Court*, 40 Cal. 4th 360, 372 (Cal. 2007) (personal information given over to a business); *Jeffrey H. v. Imai, Tadlock & Keeney*, 85 Cal. App. 4th 345, 353 (Cal. Ct. App. 2000) (plaintiff's HIV status).

Cal. 4th at 34-35. Quite the contrary, the information was collected for reasons related to Brown's prosecution, and the Government limited the dissemination of that information by filing it with the court under seal. *Cf. Hill*, 7 Cal. 4th at 54 (noting that the plaintiff could "point to no instances in which [the private information] w[as] disclosed to persons other than NCAA officials and the athlete's own college or university."); *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 371 (2007) ("Protective measures, safeguards and other alternatives may minimize the privacy intrusion. 'For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged.'") (quoting *Hill*, 7 Cal. 4th at 38).

Furthermore, the identification of a privacy interest "is the beginning, not the end, of the analysis." *Hill*, 7 Cal. 4th at 42. A plaintiff must also show that there was a reasonable expectation of privacy under the circumstances. Even if, generally speaking, there were some degree of privacy interest relating to donations to a private individual's legal defense fund, that interest would not extend to the circumstances here. At the time that solicitations were sought, Mr. Brown was facing felony charges and, based on his professed inability to pay for counsel, was appointed counsel at taxpayer expense. A person who then provides financial support to such a person cannot reasonably expect that information relating to that contribution would not be of interest to the prosecuting authorities or the Court. Any claim to an expectation of privacy for the donations made here is especially unsupportable in light of the WePay privacy policy, which clearly states: "WePay may be compelled to share personal information to law enforcement, government officials, or other third parties in the event of a subpoena."[23]

Regarding the last element, the invasion of privacy must be "highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 293 (citation and internal quotation marks omitted). "No community

---

[23] The policy further states: "By using or accessing WePay, you are accepting the practices described in this Privacy Policy." That was the privacy policy as it existed when the Government issued its subpoena in January 2013 and is still the current WePay privacy policy today. *Compare* https://web.archive.org/web/20130309195717/https://www.wepay.com/legal/privacy-policy (2011 WePay privacy policy) *with* https://go.wepay.com/privacy-policy-us (current WePay privacy policy).

could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Id.* at 37. Rather, any invasion must be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* "[T]his element is intended simply to screen out intrusions on privacy that are de minimis or insignificant." *Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 339, 66 Cal. Rptr. 2d 210, 940 P.2d 797 (1997). "Hence, no cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez*, 47 Cal. 4th at 293. Again, there is no case law to support a claim that prosecuting authorities obtaining information via a subpoena relating to financial support for someone facing felony charges is a violation of a privacy interest at all, let alone a "serious" invasion that is "highly offensive."

Finally, even if obtaining such information via subpoena did intrude on privacy interests, that intrusion was in furtherance of legitimate, countervailing interests relating to the prosecution of Brown – to wit, to ensure that Brown was not, at taxpayer expense, wrongly receiving court-appointed counsel based on an inability to pay for his own defense. On February 11, 2013, AUSA Heath filed a motion under seal, seeking an order directing Barrett Brown and his mother, Karen Lancaster, to pay the funds from the WePay account to the clerk of the United States District Court for the Northern District of Texas, for payment to the Federal Public Defender. As noted in this motion, Barrett Brown was arrested on September 12, 2012. During his initial appearance, Brown presented a financial affidavit to the magistrate, who then appointed a federal public defender to represent Brown. Soon thereafter, on September 27, 2012, the WePay account was established for the purpose of soliciting funds for his defense. On or about January 23, 2013, AUSA Heath served the subpoena that is the subject of the Complaint. Upon receiving the information requested, AUSA Heath used the information received to support the motion directing the transfer of funds. Notably, the district court found that United States' motion "was filed in the interests of justice and to assure the Defendant is not wrongly receiving court-appointed counsel when he should not." *United States v. Brown*, Case No. 3:12-cr-317 (N.D. Tex.), Dkt. # 64 at 1. In light of the purpose of the subpoena, the limited use of the information obtained, and the Court's finding that the Government acted in the interests of justice, it is indisputable that there is a sufficient countervailing interest to the supposed privacy interest of

the plaintiff.

## CONCLUSION

For the forgoing reasons, Plaintiffs' claims against the United States must be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

Dated: July 20, 2017                    Respectfully submitted,


CHAD A. READLER
Acting Assistant Attorney General

BRIAN STRETCH
United States Attorney
Northern District of California

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

JAMES G. TOUHEY, JR.
Director, Torts Branch, Civil Division
United States Department of Justice

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch, Civil Division
United States Department of Justice

PHILIP D. MACWILLIAMS
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice

 /s/ *Samuel M. Singer*
SAMUEL M. SINGER
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883
Washington, DC 20044
Tel. (202) 616-8014; Fax (202) 616-8470
Email: samuel.m.singer@usdoj.gov

*Attorneys for the United States*

1

**[PROPOSED] ORDER**

2       Having considered the United States' Motion to Dismiss the First Amended Complaint

3   pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and any opposition, reply, and oral argument

4   presented, the Court finds that it lacks jurisdiction over Counts Two and Three and that Count Two

5   fails to state a claim for relief.  The Court further finds that it lacks jurisdiction over Defendants

6   Heath and Smith. IT IS HEREBY ORDERED that this action is dismissed with prejudice.

7

8   In making this determination, the Court considered the following documents:

9       A.      Subpoena to Testify at a Hearing or Trial in a Criminal Case and Attachment

10      B.      Summary of Account and Affidavit in response to the WePay Subpoena

11      C.      Excerpts from the 09/04/2014 Transcript of Hearing, *United States v. Brown*, No. 12-

12  413 (N.D. Tex.)

13

14      The Court also took judicial notice of the following documents from *United States v. Brown*,

15  No. 12-317 (N.D. Tex.):

16      D.      The Docket Sheet

17      E.      Governments Motion to Direct Funds Be Paid, filed under seal on February 12,

18              2013

19

20      F.      Order, dated March 29, 2013 (ECF 49)

21      G.      Order, dated April 17, 2013 (ECF 50)

22      H.      Order, dated May 30, 2013 (ECF 64)

23      IT IS SO ORDERED.

24      Dated:  _____        _____

25                                              MARIA-ELENA JAMES
                                                UNITED STATES MAGISTRATE JUDGE
26

27

28