1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
    CHARLES S. DONOVAN, Cal. Bar No. 103667
3   GUYLYN R. CUMMINS, Cal Bar No. 122445
    ERIC J. DiIULIO, Cal. Bar No. 301439
4   Four Embarcadero Center, 17th Floor
    San Francisco, California 94111-4109
5   Telephone:    415.434.9100
    Facsimile:    415.434.3947
6   Email:        cdonovan@sheppardmullin.com
                  gcummins@sheppardmullin.com
7                 ediiulio@sheppardmullin.com

8   Attorneys for Plaintiffs

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  Kevin Gallagher, on behalf of himself; and      Case No. 3:17-cv-00586-MEJ
    Donor No. 1, individually and on behalf of
13  all anonymous donors to Free Barrett            **OPPOSITION TO INDIVIDUAL**
    Brown,                                          **DEFENDANTS' MOTION TO**
14                                                  **DISMISS [DKT. 32]**
                    Plaintiffs,
15
          v.
16
    United States; Candina Heath, in her
17  individual and official capacity; Robert
    Smith, in his individual and official
18  capacity; Does 1-10,

19                  Defendants.

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<b><u>Page(s)</u></b>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................ 2

III.   THE COURT SHOULD DENY THE MOTION ............................................. 3

    A.    Standards Applicable To Motion To Dismiss ................................. 3

    B.    The FAC States A Claim For Relief For Violation Of The First
        Amendment Based Upon Defendants' Retaliatory Intent .............................. 4

    C.    The FAC States A Claim For Violation Of The First Amendment
        Because The WePay Subpoena Fails The Balancing Test ............................. 6

        1.    The First Amendment Protects Donor No. 1's Right to Speak and
            Associate Anonymously ...................................................................... 6

        2.    Defendants Had No Interest In Discovering Donor No. 1's
            Identity Or The Amount Of Donor No. 1's Donation ......................... 9

        3.    The WePay Subpoena Violated Donor No. 1's Right to Speak and
            Associate Anonymously .................................................................... 11

            a.    The WePay Subpoena was not issued in good faith ............... 12

            b.    The information sought by the WePay Subpoena did not
               relate to a core claim or defense .............................................. 13

            c.    The information sought by the WePay Subpoena was not
               directly and materially relevant to a core claim or defense .... 13

            d.    The information requested by the WePay Subpoena was
               available from other sources .................................................... 14

        4.    Defendants' Authority Is Inapposite ................................................. 15

    D.    The FAC States A Claim For Violation Of The First Amendment
        Against Defendants In Their Official Capacities ......................................... 20

    E.    The FAC States A Claim Against Defendants In Their Individual
        Capacities ..................................................................................................... 21

        1.    Donor No. 1 is not Required to Seek Money Damages ..................... 21

        2.    Defendants are Subject to Personal Jurisdiction ............................... 22

Case No. 3:17-cv-00586-MEJ
OPPOSITION TO INDIVIDUAL DEFENDANTS' MTD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.    Donor No. 1 need not allege multiple bases for personal jurisdiction.............................................................................22

b.    Defendants' contacts with California establish personal jurisdiction.............................................................................22

c.    Personal jurisdiction would not be unreasonable...................24

IV.    CONCLUSION .........................................................................................25

SMRH:483728326.1
OPPOSITION TO INDIVIDUAL DEFENDANTS' MTD

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## <u>FEDERAL CASES</u>

*Acorn Investments, Inc. v. City of Seattle*
   887 F.2d 219 (9th Cir. 1989)........................................................................ 11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*
   223 F.3d 1082 (9th Cir. 2000)...................................................................... 23

*Beller v. Middendorf*
   632 F.2d 788 (9th Cir. 1980) (overruled on other grounds in
   *Witt v. Dept. of Air Force*, 527 F.3d 806, 820 (2008)) ................................. 20

*Benin v. Center for Study of Popular Culture*
   2007 WL 1795693 (N.D. Cal. Jun. 20, 2007)........................................... 8, 18

*Brainerd v. Governors of Univ. of Alberta*
   873 F.2d 1257 (9th Cir. 1989)...................................................................... 23

*Branzburg v. Hayes*
   408 U.S. 665 (1972) ..................................................................................... 11

*Chevron Corp. v. Donzigger*
   2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)............................................. 18

*Ctr. for Competitive Politics v. Harris*
   784 F.3d 1307 (9th Cir. 2015)...................................................................... 19

*DeGregory v. Attorney Gen. of State of N. H.*
   383 U.S. 825 (1966) ..................................................................................... 11

*Denney v. Drug Enf. Admin.*
   508 F. Supp. 2d 815 (E.D. Cal. 2007)........................................................... 5

*Doe v. 2theMart.com Inc.*
   140 F. Supp. 2d 1088 (W.D. Wash. 2001)............................................. *passim*

*Dudnikov v. Chalk & Vermilion Fine Arts*
   514 F.3d 1063 (10th Cir. 2008)................................................................... 23

*EEOC v. Elrod*
   674 F.2d 601 (7th Cir. 1982)....................................................................... 19

*Eilers v. Palmer*
   575 F. Supp. 1259 (D.Minn. 1984) ............................................................... 8

1

<u>FEDERAL CASES (Cont'd)</u>

2

*Gibson v. Fla. Legislative Investigation Comm.*
    372 U.S. 539 (1963) ................................................................................ 11

3

4

*Gibson v. United States*
    781 F.2d 1334 (9th Cir. 1986) ................................................................. 4

5

*Goland v. United States*
    903 F.2d 1247 (9th Cir. 1990) ................................................................. 6

6

7

*In re Grand Jury Investigation*
    706 F. Supp. 2d 11 (D.D.C. 2009) ...................................................... 7, 16

8

9

*In re Grand Jury Subpoena*
    828 F .3d 1083, 1091 (9th Cir. 2016) ...................................................... 16

10

11

*In re Grand Jury Subpoena to Amazon.com dated Aug. 7, 2006*
    246 F.R.D. 570 (W.D. Wis. 2007) ............................................................ 7

12

*Graphics Props. Holdings v. Asus Computer Int'l, Inc.*
    964 F. Supp. 2d 320 (D. Del. June 28, 2013) ......................................... 22

13

14

*Kentucky v. Graham*
    473 U.S. 159 (1985) ................................................................................ 20

15

16

*Klayman v. Deluca*
    2015 U.S. Dist. LEXIS 11403 (N.D. Cal. Jan. 30, 2015) ......................... 23

17

18

*Klayman v. Deluca*
    2015 WL 427907 (N.D. Cal. Jan. 30, 2015) ....................................... 22, 23

19

20

*Larson v. Domestic and Foreign Commerce Corp.*
    337 U.S. 682 (1949) ................................................................................ 20

21

22

*McIntyre v. Ohio Elections Comm'n*
    514 U.S. 334 (1995) .................................................................................. 7

23

*Mendocino Envtl. Ctr. v. Mendocino County*
    14 F.3d 457 (9th Cir. Cal. 1994) ......................................................... 4, 5

24

25

*Ministerio Roca Solida v. McKelvey*
    820 F.3d 1090 (9th Cir. 2016) .......................................................... 20, 21

26

27

*Monell v. New York City Dep. Of Social Servs.*
    436 U.S. 658 (1978) ................................................................................ 20

28

1

FEDERAL CASES (Cont'd)

2

*Moon v. Rivas*
3     2015 WL 5442435 (S.D. Ill. Sep. 15, 2015) ................................................................. 21

