1   CHAD A. READLER
    Acting Assistant Attorney General
2   Civil Division

3   BRIAN J. STRETCH
    United States Attorney
4   Northern District of California

5   C. SALVATORE D'ALESSIO, JR.
    Acting Director, Torts Branch, Civil Division
6
    RICHARD MONTAGUE
7   Senior Trial Counsel, Torts Branch, Civil Division

8   SIEGMUND F. FUCHS
    Trial Attorney, Torts Branch, Civil Division
9        U.S. Department of Justice
         Ben Franklin Station
10       P.O. Box 7146
         Washington, D.C.  20044-7146
11       Tel (202) 616-4322; Fax (202) 616-4314
         siegmund.f.fuchs@usdoj.gov
12
    Attorneys for Defendants Candina Heath
13  and Robert Smith

14          UNITED STATES DISTRICT COURT

15          NORTHERN DISTRICT OF CALIFORNIA

16          SAN FRANCISCO DIVISION

17

18  KEVIN GALLAGHER, on behalf of himself;  )  C 17-0586 MEJ
    and DONOR NO. 1, individually and on behalf  )
    of all anonymous donors to Free Barrett Brown,  )  **DEFENDANTS CANDINA HEATH AND**
19                                            )  **ROBERT SMITH'S REPLY BRIEF IN**
                                              )  **SUPPORT OF THEIR MOTION TO DISMISS**
20       Plaintiffs,                          )  **THE FIRST AMENDED COMPLAINT**
                                              )
21       v.                                   )
                                              )  Date:  September 28, 2017
22  UNITED STATES; CANDINA HEATH;             )  Time:  10:00 a.m.
    ROBERT SMITH; DOES 1-10,                  )  Judge: Maria-Elena James
23                                            )
         Defendants.                          )  Courtroom B, 15th Floor,
    _____       )  450 Golden Gate Ave., San Francisco, CA
24

25

26

27

28  C 17-0586 MEJ

    DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S REPLY BRIEF                    i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ iii

I.  DONOR NO. 1 DOES NOT STATE A VIABLE CLAIM FOR RELIEF AGAINST
    THE INDIVIDUAL DEFENDANTS. ............................................................................1

II. DONOR NO. 1 DOES NOT PLAUSIBLY ALLEGE A FIRST AMENDMENT
    VIOLATION. ................................................................................................................3

A.  Donor No. 1 fails to plausibly allege retaliation. ...........................................................4

B.  The Government interest easily outweighs any alleged First Amendment interests. .....6

III. THIS COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL
     DEFENDANTS. ..........................................................................................................11

IV. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ...........................................14

CONCLUSION ......................................................................................................................15

**TABLE OF AUTHORITIES**

Cases

*Anderson v. FDIC*,
   No. 96-70411, 1996 U.S. Dist. LEXIS 19907 (E.D. Mich. Nov. 25, 1996) ........................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................... 2

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ..................................................................................................................... 13

*Cmty. House, Inc. v. City of Boise*,
   623 F.3d 945 (9th Cir. 2010) .................................................................................................... 1, 2

*Denney v. DEA*,
   508 F. Supp. 2d 815 (E.D. Cal. 2007) ............................................................................................. 4

*Doe v. 2theMart.com Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ................................................................................. 10

*Eilers v. Palmer*,
   575 F. Supp. 1259 (D. Minn. 1984) ........................................................................................... 10

*Gilbert v. DaGrossa*,
   756 F.2d 1455 (9th Cir. 1985) .................................................................................................... 11

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) ............................................................................................... 10

*Grill v. Quinn*,
   No. 10-757, 2013 U.S. Dist. LEXIS 85643 (E.D. Cal. June 18, 2013) ...................................... 2

*Hartman v. Moore*,
   547 U.S. 250 (2006) ..................................................................................................................... 4

*Hatfill v. Gonzales*,
   519 F. Supp. 2d 13 (D.D.C. 2007) ......................................................................................... 1, 12

*Higazy v. Templeton*,
  505 F.3d 161 (2d Cir. 2007)........................................................................................ 1

*Juste v. United States DOJ*,
  No. 16-3335, 2017 U.S. Dist. LEXIS 37878 (D.S.C. Feb. 23, 2017).................................... 11

*Kelley v. FBI*,
  67 F. Supp. 3d 240 (D.D.C. 2014) ................................................................................ 2

*Klayman v. Deluca*,
  No. 14-3190, 2015 U.S. Dist. LEXIS 11403 (N.D. Cal. Jan. 30, 2015)................................ 22

*Mendocino Envtl. Ctr. v. Mendocino County*,
  14 F.3d 457 (9th Cir. 1994) ........................................................................................ 5

*Mendocino Envtl. Ctr. v. Mendocino County*,
  192 F.3d 1283 (9th Cir. 1999) ..................................................................................... 6

*Skoog v. County of Clackamas*,
  469 F.3d 1221 (9th Cir. 2006) ..................................................................................... 4

*Solida v. McKelvey*,
  820 F.3d 1090 (2016)........................................................................................... 1, 11

*Stafford v. Briggs*,
  444 U.S. 527 (1980) ................................................................................................ 11

*United States v. Curtin*,
  489 F.3d 935 (9th Cir. 2007) ...................................................................................... 4

*United States v. Konrad*,
  730 F.3d 343 (3d Cir. 2013)....................................................................................... 11

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)............................................................................................. 12

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012) ................................................................................. 12, 13

*White v. Pauley*,
  137 S. Ct. 548 (2017) .................................................................................................... 2

*Worrell v. Henry*,
  219 F.3d 1197 (9th Cir. 2000) ...................................................................................... 4

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) .................................................................................................. 2


<u>Statutes</u>

18 U.S.C. § 3006A ........................................................................................................ passim


<u>Rules</u>

Fed. R. Civ. P. 4 .................................................................................................................. 12

Fed. R. Civ. P. 26 .............................................................................................................. 10

Fed. R. Civ. P. 45 ........................................................................................................ 10, 11

Fed. R. Crim. P. 17 ....................................................................................................... 2, 10

The Individual Defendants submit this reply brief in support of their motion to dismiss.