4 *The Presbyterian Church (U.S.A.) v. United States*
    870 F.2d 518 (9th Cir. 1989) ........................................................................................... 20
5

6 *Rich v. City of Jacksonville*
    2010 WL 4403095 (M.D. Fla. Mar. 31, 2010) ............................................................ 6, 8

7
*Rosen v. Port of Portland*
8     641 F.2d 1243 (9th Cir. 1981) ........................................................................................... 7

9 *Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004) ........................................................................................... 24
10

11 *Scott v. Rosenberg*
    702 F.2d 1263 (9th Cir. 1983) ......................................................................................... 19
12

13 *Shapiro v. Lundahl*
    2017 WL 2902799 (N.D. Cal. July 7, 2017) ..................................................................... 3

14
*Six Star Holdings, LLC v. City of Milwaukee*
15     821 F.3d 795 (7th Cir. 2016) ........................................................................................... 21

16 *Talley v. State of California*
    362 U.S. 60 (1960) .............................................................................................................. 7
17

18 *Terracom v. Valley Nat. Bank*
    49 F.3d 555 (9th Cir. 1995) ............................................................................................. 24
19

20 *United States v. Davis*
    785 F.3d 498 (11th Cir. 2015) .................................................................................... 10, 11

21
*United States v. Mayer*
22     503 F.3d 740 (9th Cir. 2007) ..................................................................................... 16, 17

23 *United States v. Nixon*
    418 U.S. 683 (1974) .......................................................................................................... 15
24

25 *United States v. R. Enterprises, Inc.*
    498 U.S. 292 (1991) .......................................................................................................... 16
26

27 *United States v. Reed*
    726 F.2d 570 (9th Cir.1984) ............................................................................................. 15

28

## FEDERAL CASES (Cont'd)

*Walden v. Fiore*
  134 S. Ct. 1115 (2014) ........................................................................ 23

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*
  704 F.3d 668 (9th Cir. 2012) ............................................................... 23

*Worrell v. Henry*
  219 F.3d 1197 (9th Cir. 2000) ............................................................... 4

## FEDERAL STATUTES, RULES & CONSTITUTIONAL PROVISIONS

5 U.S.C. § 702 ........................................................................................ 20

18 U.S.C. § 3006A ................................................................................. 13

Federal Rules of Civil Procedure
  Rule 45 ................................................................................................ 15

Federal Rules of Criminal Procedure
  Rule 17 ........................................................................................ 15, 24

U.S. Constitution, First Amendment ........................................... *passim*

## STATE STATUTES & CONSTITUTIONAL PROVISIONS

Administrative Procedure Act ........................................................ 1, 20, 21

California Constitution Article I, §1 ..................................................... 24

## OTHER AUTHORITIES

Wright, Leipold, Henning, and Welling, *Production of Documentary
  Evidence and Objects – Trial Subpoenas,*
  2 Fed. Prac. & Proc. Crim. § 275 (4th ed. April 2017 update) ..................... 15

SMRH:483728326.1

## I.     INTRODUCTION

Defendants Candina Heath and Robert Smith (collectively "Defendants") Motion To Dismiss The First Amended Complaint ("Motion" or "Mot.") must be denied.  Donor No. 1's First Amended Complaint ("FAC") sufficiently alleges violation of the First Amendment on two separate bases.

First, the subpoena (the "WePay Subpoena") that Defendants sent to WePay, Inc. ("WePay") was designed to chill protected First Amendment expression.  Defendants protest that Donor No. 1 does not sufficiently allege that Defendants intended to do so, but the complete irrelevance and ridiculous breadth of the WePay Subpoena suggest otherwise.  Simply put, there was no basis for Defendants to seek private information regarding individuals who were not alleged to have done anything wrong just because they supported an individual who had criticized the government.

Second, the WePay Subpoena violates the First Amendment because it fails the applicable balancing test.  There can be no dispute that anonymous donations to political causes are core protected expression.  Because Defendants' interest in the identities and financial history of the donors is non-existent, they were not entitled to impose on the First Amendment rights of the donors, particularly with a tool as blunt as the WePay Subpoena.

The FAC states a claim against Defendants in their official capacities, for which the Administrative Procedure Act waives sovereign immunity.  The FAC also states a claim against Defendants in their individual capacities, and Donor No. 1 is entitled to proceed on both bases at this stage of the litigation.

Finally, Defendants are subject to personal jurisdiction because Donor No. 1 is only required to establish one basis for personal jurisdiction, and Defendants do not dispute that they are subject to personal jurisdiction in their official capacities.  Moreover, Defendants reached out to California by sending the WePay Subpoena here, Donor No. 1 suffered harm here, and jurisdiction would not unreasonable.

The constitutional violation is plain.  The Court should deny the Motion in its entirety.

## II.     FACTUAL BACKGROUND

Donor No. 1 donated to a crowd-funding campaign to support the legal defense of a jailed journalist named Barrett Brown because he believed the journalist was imprisoned because of the views the journalist espoused, rather than the conduct the journalist engaged in.  Dkt. 29 ("FAC") ¶ 2.  Mr. Brown had "reported extensively on the links between the United States government and private intelligence contractors."  FAC ¶ 19.  Donor No. 1 lives in this judicial district, which is where he made his donation.  FAC. ¶ 12.  The donation page through which Donor No. 1 contributed to the jailed journalist's legal defense fund stated "[e]ach dollar raised is your vote in this important campaign for free speech and transparency on the internet – and around the world."  FAC ¶ 27; Dkt. 29-3. The donation page also informed the donors that the information they provided would be "kept strictly confidential."  FAC ¶ 28.

Hundreds of like-minded individuals from across the country also contributed to the legal defense fund.  FAC. ¶ 2.  Many included messages such as "prosecutorial bludgeoning must end" and "I think it is imperative that everyone who cares about free speech, a free internet, or is horrified by prosecutorial overreach, donate to Barret Brown's legal defense."  FAC ¶ 26.

Shortly after the donations began pouring in, the crowd-funding campaign attracted Defendants' attention.  *Id.* ¶ 30.  Ms. Heath drafted the WePay Subpoena, which directed WePay to produce "any and all records and information" associated with the crowd-funding campaign, including the sources of the funds donated (i.e. "the financial institution, credit card company, account holder at financial institution or of the credit card account"), the location of the funds, a "[c]omplete transaction history, including invoices and sending account numbers and receiving account numbers," and "[a]ll records and information obtained from any verification checks on purchasers."  Dkt. 33-1 at 5.  The WePay Subpoena required WePay to send its response to Agent Smith of the FBI.  FAC ¶ 33.  WePay produced documents in response.  FAC ¶ 32.  At a minimum, this response

1   included the donors' identities, sensitive financial information, and the amounts of each

2   donation.  FAC ¶ 51; Dkt. 33-4.

3          Further, information available to Kevin Gallagher, the founder of the crowd-funding

4   campaign, demonstrates that WePay maintained more information than Defendants

5   attached to their request for judicial notice at Dkt. 33.  In addition to names, account

6   numbers, and amounts donated, WePay also maintained "the addresses, phone numbers,

7   email addresses, and the text of messages sent by donors."  FAC ¶ 53.

8          Donor No. 1 believes Defendants still maintain the information produced in

9   WePay's response and use it to unlawfully surveil him and the other donors to the crowd-

10  funding campaign.  FAC ¶ 55.  Donor No. 1 believes that the WePay Subpoena was part of

11  a larger effort on the part of Defendants to identify and surveil Mr. Brown's supporters.