## I. Donor No. 1 does not state a viable claim for relief against the Individual Defendants.

In his opposition, Donor No. 1 makes clear that his *Bivens* claim seeks only declaratory relief against the Individual Defendants in their individual capacities. Opp., at 21. The Ninth Circuit's decision in *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090 (2016), holds that any *Bivens* claim that does not seek damages fails to state a claim. In an attempt to distinguish that case, Donor No. 1 argues that *McKelvey* bars a *Bivens* claim that does not seek damages only where the non-monetary relief sought "seeks to compel official government action." Opp., at 21. Because "[a] simple declaration that Defendants violated Donor No. 1's First Amendment right requires no such official action," Donor No. 1 argues that the declaratory relief he seeks "does not conflict with *McKelvey*." *Id.* But the plaintiff in *McKelvey also* sought a "declaration that [the defendant's] actions violated [the plaintiff's] constitutional rights," which *also* required no official government action. 820 F.3d at 1092. The Ninth Circuit still ordered the entire *Bivens* claim "dismiss[ed] for failure to state a claim," including the request for declaratory relief. *Id.* at 1096. *McKelvey* compels the same result here.[1]

We explained in our motion to dismiss that the declaration sought is also improper because declaratory relief is designed to set controversies at rest *before* they cause harm, not simply to proclaim liability for a past act. Motion, at 8-9. We also explained that declaratory relief is discretionary and should not be granted here because Donor No. 1 is attempting to bypass the myriad defenses available had he raised a proper *Bivens* claim. *Id.* Donor No. 1 ignores these points entirely. Instead, he makes a final plea: if he is wrong, he "must" be permitted to amend again. Opp., at 21. This Court should deny that request for two reasons. First, if Donor No. 1 adds a prayer for damages, the Individual Defendants would be entitled to raise a number of defenses, including qualified immunity. To overcome that defense, Donor No. 1 must allege the violation of a clearly established constitutional right. *See Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). But Donor No. 1 concedes that no party

---

[1] Tellingly, Donor No. 1 fails to cite a single case allowing a *Bivens* claim that seeks only a declaratory judgment, all the while ignoring the body of case law holding that such claims are improper. *See* Motion, at 8 (citing *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 19 (D.D.C. 2007) (collecting cases) and *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (only damages are available under *Bivens*)).

C 17-0586 MEJ

DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S REPLY BRIEF                          1

1   has found "any cases that balance First Amendment interests against a subpoena issued under Fed. R.

2   Crim. P. 17." Opp., at 15. No party has in fact found any cases even remotely addressing whether the

3   issuance of a subpoena to determine if a defendant can afford a lawyer implicates the First Amendment.

4   Donor No. 1 asks this Court to be the first to fashion an appropriate test. *Id.* But on such weighty issues

5   of first impression, qualified immunity applies. Indeed, "[i]n the last five years, th[e Supreme] Court has

6   issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauley*, 137

7   S. Ct. 548, 551 (2017). In *White*, the Supreme Court found it "again necessary to reiterate the

8   longstanding principle that 'clearly established law' should not be defined 'at a high level of

9   generality;'" instead, it "must be 'particularized' to the facts of the case." *Id.* at 552 (citations omitted).

10  The lower court in *White* recognized that "this case presents a unique set of facts and circumstances." *Id.*

11  According to the Supreme Court, "[t]his alone should have been an important indication . . . that [the

12  defendant's] conduct did not violate a 'clearly established' right." *Id.*[2]

13      In his opposition to the motion to dismiss filed by the United States, Donor No. 1 also argues that

14  his alleged First Amendment violation "was effected through the violation of the SCA." (ECF 34, at 10).

15  Courts have held that the potential availability for relief under that Act is an adequate alternative remedy

16  sufficient to displace a *Bivens* claim for damages. *See Kelley v. FBI*, 67 F. Supp. 3d 240, 270-71 (D.D.C.

17  2014). It is unlikely *Bivens* damages are even available for First Amendment violations. The Supreme

18  Court indicated doubt on that score in *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and just this past

19  term it reiterated that *Bivens* typically should not be expanded to new contexts or claims beyond those

20  allowed in the Court's own prior cases. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

21      Donor No. 1's concessions and arguments here are fatal to a prayer for damages, rendering a

22  proposed amendment to add damages futile. *See Grill v. Quinn*, No. 10-757, 2013 U.S. Dist. LEXIS

23  85643, *64 (E.D. Cal. June 18, 2013) ("[T]he undersigned is not inclined to allow [the plaintiff] to

24  amend yet again to attempt to state a *Bivens* claim  . . . especially since there may be only nominal

25  damages available, and qualified immunity would probably be applicable in any event.").