12  FAC ¶ 30.  He knows Defendants' illegal surveillance scheme extended to at least one

13  other internet service provider, CloudFlare, Inc., and believes it has affected others. FAC ¶

14  30.  In light of the complete irrelevance of the information sought by the WePay Subpoena

15  to the crimes Mr. Brown was charged with, Donor No. 1 believes Defendants perpetrated

16  their illegal surveillance scheme to chilling protected expression.  FAC ¶ 30.  The scheme

17  has had the intended effect.  FAC ¶ 30.

18  **III.   THE COURT SHOULD DENY THE MOTION**

19         A.    <u>Standards Applicable To Motion To Dismiss</u>

20         The Court may not dismiss the FAC unless it finds that the FAC fails to plead

21  enough facts to state a plausible claim for relief.  *Shapiro v. Lundahl*, 2017 WL 2902799,

22  at *3 (N.D. Cal. July 7, 2017) (James, M.J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

23  544, 570 (2007)).  Plausible claims include enough factual content to allow the court to

24  "draw a reasonable inference of liability.  *Shapiro*, 2017 WL 2902799, at *3. When

25  determining whether the FAC plausibly states a claim to relief, the Court "must accept all

26  of [the FAC's] allegations as true and construe them in the light most favorable to" Donor

27  No. 1.  *Shapiro*, 2017 WL 2902799, at *3 (citations removed).

28

B.   The FAC States A Claim For Relief For Violation Of The First Amendment Based Upon Defendants' Retaliatory Intent

When government officials take "action designed to retaliate against and chill political expression," they "strike[] at the heart of the First Amendment." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). In those circumstances, a claim for violation of the First Amendment lies where the plaintiff "alleges discrete acts of police surveillance and intimidation" that were intended to silence the speaker. *Id.*; *see also Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. Cal. 1994). To survive dismissal, a plaintiff must allege three elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (9th Cir. 2000) (internal quotation marks and citations omitted).

Defendants do not appear to dispute the first two elements. Dkt. 32 ("Mot.") at 10:24-13:16 (contending that Donor No. 1 has not plausibly alleged that Defendants intended to retaliate against his exercise of protected conduct but not mentioning either of the first two elements.) This is likely because the allegations in the FAC easily satisfy the first two elements.

First, Donor No. 1 was engaged in protected conduct because he was anonymously supporting the legal defense of a jailed journalist. *See* Section III.C.1, infra (supporting litigation through an anonymous online donation is a protected form of First Amendment expression.) *See also* FAC 29 ¶ 27 and 29-3 (describing each donation as a "vote in this important campaign for free speech and transparency on the internet – and around the world.")

Second, the WePay Subpoena unmasked Donor No. 1 to the very agents of the government he sought to criticize with his donation. FAC ¶ 51. Defendants sought Donor

No. 1's identity, the amount of Donor No. 1's donation, the financial account used to make the donation, all records and information WePay related to any background checks regarding Donor No. 1, and "any and all [other] records and information" WePay maintained on Donor No. 1 by virtue of Donor No. 1's donation.  Dkt. 33-1 at 5. Defendants did this because Donor No. 1 donated to a crowd-funding campaign in support of a political dissident.  FAC ¶¶ 2, 3, 30, 45; Dkt. 33-1 at 5.  Accordingly, Donor No. 1 suffered an injury that would chill protected expression.  See *Denney v. Drug Enf. Admin.*, 508 F. Supp. 2d 815, 830 (E.D. Cal. 2007) ("a physician of ordinary firmness who was only engaging in lawful speech concerning medical marijuana could, in fact, be chilled" in the exercise of First Amendment rights "by a federal investigation").

Third, Donor No. 1 also satisfies the intent element.  In *Mendocino*, the Ninth Circuit considered whether plaintiffs, anti-logging environmental activists, stated a claim for violation of the First Amendment based on allegations that the defendants intended to disrupt their free speech rights.  *Mendocino*, 14 F.3d at 464.  The court held that the allegations that the defendants participated in "baseless investigations," "unlawful arrests and illegal searches" of the plaintiffs were sufficient to establish a violation of the First Amendment, even under a "heightened pleading standard."  *Id.*

The same result is required here.  As in *Mendocino*, there can be no justification of Defendants' "baseless investigation" into Mr. Brown's financial supporters.  The complete irrelevance of Donor No. 1's name, bank account or credit card number, and the amount of Donor No. 1's donation confirms this.  Ms. Heath also demonstrated her intent to suppress speech when she argued for a gag order against Mr. Brown because he had "written an article that was 'critical of the government' in a 'tone' that was 'problematic.'"  FAC ¶ 54 (quoting Ms. Heath during the gag order hearing in Mr. Brown's criminal prosecution.) Donor No. 1 has adequately alleged that Defendants intended to suppress protected expression through the WePay Subpoena and the broader surveillance scheme it was a part of.  FAC ¶ 30 (surveillance scheme also included a subpoena to CloudFlare, Inc. which was characterized in the media as "a remarkable fishing expedition.")

C.    The FAC States A Claim For Violation Of The First Amendment Because The WePay Subpoena Fails The Balancing Test

In addition to stating a claim based upon Defendants' retaliatory intent, the FAC also states a claim for violation of the First Amendment because the WePay Subpoena fails the applicable balancing test.[1]   Under that test, the Court must weigh Donor No. 1's First Amendment interest against Defendants' investigatory interests and then determine whether the WePay Subpoena was a sufficiently precise tool for collecting the information it sought.  Mot. at 14:18-15:8 (citing *United States v. Mayer*, 503 F.3d 740, 744 (9th Cir. 2007).  Here, Donor No. 1's First Amendment right to remain anonymous while supporting the legal defense of a jailed political dissident is paramount, Defendants have no legitimate interest in Donor No. 1's identity or the amount of his donation, and the WePay Subpoena was outrageously overbroad.  Accordingly, the FAC states a claim for violation of the First Amendment.

1.    *The First Amendment Protects Donor No. 1's Right to Speak and Associate Anonymously*

The First Amendment prohibits the government from "abridging the freedom of speech … or the right of people peaceably to assemble."  U.S. Const., 1A.  These rights protect anonymity "whenever identification and fear of reprisal would deter speech." *Goland v. United States*, 903 F.2d 1247, 1259-60 (9th Cir. 1990).  The "protection given to anonymous political speech and association" prevents "compelled disclosure of political associations or beliefs" in order to "preserve individual liberties, to increase the dissemination of diverse viewpoints, and to promote the structural goal of wide political participation."  *Id*. at 1259.  The right to remain anonymous while "expressing political,

---

[1] Retaliation is not an essential element of a First Amendment violation.  *Rich v. City of Jacksonville*, 2010 WL 4403095, at *11 n. 14 (M.D. Fla. Mar. 31, 2010) ("[i]t is not retaliation against [the plaintiff] for speaking out that constitutes the alleged violation, indeed, a "retaliatory animus" towards [the plaintiff] is not critical to the Court's reasoning, rather it is the alleged exposure of [plaintiff's] identity, under color of law, in the absence of a compelling government interest, that states a claim for a violation of his First Amendment rights.")

SMRH:483728326.1

religious, social, or economic views … is historic, fundamental, and all too often necessary." *Rosen v. Port of Portland*, 641 F.2d 1243, 1251 (9th Cir. 1981). *See also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) (the "decision to remain anonymous … is an aspect of the freedom of speech protected by the First Amendment.") This is because the government may retaliate against those advocating unpopular causes. *Id*. If anonymity were not protected, those unwilling to risk retaliation "will be discouraged from engaging in public advocacy." *Id*. *See also Talley v. State of California*, 362 U.S. 60, 65 (1960) ("identification [of anonymous speakers] and fear of reprisal might deter perfectly peaceful discussions of public matters of importance.")