26

27      [2] That it takes Donor No. 1 sixteen pages of analysis to explain how the First Amendment was
    allegedly violated to then offer a proposed test is another indication the law is not clearly established.

28

Second, the amended complaint was Donor No. 1's second opportunity to plead damages, even after that defect was pointed out in our initial motion to dismiss. Instead of doing so, the amended complaint asserted a different jurisdictional hook: the Declaratory Judgment Act. *See* Amend. Compl. ¶ 7. But after we explained in our renewed motion to dismiss why *that* was wrong, Donor No. 1 abandoned the argument, making no mention of the Act in his opposition. This Court should decline his request for a third bite at the apple. If, however, this Court is inclined to grant leave to amend, it should permit amendment *before* addressing the First Amendment issue so that the Individual Defendants have the opportunity to raise any and all defenses available to a *Bivens* claim that properly seeks damages.

## II.     Donor No. 1 does not plausibly allege a First Amendment violation.

Assuming Donor No. 1 has sufficiently alleged any protected First Amendment interest at all, he must still plausibly allege retaliatory intent on his retaliation claim. On his non-retaliation claim, he must still plausibly allege either that (1) the Government had no compelling interest in preventing the abuse of public defender funds; or (2) the information sought was not sufficiently related to that interest. As the opposition reveals, Donor No. 1's retaliation claim rests largely on his "sufficiently-related" argument, maintaining that the WePay subpoena sought information so "complete[ly] irrelevan[t]" that retaliatory intent should be presumed. Opp., at 5. And after a flimsy challenge as to whether the Government was *really* concerned with public defender resources, the opposition quickly transitions to whether the subpoena sought information "completely irrelevant to that inquiry." *Id.* at 9. In short, despite sixteen pages of analysis, grand pronouncements on First Amendment jurisprudence, and a long discussion on various balancing tests, the First Amendment issue boils down to one simple inquiry: was the WePay subpoena "sufficiently precise" when it sought a transaction history of the WePay account. *Id.* at 6.[3]

In his opposition, Donor No. 1 does not dispute five points: (1) the Government has a compelling interest in determining whether public defender resources are being abused; (2) 18 U.S.C. § 3006A

_____

[3] The Individual Defendants do not concede that Donor No. 1 has sufficiently alleged protected activity, an expectation of privacy, or that a reasonable person would be chilled by the conduct alleged in the amended complaint. As explained in our renewed motion to dismiss, it is far from clear whether any First Amendment rights were implicated by the WePay subpoena. *See* Motion, at 13-14. But this Court need not reach these issues because Donor No. 1's allegation of retaliatory intent falls woefully short, and the purpose of the WePay subpoena easily outweighs any purported First Amendment rights.

motions are proper even where the failure to disclose funds was inadvertent; (3) Rule 17 subpoenas apply to pre-trial hearings, (4) Rule 17 subpoenas are a proper vehicle to compel the production of evidence related to a Section 3006A hearing; and (5) it did not violate Rule 17 to direct the WePay materials to SA Smith. These concessions and the fact that the WePay subpoena also sought relevant information ends this case. *Cf. United States v. Curtin*, 489 F.3d 935, 953-54 (9th Cir. 2007) (en banc) ("[T]he Supreme Court has held on many occasions in other contexts that opinions and other information that otherwise might be entitled to First Amendment protection are not immune from discovery and use as evidence in court, as long as they are relevant to an issue in a given case.").

### A. Donor No. 1 fails to plausibly allege retaliation.

Donor No. 1 misstates the law on retaliation. He cites *Worrell v. Henry*, 219 F.3d 1197, 1212 (9th Cir. 2000), for the proposition that to state a First Amendment retaliation claim, a plaintiff need only show that the defendant's conduct was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Opp., at 4. He fails to mention, however, that in light of intervening precedent – *Hartman v. Moore*, 547 U.S. 250 (2006) – the plaintiff "must ultimately prove that [the defendant's] desire to cause the chilling effect was a *but-for cause* of the defendant's action." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (emphasis added). Donor No. 1 should have been aware of this change because the *other* retaliation case he cites discusses it. *See* Opp., at 5 (citing *Denney v. DEA*, 508 F. Supp. 2d 815, 830-31 (E.D. Cal. 2007) ("Although previous Ninth Circuit law suggested that plaintiffs need only prove that the retaliatory animus was a 'substantial or motivating factor,' it appears that *Hartman* has elevated the requisite standard to but-for causation.")). Thus, to state a retaliation claim, Donor No. 1 must allege sufficient facts to allow the Court to plausibly infer that an intent to retaliate based on the content of the messages on the WePay website was the but-for cause of the subpoena's issuance. Donor No. 1 does not come close to alleging such facts.

This Court is presented with two scenarios: either (1) the Individual Defendants were motivated by an intent to determine if public defender resources were being abused; or (2) they were motivated by an intent to retaliate against Brown supporters. This Court must determine which is plausible. That the Government issued a subpoena regarding an account specifically set up for Brown's "legal defense,"

1  and then moved to have the account funds directed to the public defender's office demonstrates that the

2  first intent is the plausible one. Indeed, the magistrate judge conclusively found that the intent behind the

3  Government's motion was "to assure the Defendant is not wrongly receiving court-appointed counsel

4  when he should not." (ECF 33-8, at 1). If the Individual Defendants were motivated by retaliatory intent

5  through some "outrageously overbroad" subpoena (Opp., at 6), fully disclosing to the magistrate judge

6  that (1) the WePay response included third-party information, and (2) the WePay website stated that

7  such information would be kept confidential; and then asking permission to file the motion papers under

8  seal to protect that information was certainly a strange way to retaliate. (ECF 33-5, at 5-6). In light of

9  these undisputed facts, this Court should not credit the contrary allegation of some grand government

10  conspiracy based solely on "information and belief." *See* Amend. Compl. ¶ 30; *see also Mendocino*

11  *Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) (plaintiff "may not recover merely on

12  the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives").