Anonymous speech, therefore, "is a great tradition that is woven into the fabric of this nation's history." *Doe v. 2theMart.com Inc*., 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001). Indeed, First Amendment protection of the right to remain anonymous covers anonymous speech that occurs online because:

> Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas. The 'ability to speak one's mind' on the Internet 'without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate.' People who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court.

*Id*. (quoting *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). Courts have recognized that government investigations attempting to unmask anonymous speakers may reduce individuals' willingness to continue engaging in protected activities. *See In re Grand Jury Subpoena to Amazon.com dated Aug. 7, 2006*, 246 F.R.D. 570, 573 (W.D. Wis. 2007) (recognizing that, "if word were to spread over the Net - and it would - that the FBI and the IRS had demanded and received Amazon's list of customers and their personal purchases, the chilling effect on expressive e-commerce would frost keyboards across America"); *In re Grand Jury Investigation*, 706 F. Supp. 2d 11, 17-18 (D.D.C. 2009) ("if the subpoenaed customer records" sought by grand jury, which could be used to identify purchasers of allegedly obscene content, "are given to the Government, it could have a chilling effect on the exercise of Company X's customers'

First Amendment right[]" to receive information); *see also Rich*, 2010 WL 4403095, at **8, 11 (prosecutor's alleged "conduct in investigating, discovering and disclosing the author of the anonymous blog violated [the anonymous blogger's] First Amendment rights by destroying his ability to speak anonymously," and "deterred him from . .. 'perfectly peaceful discussions of public matters of importance'") (quoting *Talley*, 362 U.S. at 65).

The First Amendment also protects the right to advocate controversial and unpopular points of view. *2theMart.com Inc*., 140 F. Supp. 2d at 1092-93. This vital protection includes the right to support litigation. *Benin v. Center for Study of Popular Culture*, 2007 WL 1795693, at *3 (N.D. Cal. Jun. 20, 2007) ("[s]upport of litigation is a form of expression and association protected by the First Amendment." (Citing *NAACP v. Button*, 371 U.S. 415, 428-29 (1963).) Thus, "actions that may have the effect of chilling or curtailing the exercise of [this] first amendment freedom[] must be closely scrutinized." *Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D.Minn. 1984) ("compelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests.")

*Eilers* is particularly instructive. There, the defendant propounded interrogatories seeking "the names of all individuals and entities who [were] funding plaintiff's lawsuit." *Id*. at 1260-61. The court found that unmasking the anonymous supporters of the plaintiff's case would chill protected expression because the supporters could "have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed." *Id*. at 1261. Because the donors' identities were "only minimal[ly] relevan[t]," the court found it could not order the unmasking of the supporters without violating the First Amendment. *Id*. at 1261-62.

So too here, where there is no dispute that Donor No. 1 made an anonymous donation. FAC ¶ 34. Nor is there any dispute that the donations were made in support of litigation. Dkt. 29-3 (the WePay donation page stated "[h]elp raise funds for the legal defense of Barrett Brown…. Each dollar raised is your vote in this important campaign for free speech and transparency on the internet – and around the world. … All donations will

1  be exclusively used to hire private criminal defense counsel.")  Thus, Donor No. 1's

2  anonymous donation in support of the legal defense of a journalist who espoused anti-

3  government views is entitled to the most stringent First Amendment protection.

4        2.  *Defendants Had No Interest In Discovering Donor No. 1's Identity Or The Amount Of Donor No. 1's Donation*

5

6        While Donor No. 1's interest in remaining anonymous while supporting a political

7  dissident is weighty, Defendants' interest in Donor No. 1's identity is non-existent.

8  Defendants assert only one interest in the fruits of the WePay Subpoena – "determining

9  whether public defender resources [were] being abused."  Mot. at 15:15-16.  This interest

10 is highly questionable because if Defendants had succeeded they would have redirected

11 money raised for the expressed purpose of hiring private counsel to the public defender, in

12 direct contradiction to representations made to the donors to the crowd-funding campaign.

13 Dkt. 29-3 ("[a]ll donations will be exclusively used to hire private criminal defense

14 counsel.")  Further, Ms. Heath was aware that Mr. Brown intended to use the funds to hire

15 private counsel because she quotes the donation page in the motion to direct funds be paid

16 (though, tellingly, she omits the above-quoted section).  Dkt. 33-5 at 6.  Mr. Brown's

17 private counsel even appeared in the case one month before the court denied the motion to

18 direct funds be paid, and still Ms. Heath did not withdraw the motion. FAC ¶ 48; Dkt. 33-

19 4 at 7.  The court denied the motion on this basis, finding that "it [was] clear the funds in

20 question were obtained on behalf of [Mr. Brown] for the purpose of retaining counsel."

21 Dkt. 33-8 at 2.  The court ordered the funds be used for their intended purpose.  *Id*.

22        Regardless, even if the Court accepts that Defendants had a legitimate interest in the

23 allocation of public defender funds and services, that interest does not support the

24 propriety of the WePay Subpoena.  This is because it was Mr. Brown, and not the donors

25 to the crowd-funding campaign in support of his legal defense, who was allegedly

26 defrauding the public defender.  The donors' identities, and the amounts of their donations,

27 are completely irrelevant to that inquiry.  Indeed, nowhere in the motion to direct funds be

28 paid did Ms. Heath mention a single donor.  Accordingly, Defendants had no legitimate

Case No. 3:17-cv-00586-MEJ
OPPOSITION TO INDIVIDUAL DEFENDANTS' MTD

1    interest in obtaining a "[c]omplete transaction history, including invoices and sending

2    account numbers and receiving account numbers; [or] [a]ll records and information

3    obtained from any verification checks on purchasers," not to mention "any and all records

4    and information" related to the crowd-funding campaign.  Dkt. 33-1 at 5.  Thus, the

5    allegations in the FAC raise more than a plausible inference that the donors were

6    unmasked in violation of the First Amendment.

7         Defendants contend the WePay Subpoena seeks nothing more than a transaction

8    history, which information is commonly provided in response to government subpoenas.

9    Mot. at 15:9-14 (citing *United States v. Davis*, 785 F.3d 498, 506 (11th Cir. 2015) (*en

10   banc*)).  *Davis* is inapposite.  There, the court determined that a subpoena "compelling the

11   production of third-party telephone company's business records containing [Davis']

12   historical cell tower location information" did not violate *Davis'* Fourth Amendment

13   rights.  *Id*. at 500.  One reason for this was that a "neutral and detached" magistrate judge

14   found, "based on 'specific and articulable facts,' that there are 'reasonable grounds to

15   believe' that [Davis' location information was] 'relevant and material'" to the investigation

16   of *Davis*.  *Id*. at 502 (quoting 18 U.S.C. § 2703(d)).  The court also found it important that

17   the subpoena did not seek expression (such as the contents of Davis' calls).  *Id*. at 503.

18   The majority opinion, however, does not even reference the First Amendment.  The

19   concur, however, did discuss the First Amendment, recognizing that the need to rely on

20   third parties to communicate over the internet does not reduce the expectation of privacy in

21   those communications.  *Id*. at 529 (Rosenbaum, J. concurring).  The concur also

22   recognized that "anonymity is critical to First Amendment rights."  *Id*.