13      Recognizing that the magistrate judge found that the Section 3006A motion was also filed "in the

14  interests of justice," Donor No. 1 alleges that "nothing in the record suggests the court was aware of the

15  WePay Subpoena when it issued its order." Opp., at 12 n.2. But of course it was. The WePay response,

16  which was attached to the Section 3006A motion, included a header that said "Subpoena." (ECF 33-2).

17  The accompanying affidavit, also attached to the motion, had a footer that said "Trial Subpoena." *Id.*

18  The affidavit referenced the subpoena eight times. *Id.* Obviously, through that filing, the magistrate

19  judge was well-aware that the Government issued a subpoena and that WePay responded by providing a

20  "transaction history," which included third-party donor information. The Government specifically asked

21  to file the motion under seal to protect that information. Fully aware of these facts, the magistrate judge

22  recognized the obvious: the Government's efforts to protect the integrity of public defender resources

23  were done "in the interests of justice." (ECF 33-8, at 1). It follows that the only plausible conclusion is

24  that *that interest* was the but-for cause of the subpoena's issuance.[4]

25

26      [4] Equally unavailing is Donor No. 1's argument that AUSA Heath "demonstrated her intent to

27  suppress speech when she argued for a gag order against Mr. Brown because he had written an article
   that was critical of the government in a tone that was problematic." Opp., at 5. That was not the reason
   for the proposed "gag" order. Indeed, at the same hearing, AUSA Heath freely acknowledged that

28  C 17-0586 MEJ

1    The only case Donor No. 1 cites to support his retaliation claim is *Mendocino*. There, police

2    arrested the plaintiff on an accusation that she was transporting a bomb that accidentally blew up.

3    *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1287 (9th Cir. 1999). But that proved false,

4    and with no evidence of culpability, the prosecutor declined to prosecute. *Id.* at 1287-88 & 1293 n.15.

5    Obviously, an arrest based on false information and a declination of prosecution based on a complete

6    lack of evidence lends much more plausibility to an allegation of retaliation than anything alleged here.

7    This was not the "baseless investigation" alleged in *Mendocino*; the information collected here was

8    attached to a motion the magistrate judge found was filed "in the interests of justice." (ECF 33-8, at 1).

9       **B.  The Government interest easily outweighs any alleged First Amendment interests.**

10      Turning to the non-retaliation claim, Donor No. 1 half-heartedly challenges the Government's

11   asserted interest for issuing the WePay subpoena. In doing so, he misstates the law and the record, and

12   falsely criticizes an Assistant United States Attorney. Donor No. 1 deems the asserted interest,

13   preventing the abuse of public defender resources, "highly questionable" because AUSA Heath

14   allegedly knew from the start that the WePay funds were intended for Brown's *private attorney*, but still

15   sought to have them directed to the public defender's office. Opp., at 9. According to Donor No. 1,

16   AUSA Heath failed to inform the magistrate judge that the funds were intended for a private attorney

17   and failed to withdraw her motion after Brown's private attorneys entered appearances. *Id.*; *see also*

18   (ECF 36, at 17). The argument quickly falls apart. First, Donor No. 1 is wrong on the law. It does not

19   matter for whom or what the funds were intended. If a defendant who has been appointed a public

20   defender has access to any funds at all, the statute is clear: those funds are the proper subject of a

21   Section 3006A motion. *See* 18 U.S.C. § 3006A(f) (stating that when court "finds that funds are available

22   for payment from or on behalf of a person furnished representation, it may authorize or direct that such

23   funds be paid to the . . . community defender organization which provided the appointed attorney.").

24      Second, Donor No. 1 is wrong on the facts. To support his allegation that AUSA Heath knew the

25

26   Brown had a First Amendment right to publish articles critical of the government and could continue to
     do so even under the proposed order. *See* Motion, at 13. Also, the district court adopted her position and

27   entered an order prohibiting all extrajudicial statements regarding the case. *Id.* None of these facts
     demonstrates that the but-for cause of a subpoena issued months earlier was to retaliate against Brown.

28   C 17-0586 MEJ

1    WePay funds were intended for a private attorney, he cites a 03/07/2013 screenshot of the website that

2    states that "[a]ll donations will be exclusively used to hire private criminal defense counsel." (ECF 29-

3    3).[5] Donor No. 1 then accuses AUSA Heath of "omit[ting] the above-quoted section" from the her

4    motion. Opp., at 9; *see also* (ECF 36, at 17) ("[S]he omits a critical passage."). However, as Donor No.