23        The WePay Subpoena differs drastically from the one at issue in *Davis*.  The

24   WePay Subpoena sought information about third parties who were not involved in the

25   perpetration of Mr. Brown's crimes.  The WePay Subpoena sought "any and all records

26   and information" related to the crowd-funding campaign, including, but no limited to,

27   "[s]ources of the funds – financial institution, credit card company, account holder at

28   financial institution or of the credit card account;" a "[c]omplete transaction history,

-10-

including invoices and sending account numbers and receiving account numbers; and [a]ll records and information obtained from any verification checks on purchasers."  Dkt. 33-1 at 5.  When it did so, it implicated the donors' "critical" right to anonymity under the First Amendment, which the subpoena in *Davis* did not do.  *Davis*, 785 F.3d at 529. Accordingly, *Davis* offers Defendants little help, and Defendants' interest in Donor No. 1's identity and the amount of Donor No.1's donation is minimal to non-existent.

### 3.   The WePay Subpoena Violated Donor No. 1's Right to Speak and Associate Anonymously

As the better-reasoned cases balancing First Amendment and investigatory interests recognize, subpoenas that "tend[] to impinge upon such highly sensitive areas as freedom of speech or press, freedom of political association, and freedom of communication of ideas" must be "carefully circumscribed."  *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 558 (1963).  Indeed, the government may not "probe at will and without relation to existing need."  *DeGregory v. Attorney Gen. of State of N. H.*, 383 U.S. 825, 829 (1966).  Criminal investigations that force the "wholesale disclosure of names … for a purpose that [is] not germane to the determination of whether a crime has been committed" violate the First Amendment.  *See Branzburg v. Hayes*, 408 U.S. 665, 700 (1972). Therefore, the unjustified unmasking of those who engage in protected expression anonymously violates the First Amendment.  *Acorn Investments, Inc. v. City of Seattle*, 887 F.2d 219, 225 (9th Cir. 1989) (noting that the "chilling effect" associated with compelled disclosures "exists even when it is not the government's intention to suppress particular expression."  (Citing *NAACP v. Alabama*, 357 U.S. 449, 461 (1958)).

Therefore, courts must carefully scrutinize discovery requests that seek to unmask anonymous internet users.  *2TheMart*, 140 F. Supp. 2d at 1093.  The court in *2TheMart* adopted a four-factor test to determine whether a civil discovery subpoena could constitutionally unmask anonymous internet users who were not parties to the underlying litigation.  *Id*. at 1095.  Such a subpoena can only do so if its proponent establishes each of the following four elements:  (1) the subpoena "was issued in good faith and not for any

1   improper purpose"; (2) "the information sought relates to a core claim or defense"; (3) "the

2   identifying information is directly and materially relevant to that claim or defense"; and (4)

3   the claim or defense could not be proved or disproved with information that is available

4   from any other source.  *Id*. at 1097.

5                  a.      The WePay Subpoena was not issued in good faith

6           "[E]xtremely overbroad" subpoenas that demonstrate a complete "disregard for the

7   privacy and the First Amendment rights of [] online users" are issued in bad faith.  *Id*. at

8   1095-96.  The subpoena at issue in *2TheMart* sought "all identifying information and

9   documents, including … computerized or computer stored records and logs" concerning

10  posters to an online forum, several of whom disparaged 2TheMart in "downright nasty"

11  posts.  *Id*. at 1090.  The court found the subpoena was "extremely broad" because it

12  "would have required the disclosure of … personal information that has no relevance to the

13  issues raised in the lawsuit."  *Id*. at 1095-96.  Accordingly, the court found that the

14  subpoena was not brought in good faith.  *Id*. at 1096.

15          The same result should obtain here.  Defendants' asserted purpose in serving the

16  WePay Subpoena was to determine whether Mr. Brown had fraudulently obtained the

17  services of the public defender.  However, as in *2TheMart*, the complete transaction

18  history and all records obtained from background checks on donors are not relevant to

19  whether Mr. Brown had wrongfully obtained the services of the public defender.[2]  The

20  amount of extraneous information requested by the WePay Subpoena demonstrates an

21  utter "disregard for the privacy and the First Amendment rights" of the donors.  *Id*. at

22  1096.  The WePay Subpoena was not issued in good faith.

23  / / /

24  / / /

25

26  [2] Nor can the court's order denying the motion to direct funds be paid absolve Defendants
     from the breadth of the WePay Subpoena.  The court found only that the motion was filed
27   in good faith, not that the WePay Subpoena was served in good faith.  Further, nothing in
     the record suggests the court was aware of the WePay Subpoena when it issued its order.
28

b.    The information sought by the WePay Subpoena did not relate to a core claim or defense

A party seeking to unmask anonymous speakers must show that the speakers' identities are relevant to a core claim or defense. *Id*. at 1096.  If it does not, the case can move forward "without disturbing the First Amendment rights of the anonymous Internet speakers," so identification is not be proper. *Id*.  In *2TheMart*, the subpoena sought to identify anonymous speakers in order to gather evidence relevant to only one of many alleged affirmative defenses, so the court found that this factor also weighed against compelling discovery. *Id*.

Likewise here.  Because Mr. Brown was never charged with anything related to the way he raised funds to pay for his defense, the WePay Subpoena did not relate to any live issues in his prosecution, let alone a core claim or defense.  And even if Mr. Brown had been charged with violation of 18 U.S.C. § 3006A, certainly the promptness of Mr. Brown's financial disclosures would not have been a core claim where Mr. Brown was also charged with felony internet threats, retaliation against law enforcement officers, and aggravated identity theft.  FAC ¶ 23; Dkt. 33-4 at 3.  Those were the core claims at issue in the prosecution of Mr. Brown, and Defendants admit the WePay Subpoena sought no information related to those charges.  This element is also not satisfied.

c.    The information sought by the WePay Subpoena was not directly and materially relevant to a core claim or defense

Where First Amendment interests are involved, the proponent of discovery must satisfy a "higher threshold" than the expansive standard of relevancy typically applied during discovery. *Id*.  "Only when the information sought is directly and materially relevant to a core claim or defense can the need for information outweigh the First Amendment right to speak anonymously." *Id*.

The subpoena in *2TheMart* sought the identity of certain internet commenters whom 2TheMart blamed for the decrease in its stock price. *Id*. at 1097.  2TheMart alleged that it intended to compare the names of the commenters with those who traded its stock

1  during the same time period to determine whether any illegal stock manipulation occurred.

2  *Id*.  The court dismissed this purpose as unduly speculative, however, and found that the

3  identities of the commenters were not relevant because "[i]f these messages did influence

4  the stock price, they did so without *anyone* knowing the identity of the speakers."  *Id*.

5  (emphasis in original).

6       So too here, where the identities of the anonymous donors, and the amounts they

7  donated, were completely irrelevant to any of the crimes Mr. Brown was charged with, and

8  they were also irrelevant to the "crime" Defendants were allegedly investigating when they

9  served the WePay Subpoena.  Further, despite filing a motion to direct funds be paid and

10  multiple motions to dismiss, Defendants have yet to articulate a single use for the identities

11  of the donors.  As in *2TheMart*, the investigation into the manner in which Mr. Brown

12  reported his financial position to the court did not require *anyone* to discover "the identity

13  of the [donors]."  *Id*.  This factor, too, weighs against the propriety of the WePay

14  Subpoena.

15             d.    The information requested by the WePay Subpoena was
                     available from other sources
16

17       In *2TheMart*, the court found that information related to the anonymous

18  commenters was available from other sources because the comments were "archived and

19  available to anyone to read and print."  *Id*.  This meant that 2TheMart could (and should)

20  have supported its defense that the anonymous commenters caused the stock's price to

21  drop "without encroaching on the First Amendment rights of Internet users."  *Id*.