5    1 acknowledges, (ECF 36, at 17), earlier screenshots of the website were attached to AUSA Heath's

6    motion as Attachments A, B, and C. *See* WePay Screenshots (also attached hereto as Exhibits A, B, and

7    C). As it turns out, the above-quoted section indicating that donations would be "used to hire private

8    criminal defense counsel" did not appear on the website when the Government issued the subpoena or

9    when AUSA Heath filed her motion. Instead, the website simply stated that the donations would go

10   towards Brown's "legal defense." *Id.* Apparently, in *response* to the Section 3006A motion, Kevin

11   Gallagher *edited* the website. Donor No. 1. concedes that Gallagher edited the website shortly after

12   AUSA Heath filed her motion. *See* Amend. Compl., at 6 n.3. If anything is "highly questionable," it is

13   reliance on the wrong screenshots to falsely criticize AUSA Heath. In any event, regardless of what was

14   said on the WePay website, because Brown had a public defender at the time, access to *any* funds was

15   the proper subject of a Section 3006A motion, particularly funds intended for Brown's "legal defense."[6]

16        Donor No. 1 faults AUSA Heath for not withdrawing her motion after Brown's private attorneys

17   entered appearances. Nothing required her to do so, and the accusation misrepresents what occurred in

18   the criminal action. AUSA Heath filed the motion to direct funds on February 13, 2013. (ECF 33-5). A

19   hearing on the motion was set for May 1, 2013. (ECF 33-7). Brown's private attorneys waited until the

20

21         [5] Donor No. 1 used web.archive.org to obtain his screenshot of the WePay website and the earliest screenshot available on that site is from March 07, 2013. (ECF 29-3).

22         [6] The Court can take judicial notice of the WePay screenshots attached to this reply for the same

23   reasons stated in the previously filed request for judicial notice. (ECF 33, at 2-3). The WePay website is referenced throughout the amended complaint, Donor No. 1 also attaches screenshots to the amended

24   complaint, and the screenshots attached to the instant motion were all filed in the criminal action. It is well established that when considering a motion to dismiss, courts may consider in their entirety all

25   materials incorporated into the complaint by reference, as well as court filings, including documents filed under seal. *See id.* Moreover, in their opposition to the motion to dismiss filed by the United States,

26   Plaintiffs note that the attached screenshots were not included in the request for judicial notice, but baldly opine that had Defendants attached them, it would prove their case. (ECF 36, at 17). The

27   screenshots instead prove them wrong, and this Court should not hesitate to consider them.

28   C 17-0586 MEJ

     DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S REPLY BRIEF                                    7

1   day of the hearing to enter appearances. (ECF 33-4, Docket Entries 56 & 57). With full knowledge that

2   Brown had retained private counsel, the magistrate judge heard evidence on the motion. (ECF 33-8).

3   The decision to proceed on the motion was the magistrate judge's decision. And it was not error to do

4   so. Because funds were being raised for Brown for several months while he was receiving the services

5   of free public counsel, the magistrate judge still could have ordered a portion of those funds directed to

6   the public defender's office. That he ultimately declined to do so does not mean the motion lacked merit,

7   particularly where he found the motion was filed "in the interests of justice."

8        In short, AUSA Heath omitted nothing material about the WePay website from her motion. Not

9   only did she attach screenshots, she embedded hyperlinks in the body of her motion, providing the

10  magistrate judge with ample opportunity to verify what did or did not appear on the website, including

11  Gallagher's subsequent edits. (ECF 33-5, at 4-5). As the *only* challenge to the Government's asserted

12  interest for issuing the WePay subpoena is both legally and factually incorrect, this Court may accept as

13  true that the Government asserted a sufficiently compelling interest for issuing the WePay subpoena.[7]

14       We now turn to the central inquiry, whether the WePay subpoena was "sufficiently precise"

15  when it sought a transaction history of the WePay account. The WePay subpoena requested "any and all

16  records and information for the account of 'WePay-FREE BARRETT BROWN,'" and then clarified

17  what that included: (1) subscriber records and information for the user of the account; (2) financial

18  information regarding the user; (3) sources of the funds; (4) physical location of the funds; (5) a

19  complete transaction history; and (6) all records and information obtained from any verification checks

20  on purchasers. (ECF 33-1). According to the WePay response, it was the request for a "transaction

21  history" that captured the donor information. (ECF 33-2, at 1) ("See below for transaction history of the

22  account."). Thus, Donor No. 1's complaint about any other language in the subpoena is irrelevant

23  because it was the request for a "transaction history" that allegedly caused him harm.[8]

24

25       [7] The previous version of the website also stated that the donor information provided would be
     "kept confidential." *See* WePay Screenshots. In response to AUSA Heath's motion, it appears Gallagher
26   also edited the website to state that the information would be "kept *strictly* confidential." (ECF 29-3)
     (emphasis added). Donor No. 1 uses that edited language to enhance his civil lawsuit. Opp., at 2. Thus,
27   two key statements he relies on did not appear on the website when AUSA Heath filed her motion.