22       The same reasoning applies here and requires the same result.  The information

23  Defendants obtained from the WePay Subpoena (that Mr. Brown was "the beneficiary of

24  approximately $20,000 raised for the specific purpose of paying for an attorney" (Mot. at

25  24:4-5) was readily available on the crowd-funding page itself.  *See* Dkt. 29-1 (indicating

26  that $19,478 had been contributed to the crowd-funding campaign as of April 24, 2013,

27  more than a month before the court denied Defendants' motion to force the crowd-raised

28  funds to be paid to the public defender's office.)  Accordingly, as in *2TheMart*, there was

1  no reason to "encroach[] on the First Amendment rights of [the donors]."  *2TheMart*, 140

2  F. Supp. 2d at 1097.

3      To withstand constitutional scrutiny, the WePay Subpoena must satisfy each of

4  these four elements.  It satisfies none.  Donor No. 1 has successfully alleged a violation of

5  his First Amendment right to speak and associate anonymously.

6          4.    *Defendants' Authority Is Inapposite*

7      Although *2TheMart* dealt with a civil subpoena, the Court should apply its

8  reasoning here.  Defendants did not present, and Donor No. 1 has not found, any cases that

9  balance First Amendment interests against a subpoena issued under Fed. R. Crim. P. 17.

10  The Court should rely on *2TheMart* because although subpoenas issued under Fed. R Civ.

11  P. 45 and Fed. R. Crim. P. 17 differ in the type of information they can seek, they function

12  in similar ways.  Wright, Leipold, Henning, and Welling, *Production of Documentary*

13  *Evidence and Objects – Trial Subpoenas*, 2 Fed. Prac. & Proc. Crim. § 275 (4th ed. April

14  2017 update) (nothing that "Rule 17(c)(1) authorizes issuance of a subpoena duces tecum[]

15  in a fashion quite similar to the corresponding Civil Rule.")

16      Grand jury subpoenas, on the other hand, are distinguishable.  Defendants attempt

17  to justify the WePay Subpoena under rules applicable to grand jury subpoenas fails

18  because a subpoena under Rule 17 cannot "provide a means of discovery for criminal

19  cases."  *United States v. Nixon*, 418 U.S. 683, 698 (1974); *United States v. Reed,* 726 F.2d

20  570, 577 (9th Cir.1984) (subpoenas under Rule 17 are "not intended as a discovery device,

21  or to allow a blind fishing expedition seeking unknown evidence." (Internal citation and

22  quotations removed).)  Instead, Rule 17's "chief innovation was to expedite the trial by

23  providing a time and place before trial for the inspection of subpoenaed materials." *Nixon,*

24  *418 U.S.* at 698-99.  Thus, a Rule 17 subpoena can only compel production prior to trial if

25  the information it seeks is (1) requested with sufficient specificity and (2) relevant and

26  admissible "with respect to the offenses charged in the indictment."  *Id.* at 700.

27      The information requested in the WePay Subpoena was neither relevant nor

28  admissible concerning the offenses charged in Mr. Brown's indictment.  Mr. Brown was

charged with aggravated identity theft, threatening a federal officer, conspiring to make a United States employee's personal identification information publicly available, and retaliating against a federal law enforcement official.  FAC ¶ 23; Dkt. 33-4 at 3.  Clearly, "any and all records and information" pertaining to the crowd-funding campaign that was set up *after Mr. Brown was arrested* for the purpose of retaining private counsel would have nothing to do with the offenses charged in the indictment.

Moreover, as the Supreme Court recognized in *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 298 (1991), "[t]he multifactor test announced in *Nixon* would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena. We have expressly stated that grand jury proceedings should be free of such delays."  Accordingly, Defendants' grand jury subpoena cases offer them little help.[3]

Also inapposite is *United States v. Mayer*, 503 F.3d 740 (9th Cir. 2007).  There, an undercover FBI agent joined the North American Man/Boy Love Association (the "Man/Boy Love Association"), "discovered the identity of some [Man/Boy Love Association] members," and "obtained partial names and information for others."  *Id*. at 748.  As its name suggests, the Man/Boy Love Association opposed age-of-consent laws and "all other restrictions which deny men and boys the full enjoyment of their bodies and control over their own lives."  *Id*. at 745.  After infiltrating the group, the undercover agent created a fake travel website through which the defendant booked travel to Mexico to have

_____

[3] Even if the court were to adopt the standards applicable to grand jury subpoenas, however, still Defendants could not prevail.  *See In re Grand Jury Investigation*, 706 F. Supp. 2d at 18 (denying motion to compel compliance with grand jury subpoena "seek[ing] records of customer purchases of expressive materials, which are presumptively protected by the First Amendment," because the government failed to "demonstrate[] a compelling need for them and a sufficient nexus between the records and the grand jury's investigation").  *See also In re Grand Jury Subpoena*, 828 F .3d 1083, 1091 (9th Cir. 2016) ("Because the subpoena was in no way tailored to the investigations being conducted, it included [witness's purely private emails.  [Thus], the district court had the supervisory power, and responsibility, to quash the vastly overbroad subpoena, and thereby prevent the trampling of  [witness's] reasonable expectation of privacy").

Case No. 3:17-cv-00586-MEJ
OPPOSITION TO INDIVIDUAL DEFENDANTS' MTD

sex with young boys.  *Id*. at 747.  The defendant was arrested en route to Mexico and charged with traveling with intent to engage in illicit sexual conduct.  *Id*.

The defendant's motion to dismiss his indictment was denied and he appealed to the Ninth Circuit.  *Id*.  The defendant contended that his indictment should have been dismissed because the investigation that led to his arrest violated the First Amendment rights of the other identified members of the Man/Boy Love Association.  *Id*.  The Ninth Circuit rejected this argument, however, because the investigation into "individuals who took part in group activity where criminal conduct was openly discussed" was legitimate and "the FBI did not compel disclosure of membership lists" but rather identified the individuals by infiltrating the Man/Boy Love Association.  *Id*. at 748.  This did not impose "any significant hardships" on the First Amendment rights of the Man/Boy Love Association members.  *Id*.  Further, the identities of those individuals did not lack "a substantial connection to a subject of overriding and compelling state interest"— identification and prosecution of those engaged in criminal sexual behavior.  *Id*.

This case is easily distinguishable.  First, the First Amendment right to donate to a political cause is significantly greater than the First Amendment right to advocate for the freedom of grown men to engage in sexual relations with young boys.  The donors differ from the Man/Boy Love Association because they did not "openly discuss" engaging in criminal activity.  Instead, the donors engaged in core First Amendment activity by contributing funds to allow a jailed political dissident to obtain private defense counsel.  Second, Donor No. 1 seeks to enforce his own First Amendment rights while Mayer relied on the First Amendment rights of others to invalidate his conviction.[4]  Third, in contrast to *Mayer* (where the investigation only disclosed the identities of a few members of the Man/Boy Love Association), the WePay Subpoena compelled disclosure of at least the identities of, and the amounts donated by, *all of the donors to the crowd-funding*

---

[4] To the extent Donor No. 1 also seeks to enforce the First Amendment rights of others, he relies on the class action device, which was not available to Mayer as a criminal defendant.