28       [8] "Donor No. 1 believes the term 'purchaser' refers to the donors," and then argues that

The relevant inquiry then is whether seeking a transaction history was sufficiently related to the Government's interest in ensuring that Brown was not abusing public defender resources. It clearly was. The WePay account acted like a bank account and it required the account holder to link up one or more "funding sources" to support the account. The account could also be used to make direct purchases. The Government needed to determine whether Brown had access to the funds at any point in time, including whether the WePay account was *receiving* funds from a "funding source" connected to Brown or *sending* funds elsewhere such that the Government might need to further trace those assets to see if they too were connected to Brown. It is important to note that when the subpoena issued, the Government did not know what records WePay maintained or in what format. At no point does Donor No. 1 explain why this information was irrelevant to the Government's interest in the account. And at no point does he explain how else the Government could have ascertained this information without seeking a transaction history, even if the result was that it gathered donor information – information the Government sought to protect by filing its motion under seal. The short answer is he cannot. He instead focuses on the fact that the amount in the fund was publicly available to argue the subpoena was unnecessary. Opp., at 14-15. There are two problems with this argument. First, whether Brown had withdrawn money from the account or used it to make direct purchases was not publicly available such that the Government could be confident that the amount on the website reflected the true amount accessible to Brown. Second, to justify a Section 3006A motion, the Government needed admissible evidence to establish Brown's access to the funds. Nothing publicly available established access. A transaction history was necessary

---

Paragraph 6 of the subpoena, which sought verification checks on "purchasers," had no business seeking such information on donors. Opp., at 2, 10-11, 18 n.5. His premise is wrong. The introductory paragraph to the WePay User Agreement defines the term "purchaser" to mean the "user" of the WePay account. https://web.archive.org/web/20130309195418/https://www.wepay.com/legal/terms-of-service. That is because WePay funds could be used to make direct purchases and in Paragraph 10 of the WePay User Agreement, WePay reserved the right to conduct verification checks on "purchasers," *i.e.*, "users" of the WePay account, to ensure sufficient funds. Here, depending on how the account was set up, the user was either Brown's mother or Kevin Gallagher. Verification checks simply had nothing to do with donors. The same is true with respect to the subpoena's request in Paragraph 3 for information related to the "sources" of funds. Paragraph 17 of the WePay User Agreement uses the phrase "funding source" to refer to the financial institution supporting the user's account, *i.e.*, Brown's mother's bank account. Because WePay funds could be used to make direct purchases, if the WePay account went into default, WePay reserved the right to access the user's "funding source" to make up the balance. This too has nothing to do with donors. Donor No. 1 simply has no basis to challenge these parts of the subpoena.

C 17-0586 MEJ

DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S REPLY BRIEF                                      9

1  to answer both questions.

2        None of the cases cited by Donor No. 1 compels a different result. Donor No. 1 deems *Eilers v.*

3  *Palmer*, 575 F. Supp. 1259 (D. Minn. 1984), "particularly instructive." Opp., at 8. That was a civil suit

4  in which the defendants served an interrogatory seeking "the names of all individuals and entities who

5  are funding the plaintiff's lawsuit." *Eilers*, 575 F. Supp. at 1259-60. The defendants defended their

6  request on the ground that the information was "needed for an effective *voir dire* of the jury panel." *Id.*

7  at 1261. The court disagreed, explaining that "[i]t is not necessary for the defendants to know the name

8  of every group supporting the plaintiff's lawsuit in order to weed out biased jurors." *Id.* Here, the

9  Government certainly had an interest in ascertaining whether Brown was abusing public defender

10  resources when he was receiving the services of a public defender while funds were simultaneously

11  being raised for his legal defense. There is no meaningful comparison between the private interests

12  asserted in *Eilers* and the Government interests at stake in the Brown criminal case (and here).

13        Donor No. 1 ends his argument by advocating that this Court apply a balancing test another court

14  applied to a civil subpoena issued pursuant to Civil Rule 45. *See Doe v. 2theMart.com Inc.*, 140 F. Supp.

15  2d 1088 (W.D. Wash. 2001). But a test developed for deciding when to quash a subpoena – a matter

16  governed by Civil Rule 45(d) – is not necessarily a test for finding an actual First Amendment violation

17  (which is what Donor No. 1 alleges here). Nor does that Civil Rule 45 test readily translate when the

18  supposed constitutional violation is claimed to flow out of the issuance of a subpoena governed by

19  Criminal Rule 17. An element of the proposed test asks whether the information sought relates to a core

20  claim or defense. *Doe*, 140 F. Supp. 2d at 1096. Donor No. 1 then argues that because Brown was never

21  charged with a Section 3006A violation and the subpoena did not otherwise relate to a charged offense,

22  the subpoena fails the proposed test. Opp., at 13-14. But Donor No. 1 confuses apples and oranges, and

23  in all events misunderstands Section 3006A. A "claims-or-defenses" factor makes sense in the civil

24  subpoena context because Civil Rule 45 is subject to the scope of discovery allowed under Civil Rule

25  26(b). *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). And that scope of discovery

26  is limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional

27  to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). But the subpoena at issue here was controlled by

28

the Federal Rules of Criminal Procedure, and in all events Donor No. 1 is not trying to quash a subpoena; he wants to show an actual First Amendment violation. The test applied in *Doe* might have been informed by the constitutional interests of third parties, but it was nonetheless a test for applying Civil Rule 45 and not a rule of constitutional law.

Still more, Section 3006A is not a statute proscribing criminal conduct with which one is "charged." And it is well-settled that even an inadvertent failure to disclose funds can be the subject of a Section 3006A motion. *Cf. United States v. Konrad*, 730 F.3d 343, 347 n.3 (3d Cir. 2013) ("[N]o court has interpreted the CJA to require a finding that a defendant provided false information . . . to order reimbursement, nor do we."). Because Section 3006A motions deal with funding for public counsel, it is never going to "relate" to a charged offense as understood by Donor No. 1's proposed test. This means that under that test, a subpoena seeking information relevant to a Section 3006A motion will *always fail* no matter the Government's need if even the most minimal First Amendment rights are implicated. That cannot be the law. This Court should accordingly reject Donor No. 1's proposed test.