1   *campaign*.  Dkt. 33-1 (seeking "any and all records and information" related to the crowd-

2   funding campaign including the bank accounts of the donors, a "[c]omplete transaction

3   history," and "[a]ll records and information obtained from any verification checks on

4   purchasers").[5]  Fourth, in contrast to the identities of those who "openly discussed"

5   participating in criminal activity, the identities of the donors lacked "a substantial

6   connection to a subject of overriding and compelling state interest" because the donors

7   were not suspected of any wrongdoing.  Defendants' sole justification for the WePay

8   Subpoena is their unwarranted suspicion that Mr. Brown had unlawfully obtained the

9   services of the public defender.  Considering the representations made on the crowd-

10  funding page, such suspicions are preposterous.  In light of the allegations in the FAC, the

11  Court cannot accept Defendants' "obvious alternative explanation."

12          *Chevron Corp. v. Donzigger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) is also

13  unavailing.  There, Chevron sought identification information and IP logs associated with

14  certain email addresses.  *Id*. at *2.  Certain of the account holders moved to quash the

15  subpoena, but the court denied the motion because "no speech [was] at issue" and multiple

16  movants had already identified themselves to Chevron's counsel (meaning they were not

17  anonymous).  *Id*. at **7-8.  Further, many of the movants' email addresses (which Chevron

18  already had) contained identifying information.  *Id*. at *8.  Accordingly, "[w]ith no speech

19  and with such varying degrees of anonymity at issue, the Court [found] that the Doe

20  movants have failed to show that there is an exercise of anonymous speech that Chevron's

21  subpoenas could chill."  *Id*.

22          Here, in contrast, the donors engaged in speech when they donated to support the

23  legal defense of a jailed journalist.  *Benin*, 2007 WL 1795693, at *3 ("[s]upport of

24  litigation is a form of expression and association protected by the First Amendment.")

25  Further, Defendants had none of the donors' identification information prior to serving the

26

27  _____

   [5] Since the WePay Subpoena separately mentions the "user" in an apparent reference to the

28  account administrator, Donor No. 1 believes the term "purchaser" refers to the donors.

---

1  WePay Subpoena, so the donors were still anonymous to the subpoenaing party, unlike the

2  Doe movants in *Chevron*.

3     *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir. 2015) is also

4  distinguishable.  Defendants rely on *Harris* to suggest that the WePay Subpoena did not

5  violate the First Amendment because it resulted in a disclosure to the government, rather

6  than the public at large.  Mot. at 12:23-25.  Here, however, disclosure to the government,

7  particularly the government officials Donor No. 1 criticized by donating, was exactly the

8  disclosure Donor No. 1 sought to avoid.  Nor did the identities of the donors, and any and

9  all information related to their donations, bear a substantial relation to whether Mr. Brown

10  threatened a government official.  *Compare* Mot. at 16:13-15 (citing *Harris*, 784 F.3d at

11  1317).[6]

12     Defendants also mis-cite *EEOC v. Elrod*, 674 F.2d 601 (7th Cir. 1982).  *See* Mot. at

13  16:11-12 (improperly quoting *Elrod* for suggestion that a subpoena will "survive a nexus

14  challenge as long as the information requested 'touches a matter under investigation.'")

15  *Elrod*, however, dealt with a relevance challenge to an administrative subpoena.  *Elrod*,

16  674 F.2d at 613 ("[a]n administrative subpoena will be enforced, when challenged on the

17  basis of relevancy, if the material subpoenaed touches matter under investigation."

18  (Quotations and citations removed.))  *Elrod* does not even mention the First Amendment,

19  let alone set forth a standard the court could use to determine whether the WePay

20  Subpoena survives a nexus challenge on First Amendment grounds.

21     Defendants, therefore, have presented the Court with no viable alternatives to

22  *2TheMart*.  Because the WePay Subpoena fails that test, Donor No. 1 has stated a claim for

23  violation of the First Amendment and Defendants' Motion must be denied.

24  / / /

25  / / /

26  _____

27  [6] *Scott v. Rosenberg*, 702 F.2d 1263 (9th Cir. 1983) is likewise distinguishable because the
WePay Subpoena sought far more than transaction records and Defendants had no interest

28  in Donor No. 1's identities.

1

2

      D.     The FAC States A Claim For Violation <u>Of The First Amendment Against Defendants In Their Official Capacities</u>

3

4

5

6

7

8

     Donor No. 1 sues Defendants in their individual and official capacities.  FAC ¶¶ 7, 8.  Donor No. 1's prayer for relief for violation of the First Amendment seeks injunctive relief "for the official capacity claim only."  FAC at Prayer.  Defendants even admit that "all equitable relief sought against [Defendants] would run against them in their official capacities."  Mot. at 8:2-3.  Accordingly, Defendants' assumption (*see* Mot. at 1:27-28) that Donor No. 1 is not suing Defendants in their official capacities is unwarranted.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     Suits against federal agents or officers in their official capacity are suits against the United States.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[o]fficial-capacity suits… 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Quoting *Monell v. New York City Dep. Of Social Servs.*, 436 U.S. 658, 690 n.55 (1978).)  Under the Administrative Procedure Act ("APA"), "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States."  5 U.S.C. § 702.  This provision "waives sovereign immunity not only for suits brought under § 702 itself, but for constitutional claims brought under the general federal-question jurisdiction statute."  *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989).  *See also Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) (cited by Defendants) ("the Administrative Procedure Act waives sovereign immunity for" suits "which seek equitable relief against the federal government"); *Beller v. Middendorf*, 632 F.2d 788, 796–97 (9th Cir. 1980) (overruled on other grounds in *Witt v. Dept. of Air Force*, 527 F.3d 806, 820 (2008)) (relying on 5 U.S.C. § 702 and *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 689-91 (1949) to hold that where a government official is alleged to have violated the Constitution, "Congress has either waived sovereign immunity or the doctrine does not apply.")

1    Further, Donor No. 1 is entitled to plead in the alternative at this stage of the

2    litigation.  *See Moon v. Rivas*, 2015 WL 5442435, at *2 (S.D. Ill. Sep. 15, 2015)

3    (authorizing plaintiff to proceed with First Amendment claims under both *Bivens* and the

4    APA).  Defendants admit that they were "undoubtedly … authorized to [serve the WePay

5    Subpoena] by their employer, the United States Government."  Dkt. 27 at 5:23-24.

6    Accordingly, they cannot seriously contend they are not subject to suit in their official

7    capacity and Donor No. 1's claim against Defendants in their official capacities for

8    violation of the First Amendment must be allowed to proceed.

9         E.        The FAC States A Claim Against Defendants In Their Individual Capacities

10    Defendants claim Donor No. 1 fails to state a claim against them in their individual

11    capacities because (1) Donor No.1 does not seek money damages and (2) the Court lacks

12    personal jurisdiction over Defendants in their individual capacities.  Defendants are

13    mistaken.

14         1.        *Donor No. 1 is not Required to Seek Money Damages*

15    Injunctive and declaratory relief is unavailable in *Bivens* actions in the Ninth Circuit

16    only where "the equitable relief sought *requires official government action*."  *McKelvey*,

17    820 F.3d at 1093 (emphasis added).  Defendants acknowledge as much, but conclude that

18    "all the equitable relief sought against [Defendants] would run against them in their

19    official capacities and thus seeks to compel official government action."  Mot. at 8:2-3.

20    This conclusion ignores the facts of *McKelvey*, however.  There, "only the United States

21    … [had] the power to take the action that [the plaintiff sought]: returning the stream to its

22    previous path through [plaintiff's] land."  *Id.* at 1095-96.  A simple declaration that

23    Defendants violated Donor No. 1's First Amendment right requires no such official action

24    and therefore does not conflict with *McKelvey*.