### III.   This Court lacks personal jurisdiction over the Individual Defendants.

Donor No. 1 argues he need not establish personal jurisdiction over the Individual Defendants in their individual capacities because they do not contest personal jurisdiction in their official capacities, and he "is not required to establish multiple bases upon which the Court can find personal jurisdiction." Opp., at 22. That is wrong. Donor No. 1 must still establish personal jurisdiction over the Individual Defendants in their individual capacities because an official-capacity claim is a claim against the United States. *McKelvey*, 820 F.3d at 1095. To hold otherwise would allow a plaintiff to subject federal officers to personal jurisdiction in all 95 federal districts in all 50 states simply by adding an official-capacity request for injunctive relief to the complaint. That is not the law. *See Stafford v. Briggs*, 444 U.S. 527, 544 (1980) (although federal venue statute establishes nationwide jurisdiction for federal officers in their officials capacities, it does not confer personal jurisdiction over them in their individual capacities); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1460-61 (9th Cir. 1985) (same); *see also Juste v. United States DOJ*, No. 16-3335, 2017 U.S. Dist. LEXIS 37878, *5-6 (D.S.C. Feb. 23, 2017) ("A district court does not have nationwide jurisdiction over defendants who live outside the forum state simply because the

defendants are federal government employees. Because a *Bivens* action seeks relief against the personal resources of a federal employee in his individual capacity, the court must acquire personal jurisdiction in order to enter a binding judgment.") (citations omitted); *Anderson v. FDIC*, No. 96-70411, 1996 U.S. Dist. LEXIS 19907, *5 (E.D. Mich. Nov. 25, 1996) ("When relief is sought against defendants personally rather than solely against the United States, the plaintiff(s) must prove that the court has personal jurisdiction over each one in his or her individual capacity."). This principle is reflected in the fact that service of process on a federal officer sued in his or her official capacity is insufficient to complete service on the same federal officer in his or her individual capacity. *Compare* Fed. R. Civ. P. 4(i)(2) (official-capacity service) *with* Fed. R. Civ. P. 4(i)(3) (individual-capacity service).

To establish personal jurisdiction here, Donor No. 1 focuses primarily on the relationship between the Individual Defendants and WePay. Opp., at 22-23. This ignores the Supreme Court's admonition that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). Donor No. 1 also cites *Klayman v. Deluca*, No. 14-3190, 2015 U.S. Dist. LEXIS 11403 (N.D. Cal. Jan. 30, 2015), to support his argument that because he resides in California, personal jurisdiction is established there. Opp., at 22-23 & n.7. In that case, the defendant issued a subpoena to a third-party in California regarding information about a plaintiff who resided in Florida. *Id*. at *7-8, *11-12. The court held that service of a subpoena on a third party in the forum state does not constitute purposeful availment for purposes of establishing personal jurisdiction. *Id*. at *12-13. Instead, the court reasoned, it is where the harm occurs that is relevant, and in privacy cases, the harm occurs where the plaintiff works or resides. *Id*. at *13. But Donor No. 1 has no persuasive response to the argument that when the subpoena issued, all of the donors to the WePay website were anonymous. To establish purposeful availment, the defendant must have targeted "a plaintiff whom the defendant knows to be a resident of the forum state." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citation omitted).

In *Washington Shoe*, the Ninth Circuit noted that the defendant-company in that case knew or at least "should have known" that the plaintiff resided in Washington because it received two cease-and-desist letters from the plaintiff's corporate counsel located in Washington. *Id.* at 678. Donor No.1 seizes

on that fact to argue that the Individual Defendants also "should have known" that Donor No. 1 resided in California. Opp., at 23. The *only* argument he makes to support that contention is that California is "the most populous state." *Id.* at 24. That conflates probability and speculation. Personal jurisdiction analysis rests on neither. Indeed, *Washington Shoe* makes clear that something more than the "foreseeable effects in the forum state" is required. 704 F.3d at 675 (citation omitted). Knowledge that a plaintiff resides in the forum state where the defendant received official correspondence from the plaintiff's corporate counsel *in that state* fits the bill. The possibility that someone might reside in California because it is a populous state does not.

Donor No. 1's remaining arguments are all policy based. He asks this Court to "consider the alternative," that "[i]f the Court accepts Defendants' theory, Defendants will not be subject to personal jurisdiction anywhere except Texas." Opp., at 23. Donor No. 1 does not explain why that is problematic. Minimum-contacts analysis focuses on the due process concerns of *the defendant*, not the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.") (internal quotations and citation omitted). And it should not be all that surprising that personal jurisdiction might only lie in Texas when the defendants reside there, this case arises out of a Texas criminal case, the subpoena issued from a Texas court, and the purpose of the subpoena was to trace assets payable to the public defender's office in Texas.

Donor No. 1 next argues that "[t]he fact that the donors were anonymous should not absolve Defendants of their liability." Opp., at 23. That misunderstands the point of personal jurisdiction. If the Individual Defendants prevail on this argument, that does not absolve them of anything, it just means Donor No. 1 sued in the wrong forum. Despite his protestations to the contrary, that Donor No. 1 chooses to be anonymous does not change the fact that he must still allege facts sufficient to establish this Court's personal jurisdiction just like any other plaintiff. Donor No. 1 again reiterates he did nothing wrong, *id.*, but that is irrelevant. As explained above, minimum-contacts analysis is about whether the exercise of jurisdiction *over the defendant* is fair and reasonable. *See Wash. Shoe*, 704 F.3d at 672.