25    However, should the Court hold that Donor No. 1 is required to allege money

26    damages, Donor No. 1 must be permitted to amend to do so.  *Six Star Holdings, LLC v.*

27    *City of Milwaukee*, 821 F.3d 795, 805 (7th Cir. 2016) ("in civil rights cases, nominal

28

1   damages are appropriate when a plaintiff's rights are violated but there is no monetary

2   injury."  Citing *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).)

3               2.      *Defendants are Subject to Personal Jurisdiction*

4                       a.      Donor No. 1 need not allege multiple bases for personal
                                jurisdiction
5

6       Defendants tacitly admit, as they must, that they are subject to personal jurisdiction

7   in their official capacities.  Mot. at 19:6-7.  Donor No. 1 is not required to establish

8   multiple bases upon which the Court can find personal jurisdiction.  "Only one basis for

9   personal jurisdiction is required."  *Graphics Props. Holdings v. Asus Computer Int'l, Inc.*,

10  964 F. Supp. 2d 320, 326 (D. Del. June 28, 2013).  Accordingly, since Defendants are

11  subject to personal jurisdiction in their official capacities, the Court need not determine

12  whether they are subject to jurisdiction in the individual capacities.

13                      b.      Defendants' contacts with California establish personal
                                jurisdiction
14

15      Despite their admission that "it is where the injured plaintiff reside[s] that

16  matter[s]" (Mot. at 22:3-4), Defendants contend that Donor No. 1 did not suffer harm in

17  California.  However, as their own authority recognizes, privacy harms are "suffered in the

18  state where [the plaintiff] resides or works."  *Klayman v. Deluca*, 2015 WL 427907, at *4

19  (N.D. Cal. Jan. 30, 2015).  Indeed, a privacy harm could not be felt anywhere else but

20  where the plaintiff resides.  Donor No. 1 lives in California.  FAC ¶ 12.  Accordingly,

21  there can be no dispute that Donor No. 1 suffered harm in California.

22      Defendants' fault Donor No. 1 for "relying on WePay's location in California" to

23  establish personal jurisdiction.  Dkt. 32 at 21:14-15.  Under binding Supreme Court

24  precedent, however, WePay's location is the focus of the inquiry.  "The proper question is

25  … whether the defendant's conduct connects him to the forum [as opposed to the plaintiff]

26

27

28

in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014).[7]  Moreover, the WePay Subpoena was not an act of "untargeted negligence" but "an intentional and … tortious act[] expressly aimed at" California.  *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989).  Defendants contend that Donor No. 1's residence "in California is simply a random, fortuitous, and attenuated contact insufficient to give rise to personal jurisdiction.  [Citation.]  To suggest otherwise would subject [Defendants] to personal jurisdiction in every state where any anonymous donor happens to reside."  Mot. at 22:23-26.  But consider the alternative.  If the Court accepts Defendants' theory, Defendants will not be subject to personal jurisdiction anywhere except Texas.

Moreover, Donor No. 1 does seek to haul Defendants into court based simply on his residence.  Donor No. 1's privacy harm occurred here and Defendants also purposefully availed themselves of California's laws by serving a subpoena in California.  The fact that the donors were anonymous should not absolve Defendants of their liability.  Indeed, as numerous courts have recognized, the right to remain anonymous, particularly while engaging in core First Amendment expression, is fundamental.  *See* Section III.C.1, *supra*.

Defendants also overstate the degree of knowledge required for personal jurisdiction.  Defendants are not required to have known, with absolute certainty, that the WePay Subpoena would cause harm in California.  Rather, as the Ninth Circuit has recognized, personal jurisdiction exists where a defendant knew *or should have known* that harm was likely to be suffered in the forum.  *Washington Shoe Co. v. A-Z Sporting Goods*

---

[7] Defendants' contend that the WePay Subpoena does not subject Defendants to personal jurisdiction in California is because WePay is a third party.  Mot. at 21:13-22:4.  They are mistaken.  *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063 (10th Cir. 2008), *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000), and *Klayman v. Deluca*, 2015 U.S. Dist. LEXIS 11403 (N.D. Cal. Jan. 30, 2015) are distinguishable because in each of those cases the harm occurred outside of the state in which the corporation received the letter or subpoena that allegedly established personal jurisdiction.  This is because privacy harms occur "in the state where [the plaintiff] resides or works."  *Klayman*, 2015 WL 427907, at *4.  Donor No. 1 is a California resident, so, again, Donor No. 1's harm occurred here.

-23-

*Inc.*, 704 F.3d 668, 678 (9th Cir. 2012).  Defendants should have known that a subpoena

sent to California (the most populous state) was likely to impinge on privacy interests here.

c.        Personal jurisdiction would not be unreasonable

Defendants contend personal jurisdiction would be unreasonable because "[i]t is

generally understood that responsive contacts with a forum resident are insufficient to

establish personal jurisdiction.  But Defendants did not have "responsive contacts" with

Donor No. 1.  They sought to discover Donor No. 1's sensitive and private information

without any basis to believe Donor No. 1 had done anything wrong.  Indeed, even if the

court were to assume that Mr. Brown unlawfully withheld money from the public

defender, that does not suggest that Donor No. 1 did anything wrong.  Defendants cannot

impute the actions of Mr. Brown onto Donor No. 1.

Nor does the multi-factor test set out in *Terracom v. Valley Nat. Bank*, 49 F.3d 555,

561 (9th Cir. 1995) allow Defendants to escape jurisdiction.  Defendants bear the burden to

demonstrate that personal jurisdiction would be unreasonable (*Schwarzenegger v. Fred

Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004)), and the facts here demonstrate they

cannot do so.

First, Defendants purposefully interjected themselves in California's affairs by

serving the WePay Subpoena on WePay at WePay's headquarters in California.  WePay

complied with the WePay Subpoena here, and Donor No. 1's harm occurred here.  Second,

Defendants have not established any burden in having to defend the suit here.  Indeed, the

fact that Defendants have retained counsel from Washington D.C. suggests the location of

the litigation has nothing to do with the burden incurred.  This factor is neutral.  The third

factor weighs in favor of jurisdiction in California because there is no conflict between

California and Texas sovereignty.  *Terracom*, 49 F.3d at 561.  Under the fourth factor,

California's interest in protecting the privacy of its citizens easily trumps Texas' interest in

ensuring the requirements of Fed. R. Crim. P. 17 have been complied with, particularly

because the WePay Subpoena so obviously violates Fed. R. Crim. P. 17.  The right to

privacy, on the other hand, is enshrined in the first section of Article I of the California

Constitution, where it is recognized as an "inalienable right."  Fifth, judicial efficiency favors California because Donor No. 1 does not intend to call Mr. Brown or Mr. Brown's mother to testify as to whether Donor No. 1's First Amendment right to remain anonymous has been violated.  Where there are three witnesses in California and two in Texas, the presence of non-party WePay in this district means the fifth factor favors jurisdiction here. The sixth factor clearly favors jurisdiction here because Donor No. 1 should not be required to travel to Texas to obtain relief for harms that occurred here.  While Texas serves as an alternate forum, each of the other factors favor California jurisdiction so Defendants have not met their burden to demonstrate that the exercise of personal jurisdiction would be unreasonable.

## IV.    CONCLUSION

For these reasons, Donor No. 1 respectfully requests that the Court deny the Motion.

Dated:  August 10, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By

CHARLES S. DONOVAN
GUYLYN CUMMINS
ERIC J. DiIULIO
Attorneys for Plaintiffs

SMRH:483728326.1
OPPOSITION TO INDIVIDUAL DEFENDANTS' MTD