Finally, with respect to the *Terracom* factors, the Individual Defendants largely rest on their

1    initial submission. Motion, at 25. We do make three points here. First, that counsel is located in

2    Washington, D.C., does not in any way eliminate the burden on the Individual Defendants in having to

3    continue to defend this lawsuit in California, particularly should their appearance ever be required.

4    Second, Donor No. 1 states that California's interest in his privacy outweighs Texas's interest in an

5    allegedly improper Rule 17 subpoena. Opp., at 24. The Texas interest is obviously greater than that: a

6    federal court in Texas has a strong interest in tracing funds rightfully payable to a public defender

7    organization located in that state. Third, regardless of whether Donor No. 1 intends to call Brown and

8    his mother as witnesses, they certainly have relevant knowledge concerning this lawsuit and the

9    Individual Defendants might need to call them should this case ever proceed. Thus, they still count as

10   potential witnesses and tip the scale of the most convenient forum back towards Texas.

11          That this Court plainly lacks personal jurisdiction over the Individual Defendants is another

12   reason why amendment would be futile and why leave to amend should be denied. This Court should

13   thus resolve this fully-briefed issue now before giving Donor No. 1 an opportunity to plead damages.

14       **IV.    Plaintiffs are not entitled to discovery.**

15          In their opposition to the motion to dismiss filed by the United States, Plaintiffs reiterate that in

16   the initial request for judicial notice, Defendants "failed to indicate that the [WePay Response] had been

17   redacted for purpose of filing in this action." (ECF 36, at 3). The Individual Defendants responded to

18   this "convoluted assertion" by pointing out that the parties *agreed* to redact the WePay response for

19   purposes of filing in this action "precisely because Donor No. 1 wants to proceed anonymously and the

20   parties agreed to postpone resolution of the question of whether [he] can indeed do so." Motion, at 5 n.3.

21   In any event, as Plaintiffs concede (ECF 36, at 3), Defendants made "extra" clear in the renewed request

22   for judicial notice that the WePay response was redacted for purposes of filing in this action. (ECF 33, at

23   2). Why Plaintiffs raise this issue again is unclear.

24          Plaintiffs next allege that they have reason to believe that "WePay maintained more information

25   than Defendants have included in the filed version of the WePay Response." (ECF 36, at 4). That

26   information supposedly includes "the addresses, phone numbers, email addresses, and the text messages

27   sent by donors." *Id.* But as Plaintiffs further acknowledge, the WePay response was accompanied by a

28   C 17-0586 MEJ

     DEFENDANTS CANDINA HEATH AND ROBERT SMITH'S REPLY BRIEF                                    14

custodian affidavit, which definitively states "[n]o documents or tangible things responsive to the trial subpoena have been withheld by WePay, Inc." (ECF 33-2, at 5). According to Plaintiffs, that statement could not be true where WePay was required to produce "any and all records and information" for the WePay account. (ECF 36, at 4). Thus, Plaintiffs maintain, either the Government attached an incomplete WePay response in the criminal action (and did the same here), or WePay withheld information from its production. *Id.* Plaintiffs believe they are entitled to discovery "to resolve this inconsistency." *Id.*

There are several things wrong with this argument. If WePay withheld information, that is of no moment because it would not have in any way affected the rights of Plaintiffs. In any event, as the custodian affidavit states, WePay only turned over information it believed "fall[s] within the terms of the trial subpoena." (ECF 33-2, at 5). Indeed, despite the prefatory language "any and all," the WePay subpoena included six subcategories clearly indicating the type of information the Government was seeking. Nowhere in those subcategories did the WePay subpoena request "the addresses, phone numbers, email addresses, and the text messages sent by donors." (ECF 33-1, at 4). The only request for addresses, phone numbers, and email addresses was limited to the "user" of the account. *Id.* No request was made for text messages at all. *Id.* Plaintiffs cannot baldly speculate that WePay might have turned over additional information so plainly unresponsive to the WePay subpoena as a means for opening up discovery in this case. The Government did not request this information, and there is no indication WePay produced it. The Government readily acknowledges it received the name of each donor and the name of each donor's credit card company and the last four digits of each account number. Given Donor No. 1's contention that this information and the fact of the donation itself are afforded the utmost First Amendment protection (Opp., at 8), even if the Government did receive any of the above-mentioned items (and it did not), it would not in any way change the First Amendment analysis. This Court should accordingly deny the request by Plaintiffs for discovery.

## CONCLUSION

For all of the foregoing reasons, AUSA Heath and SA Smith respectfully request that this Court dismiss Count One, with prejudice, and dismiss them from this suit altogether.

Dated: August 28, 2017                                    Respectfully submitted,

1    CHAD A. READLER
     Acting Assistant Attorney General, Civil Division
2
     BRIAN J. STRETCH
3    United States Attorney, Northern District of
     California
4
     C. SALVATORE D'ALESSIO, JR.
5    Acting Director, Torts Branch, Civil Division

6    RICHARD MONTAGUE
     Senior Trial Counsel, Torts Branch, Civil Division
7
     /s/ Siegmund F. Fuchs
8    SIEGMUND F. FUCHS
     Trial Attorney, Torts Branch, Civil Division
9
     Attorneys for Defendants Candina Heath and
10   Robert Smith

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   C 17-0586 MEJ