UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN GALLAGHER, et al.,

          Plaintiffs,

    v.

UNITED STATES, et al.,

          Defendants.

Case No.  17-cv-00586-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. Nos. 32, 34

### INTRODUCTION

Plaintiffs Kevin Gallagher and Donor No. 1 filed this putative class action asserting claims for violations of the First Amendment of the United States Constitution; the federal Stored Communications Act, 18 U.S.C. §§ 2701-12; and the right to privacy afforded by the California Constitution. *See* First Am. Compl. ("FAC"), Dkt. No.  29.  Pending before the Court are two Motions to Dismiss.  Individual Defendants ("ID") Candina Heath and Robert Smith move to dismiss the claims asserted against them in their individual capacity pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6). *See* ID Mot., Dkt. No. 32.  The United States moves to dismiss the claims asserted against it directly and against Heath and Smith in their official capacity pursuant to Rule 12(b)(1) and Rule 12(b)(6). *See* US Mot., Dkt. No. 34.  Plaintiffs filed Oppositions (Pls.' ID Opp'n, Dkt. No. 35; Pls.' US Opp'n, Dkt. No. 36) and Defendants filed Replies (ID Reply, Dkt. No. 38; US Reply, Dkt. No. 39).

The Court heard oral argument on September 28, 2017.  Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** the United States' Motion and **GRANTS** the Individual Defendants' Motion for the following reasons.

United States District Court
Northern District of California

# ALLEGATIONS OF THE FAC

Donor No. 1 donated to a crowd-funding campaign to support the legal defense of Barrett Brown, a jailed journalist, because he believed the journalist was imprisoned because of the views the journalist espoused, rather than the conduct the journalist engaged in.  FAC ¶ 2.  Mr. Brown had "reported extensively on the links between the United States government and private intelligence contractors."  *Id.* ¶ 19.  Gallagher used a website operated by WePay to organize the crowd-funding campaign.  *Id.* ¶ 25.  The WePay donation page through which Donor No. 1 contributed to Mr. Brown's legal defense fund stated "[e]ach dollar raised is your vote in this important campaign for free speech and transparency on the internet – and around the world."  *Id.* ¶ 27; Donation Page, Dkt. No. 29-3.  The donation page also informed the donors that the information they provided would be "kept strictly confidential."  FAC ¶ 28.

Hundreds of individuals from across the country also contributed to Mr. Brown's legal defense fund.  *Id.* ¶ 2.  Many included messages such as "prosecutorial bludgeoning must end" and "I think it is imperative that everyone who cares about free speech, a free internet, or is horrified by prosecutorial overreach, donate to Barrett Brown's legal defense."  *Id.* ¶ 26.

The crowd-funding campaign attracted Defendants' attention.  *Id.* ¶ 30.  During the relevant period, Heath was an Assistant United States Attorney in the Northern District of Texas.  *Id.* ¶ 15.  Smith was a special agent in the Dallas office of the Federal Bureau of Investigations.  *Id.* ¶ 16.  Heath and Smith are both citizens of Texas.  *Id.* ¶¶ 15-16.  Smith enlisted  Heath's help and the two of them began efforts to identify and surveil Mr. Brown's supporters.  *Id.* ¶ 29.  "On information and belief, Defendants conspired to draft and serve the WePay Subpoena" directing WePay to produce "any and all records and information" associated with the crowd-funding campaign, including the sources of the funds donated (i.e., "the financial institution, credit card company, account holder at financial institution or of the credit card account"); the location of the funds; a "[c]omplete transaction history, including invoices and sending account numbers and receiving account numbers[;]" and "[a]ll records and information obtained from any verification checks on purchasers."  *See id.* ¶¶ 30, 32; *see also* Subpoena at 5, Dkt. No. 33-1.  The WePay Subpoena was signed by Heath and required WePay to send its response to Smith.  *Id.* ¶ 33 &

2

1   Subpoena at 4.  WePay produced documents in response.  *Id.* ¶ 32.  At a minimum, this response

2   included donors' identities, donors' sensitive financial information, and the amounts of each

3   donation.  *Id.* ¶ 51; Resp., Dkt. No. 33-2.

4        Defendants contend they issued the Subpoena "to determine if Brown, who was previously

5   appointed a public defender [in the underlying criminal proceedings], could afford his own

6   attorney."  FAC ¶ 46 (internal quotation marks and citation omitted).  But the Subpoena was

7   unnecessary to achieve this stated purpose: "WePay . . . tracked the total amount raised and made

8   that amount publicly visible on the donation page."  *Id.* ¶ 47.  Nor was this information relevant to

9   the government's motion to seize the funds in the WePay account.  *See id.* ¶¶ 48-50 (identities of,

10  and amounts donated by, individual donors completely unjustified and irrelevant to Defendants'

11  motion to seize the funds in the WePay account).

12       WePay produced a transaction history reflecting the donations the Brown campaign had

13  received; among other information, the transaction history included the date and amount of

14  donations, as well as the donors' names and payment method.  *See* Resp.; *see also* US Mot. at 4.

15  WePay also maintained "the addresses, phone numbers, email addresses, and the text of messages

16  sent by donors."  FAC ¶ 53.  This is more information than WePay provided in the response

17  Defendants attach to the RJN.  *See* Resp.  WePay also represented it produced all information

18  responsive to the Subpoena and did not withhold any documents.  *Id*.

19       Donor No. 1 believes Defendants still maintain the information produced in WePay's

20  response and use it to unlawfully surveil him and the other donors to the crowd-funding campaign.

21  *Id.* ¶ 55.  Donor No. 1 believes that the WePay subpoena was part of a larger effort on the part of

22  Defendants to identify and surveil Mr. Brown's supporters.  *Id.* ¶ 30.  He knows Defendants'

23  illegal surveillance scheme extended to at least one other internet service provider, CloudFlare,

24  Inc., and believes it has affected others.  *Id.*  In light of the complete irrelevance of the information

25  sought by the WePay subpoena to the crimes with which Mr. Brown was charged, Donor No. 1

26  believes Defendants perpetrated their illegal surveillance scheme to chill protected expression.  *Id.*

27  The scheme has had the intended effect.  *Id.*

28       Based on these facts, Plaintiffs assert an SCA claim against the United States; Donor No. 1

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  asserts a First Amendment claim against Heath and Smith in both their individual and official

2  capacities; and Donor No. 1 asserts a claim for violation of the right to privacy provided in Article

3  I § 1 of the California Constitution against Heath, Smith, and/or the United States.  Plaintiffs

4  contend the Court has original subject matter jurisdiction over the SCA and First Amendment

5  claims pursuant to 28 U.S.C. § 1331; against Heath and Smith in their individual capacities

6  pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

7  (1971); and over Heath and Smith in their official capacities pursuant to the Administrative

8  Procedure Act.  FAC ¶¶ 6-8.  Gallagher and Donor No. 1 each filed administrative claims

9  asserting violations of the SCA on or about March 30, 2016.  FAC ¶ 13 & Exs. A-B.

**REQUEST FOR JUDICIAL NOTICE**

11        Defendants ask the Court to take judicial notice of the subpoena they issued to WePay;

12  WePay's response thereto; court filings in *United States v. Brown*, No. 12-cr-317 (N.D. Tex.), the

13  underlying criminal proceeding against non-party Barrett Brown; and the transcript from a

14  September 2014 hearing held in connection with those proceedings.  *See* RJN, Exs. A-H, Dkt. No.

15  33.

16        Defendants contend the WePay subpoena, the WePay response thereto, and the transcript

17  of the September 2014 hearing are referenced in the FAC and thus may be taken into consideration

18  by the Court pursuant to the incorporation by reference doctrine.  *See* RJN at 2 (citing FAC ¶¶ 3-5,

19  30, 32-34, 44, 46-55, 73, 79).  Indeed, the FAC specifically references these documents, which

20  Defendants have asked the Court to judicially notice in connection with their Motions to Dismiss

21  the original complaint.  FAC ¶¶ 3, 25, 44, 48-53, 73 (citing First RJN, Dkt. No. 26).  Defendants

22  also ask the Court to take judicial notice of documents filed in *United States v. Brown* pursuant to

23  Federal Rule of Evidence 201, as these court filings are not subject to reasonable dispute.  RJN at

24  3.

25        Plaintiffs object only to the request to judicially notice WePay's response to the subpoena.

26  Pls.' US Opp'n at 3-4.  They contend the document Defendants attached to the RJN was redacted

27  in this action, and does not reflect the document that was produced to Defendants in the

28  underlying criminal proceedings.  *Id.* at 3.  They further argue the Court cannot take judicial notice

4

1    of the document without giving Plaintiffs the opportunity to conduct discovery on the contents of

2    the response, especially on whether WePay's response – as shown in the RJN – is complete.  *Id.* at

3    3-4 (explaining the subpoena sought "any and all records and information" and that WePay

4    responded it had not withheld any documents responsive to the subpoena).

5         The Court will take judicial notice of the documents Defendants attach to their RJN, but it

6    will not take judicial notice of the disputed facts recited therein, i.e., the Court takes notice that

7    WePay responded to the subpoena, but not as to whether the WePay response attached to the RJN

8    is complete.  *See Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir. 2001) (courts may take

9    judicial notice of existence of a document, but not for the truth of the facts recited therein).

10                    **DISCUSSION—SUBJECT MATTER JURISDICTION**

11   **A.      Legal Standard**

12        Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power

13   authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen*

14   *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).   Accordingly, "[i]t

15   is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing

16   the contrary rests upon the party asserting jurisdiction."  *Id.*; *Chandler v. State Farm Mut. Auto.*

17   *Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

18        Rule 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter

19   jurisdiction.  A jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*,

20   373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the court determines whether the

21   allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction,

22   accepting all material allegations in the complaint as true and construing them in favor of the party

23   asserting jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual,

24   however, "the court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for*

25   *Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter

26   jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a

27   motion to dismiss into one for summary judgment.  *Id.*; *McCarthy v. United States*, 850 F.2d 558,

28   560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and

United States District Court
Northern District of California

testimony, to resolve factual disputes concerning the existence of jurisdiction").

**B.      California Constitution**

The United States is immune from liability unless it has explicitly waived its sovereign immunity.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also South Delta Water Agency v. DOI*, 767 F.2d 531, 536 (9th Cir. 1985) (sovereign immunity extends to federal employees acting in their official capacities and federal agencies).  The United States originally argued the Court lacked subject matter jurisdiction on a number of bases.  *See US Mot. at 21-32.* After Donor No. 1 confirmed Plaintiffs did not seek monetary damages in connection with this claim (Pls.' US Opp'n at 18 n.3), the only remaining argument this Court must address is whether Section 702 of the APA, 5 U.S.C. § 702, waives the United States' sovereign immunity for violations of the right to privacy created by the California Constitution.  *See* Pls.' US Opp'n at 18; US Reply at 12-14.  It does not:

> [D]espite the broad language of the [APA], it is well settled that the APA does not independently confer jurisdiction on the district courts. . . . Rather, the APA prescribes standards for judicial review of an agency action, once jurisdiction is otherwise established. . . . Nonetheless, . . . a federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to federal agency action as claims arising under federal law, unless a statute expressly precludes review. . . . Thus, while the APA does not confer a district court with jurisdiction, it does provide a waiver of sovereign immunity in suits seeking judicial review of a federal agency action under § 1331.

*Gallo Cattle Co. v. U.S. Dep't of Ag.*, 159 F.3d 1194, 1198 (9th Cir. 1998); *see also United States v. Park Place Ass'n, Ltd*, 563 F.3d 907, 929 n.15 (9th Cir. 2009) ("Section 702 waives sovereign immunity; however, it does not confer federal jurisdiction." (citing cases)).

Donor No. 1 is not seeking review of a federal agency action under Section 1331; Donor No. 1 instead seeks an order declaring that Heath and Smith violated Donor No. 1's rights arising under the California Constitution.  Donor No. 1 does not identify any authority supporting the contention that the APA divests the United States of sovereign immunity in connection with such state law claims.  *See* Pls.' US Opp'n at 18 (relying on *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) ("*McKelvey*") & *Citizens Legal Enforcement & Restoration v. Connor*, 762 F. Supp. 2d 1214, 1232 (S.D. Cal. 2011)).  The petitioner in *McKelvey* asserted claims based on

United States District Court
Northern District of California

several violations of the U.S. Constitution and also under the Federal Tort Claims Act.  820 F.3d at 1092.  In finding the trial court should have dismissed the individual capacity claim against one of the defendants, the Ninth Circuit observed the individual defendant had no authority to provide the equitable relief the petitioner sought, but that the petitioner "may yet be able to obtain" this relief under Section 702 of the APA.  *Id.* at 1096.  The Ninth Circuit quoted Section 702, but did not suggest in any way that Section 702 applied in such a manner as to create a waiver of the United States' sovereign immunity with respect to state law claims—both claims at issue in *McKelvey* raised a federal question.  Donor No. 1 cites *Citizens Legal* for the proposition that "the APA can be used to hold the federal government accountable for violations of California constitutional requirements."  Pls.' US Opp'n at 18.  But Donor No. 1 fails to acknowledge the *Citizens Legal* Court found the APA could be used to enforce the California Constitution because the federal Reclamation Act specifically imposes upon federal agencies "a mandatory and continuing obligation" to comply with state laws governing the management of water.  762 F. Supp. 2d at 1228, 1231 (citing 43 U.S.C. § 383[1]).  Thus, while the plaintiff in *Citizens Legal* sued the federal government under Section 706(1) of the APA to enforce a duty imposed by the California Constitution, a federal statute required the government to follow that particular section of the California Constitution.  Donor No. 1 has identified no federal statute requiring the United States to adhere to Article I section 1 of the California Constitution.

During the September 28, 2017 hearing, defense counsel argued there was no jurisdictional basis for pursuing this declaratory relief claim: "I don't know what their jurisdictional basis to do that is.  I'm not sure how they sue the government through a California state tort to seek declaratory relief, and I've yet to see in this amended complaint what the jurisdictional hook is for that."  Sept. 28, 2017 FTR at 10:52.  The Court asked counsel for Donor No. 1 whether he had an

---

[1] "Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof."  43 U.S.C. § 383.

1    answer, and noted the Court was "having somewhat the same difficulty" finding jurisdictional

2    grounds to consider this claim.  *Id.*  Counsel for Donor No. 1 responded, "I think that's probably

3    fair, your Honor."  *Id.* at 10:53.

4        Because the United States has not waived its sovereign immunity, including as it extends

5    to Heath and Smith acting in their official capacities, the Court GRANTS the Motion to Dismiss

6    the Privacy Right claim.  As Donor No. 1 cannot cure this jurisdictional defect, the dismissal shall

7    be without leave to amend.

8                      **DISCUSSION—PERSONAL JURISDICTION**

9        Heath and Smith argue they did not purposefully direct their activities at California, and

10   thus are not subject to specific personal jurisdiction in their individual capacities here.  *See* ID

11   Mot. at 19-25.[2]

12       "Due process requires that a defendant be haled into court in a forum State based on his

13   own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he

14   makes by interacting with other persons affiliated with the State."  *Walden v. Fiore*, 134 S. Ct.

15   1115, 1123 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).[3]  The

16   existence of personal jurisdiction is based on a defendant's contacts with the forum state itself,

17   rather than simply on that defendant's contact with a plaintiff who resides in a forum, or on the

18   defendant's understanding that his conduct would affect persons in the forum.  *Id.* at 1122-26 (no

19   personal jurisdiction in Nevada over out-of-state defendant where defendant "never traveled to,

20   conducted activities within, contacted anyone in, or sent anything or anyone to Nevada").

21   Plaintiffs bear the burden of establishing that Heath and Smith "purposefully directed" their

22   activities towards California and that the claim arises out of or relates to the Individual

23

24   [2] There appears to be no dispute that there is no basis for exercising general jurisdiction over the
     Individual Defendants, who are both residents of Texas and are not alleged to have extensive
25   contacts with California.  *See* FAC.

26   [3] Generally, personal jurisdiction exists if it is permitted by the forum state's long-arm statute and
     the exercise of personal jurisdiction would not violate federal due process.  *Pebble Beach Co. v.*
27   *Caddy*, 453 F.3d 1151, 1154-44 (9th Cir. 2006).  Because California's long-arm jurisdictional
     statute is coextensive with federal due process requirements, the analysis under California and
28   federal due process is the same.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01
     (9th Cir. 2004).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants' forum-related activities.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

2    802 (9th Cir. 2004).  If they fail to meet that burden, personal jurisdiction is not established.  *Id.*

3    To establish purposeful direction, Plaintiffs must show the Individual Defendants "whose only

4    contact with [California] is the purposeful direction of a foreign act having effect in the forum

5    state . . . (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

6    that the defendant knows is likely to be suffered in the forum state."  *Id.* at 803 (applying *Calder v.*

7    *Jones*, 465 U.S. 783, 803 (1984)).

8         In determining personal jurisdiction, the Court must evaluate each defendant's contacts

9    with California individually, even when defendants are alleged to have acted in concert.  *Calder*,

10   465 U.S. at 790; *see also CenterPoint Energy, Inc. v. Superior Court*, 157 Cal. App. 4th 1101,

11   1118 (2007) ("Where conspiracy is alleged, an exercise of personal jurisdiction must be based on

12   forum-related acts that were personally committed by each nonresident defendant.").

13        Plaintiffs allege WePay is located in Palo Alto, California, and that "Defendants" expressly

14   aimed at, and caused harm in, California when they "conspired to draft and serve" the subpoena to

15   WePay and caused WePay to disclose information about California residents such as Donor No. 1.

16   *See* FAC ¶¶ 6, 30.  The subpoena is signed by Heath, addressed to WePay in California, and

17   directs WePay to appear in a Texas court to testify in the *Brown* criminal action, and to bring

18   records; WePay's response to the subpoena is addressed to Smith in Texas.  *See* Subpoena; Resp.

19   The FAC alleges no facts showing Donor No. 1's "information and belief" that Smith was

20   involved in the drafting or serving of the subpoena to WePay is "based upon information that

21   makes the inference of culpability plausible."  *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

22   2017) (internal quotation marks and citation omitted).  Absent such facts, the allegations

23   concerning Smith's involvement with the subpoena are merely conclusory.  Thus, the only

24   "intentional act" upon which Donor No. 1 relies is Heath sending the Subpoena to WePay, a

25   company located in California.  The FAC also alleges no facts showing Heath or Smith knew or

26   should have known that the donors were California residents.  *See* FAC.

27        Moreover, the FAC does not allege any facts showing Smith committed any intentional act

28   towards California: he did not sign the subpoena, and the FAC does not plausibly allege he drafted

1   or sent the subpoena to WePay.  The Court also finds that the FAC does not allege any facts

2   sufficient to show Smith or Heath knew any harm was likely to be suffered in California because it

3   does not allege they knew or should have known any of the donors whose identity they sought

4   were California residents.  The fact California is the most populous state (Pls.' ID Opp'n at 24) is

5   insufficient to show the Individual Defendants should have known that California residents were

6   donating funds to a support an individual being tried in Texas.  But without more, issuing a

7   subpoena to a third party that happens to be located in California is not sufficient to establish

8   personal jurisdiction.  *See Walden*, 134 S. Ct. at 1122-23 (defendant's conduct with forum, not

9   "random, fortuitous, or attenuated contacts" with a plaintiff or third party, justifies personal

10   jurisdiction in forum); *Klayman v. Deluca*, 2015 WL 427907, at *4 (N.D. Cal. Jan. 30, 2015) (no

11   personal jurisdiction in California based on serving a subpoena to third party in California because

12   no indication defendant expressly aimed act towards California:  "Serving a subpoena alone would

13   not have a devastating impact upon Plaintiff in California since Plaintiff neither lives nor works in

14   California. . .").

15          Finally, the Court does not have personal jurisdiction over the Individual Defendants

16   simply because they are also sued in their official capacity.  *See Stafford v. Briggs*, 444 U.S. 527,

17   544 (1980); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1460-61 (9th Cir. 1985) (venue statute "does not

18   provide a district court with venue and nationwide in personam jurisdiction in a personal damage

19   action against a United States official in his individual capacity for allegedly illegal and

20   unconstitutional acts committed during the course of employment").  Plaintiffs argue "'[o]nly one

21   basis for personal jurisdiction is required.'"  Pls.' ID Opp'n at 22 (quoting *Graphics Props.*

22   *Holdings v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 326 (D. Del. 2013)).  Plaintiffs

23   misrepresent the applicability of *Graphics Properties*: that case has nothing to do with establishing

24   personal jurisdiction over defendants sued in both their individual and personal capacities simply

25   because the defendants are United States officials.  *See* 960 F. Supp. 2d at 326 (listing five

26   potential bases for personal jurisdiction under Delaware Long Arm statute, "stream of commerce"

27   theory, and pendent jurisdiction, and analyzing why jurisdiction is proper under at least one of

28   these theories).

United States District Court
Northern District of California

1    For these reasons, the Court GRANTS Heath and Smith's Motion to Dismiss claims stated

2  against them in their individual capacities based on lack of personal jurisdiction.  During oral

3  argument, counsel for Plaintiffs did not suggest the pleadings could be amended to state facts

4  sufficient to show personal jurisdiction existed over the Individual Defendants in their individual

5  capacities.  *See* Sept. 28, 2017 FTR at 10:50-51 ("Is there any point in me granting leave to amend

6  to allow you to state additional allegations?"  "No your honor, the way we read *Walden* is that it's

7  about the Defendant's contact with the forum.  By sending a subpoena to California, they invoked

8  California law.").  Nor do Plaintiffs request an opportunity to conduct jurisdictional discovery.

9  The Motion accordingly is GRANTED, without leave to amend.

### DISCUSSION – FAILURE TO STATE A CLAIM

**A.    Legal Standard**

12    Rule 8(a) requires that a complaint contain a "short and plain statement of the claim

13  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must therefore

14  provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Bell Atl.*

15  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

16    A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough

17  facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "A claim has facial

18  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

19  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

20  678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

21  more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550

22  U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

23  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

24  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

25  cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

26  speculative level."  *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

27    In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

28  true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

United States District Court
Northern District of California

1   551 U.S. 89, 93-94 (2007); *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In addition,

2   courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v. Symington*,

3   51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

4          If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

5   request to amend the pleading was made, unless it determines that the pleading could not possibly

6   be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

7   banc) (internal quotation marks and citations omitted).  However, the Court may deny leave to

8   amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of

9   the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

10  prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

11  amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing

12  *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.     SCA**

14         The United States argues Plaintiffs fail to state a claim under the SCA.  For the most part,

15  the United States asks the Court to find the factual details behind Plaintiffs' allegations do not

16  meet the requirements of the SCA.  This is improper on a Rule 12(b)(6) motion to dismiss.

       1.     Applicable Law

18         Subject to certain exceptions, the SCA prohibits:

           (1) a person or entity providing an electronic communication service
           to the public [to] knowingly divulge to any person or entity the
           contents of a communication while in electronic storage by that
           service; and

           (2) a person or entity providing remote computing service to the
           public [to] knowingly divulge to any person or entity the contents of
           any communication which is carried or maintained on that service—

                  (A) on behalf of, and received by means of electronic
           transmission from (or created by means of computer processing of
           communications received by means of electronic transmission
           from), a subscriber or customer of such service;

                  (B) solely for the purpose of providing storage or computer
           processing services to such subscriber or customer, if the provider is
           not authorized to access the contents of any such communications
           for purposes of providing any services other than storage or
           computer processing; and

United States District Court
Northern District of California

1
2
3

(3) a provider of remote computing service or electronic communication service to the public [to] knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

4    18 U.S.C. § 2702(a); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1022 (N.D. Cal.

5    2012) ("The SCA only creates liability for a provider that is an [electronic communication service

6    ('ECS') or remote computing service ('RCS')].  A provider of email services is an ECS. . . . [T]he

7    term 'remote computing service' means 'the provision to the public of computer storage or

8    processing services by means of an electronic communications system [and] refers to 'the

9    processing or storage of data by an offsite third party.'").

10        Depending on whether the information is stored in an ECS or RCS and the length of time

11    the information has been in storage, a governmental entity may compel disclosure of the contents

12    of an electronic communication by obtaining a warrant or using a subpoena after providing notice

13    to the consumer.  18 U.S.C. § 2703(a)-(b).  A governmental entity may use an administrative

14    subpoena without prior notice to the consumer in order to obtain disclosure of "records" such as

15    the consumer's name, address, telephone connection records; the length of service and type of

16    service utilized; the subscriber number or identity; and the means and source of payment for the

17    service.  *Id.* § 2703(c); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014)

18    ("[T]he [SCA] generally precludes a covered entity from disclosing the contents of a

19    communication, but permits disclosure of record information like the name, address, or client ID

20    number of the entity's customers in certain circumstances. . . ."). "'[C]ontents'refers to the

21    intended message conveyed by the communication, and does not include record information

22    regarding the characteristics of the message that is generated in the course of the communication. .

23    . ." *Id.* at 1106.  For example, "contents" does not include header information showing a user's

24    Facebook ID along with the webpage address the user viewed.  *Id.*

25        "Any person who is aggrieved by any willful violation" of the SCA "may commence an

26    action . . . against the United States to recover money damages" and may recover "(1) actual

27    damages, but not less than $10,000, whichever amount is greater; and (2) litigation costs,

28    reasonably incurred."  18 U.S.C. § 2712(a); *cf.* 18 U.S.C. § 2707 (damages for violation of SCA

United States District Court
Northern District of California

United States District Court
Northern District of California

from any person or entity "other than the United States" include "actual damages suffered by the plaintiff and any profits made by violator . . . but in no case shall a person entitled to recover receive less than the sum of $1,000").

       2.   <u>Analysis</u>

      The United States moves to dismiss the SCA claim on numerous grounds.  The Court addresses each in turn.

           i.   *ECS or RCS*

      The FAC alleges WePay provided either an ECS or RCS.  FAC ¶ 67.  More specifically, the FAC alleges Gallagher used WePay to communicate electronically with potential and actual donors and process donations by electronic means; that WePay's "integrated processing allowed Mr. Gallagher to track and thank donors"; and that Gallagher used WePay's service to send thank you notes to each donor.  *Id.* ¶ 66; *id.* ¶ 25 ("WePay helped users like Mr. Gallagher accept donations and publicize their causes. . . . It also provided a record keeping service that helped users thank donors.").  Anonymous donors used WePay's services to donate money and send messages of support to Mr. Brown.  *Id.* ¶ 68; *id.* ¶ 26 (donors provided WePay with their bank account or credit card information; WePay offered donors the option to include a message; many donors sent Mr. Brown messages of support).  The donations and messages of support ostensibly encompass the contents of electronic communications as defined by the SCA.  *Id.* ¶ 69.  While the FAC does not allege Donor No. 1 sent a message of support to Mr. Brown, it does allege he used WePay to send a donation to Mr. Brown's legal fund (*id.* ¶¶ 12, 14, 26), which was processed electronically by WePay; as a donor, he also would have received a thank you note via WePay from Gallagher (*id.* ¶ 66).  The FAC thus alleges that WePay functions to provide, inter alia, web-based messaging services.

      The United States nonetheless argues WePay is neither an ECS nor an RCS.  *See* US Mot. at 8-12.  The United States contends WePay is not an ECS because it is a user of electronic services, not a provider.  *Id.* at 10 ("WePay's customers do not depend on WePay's website for their 'ability to send or receive electronic communications,' . . . they get that capability from their own ISPs.").  First, these facts are not before the Court on a motion to dismiss.  Second, the

United States seeks to impose too narrow a definition of ECS, which is defined as "any service which provides to users thereof the ability to send or receive . . . electronic communications." 18 U.S.C. § 2510(15).  "Electronic communications" in turn include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in party by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce[.]"  18 U.S.C. § 2510(12).  None of the cases cited by the United States suggest only an ISP can be a "provider" of electronic communications under the SCA, or that users must be completely dependent on a website for their ability to send or receive communications.  *See* US Mot. at 8-10.  That is not the law.  For example, social networking sites can be considered ECS providers if they offer private messaging functionality or allow users to post messages on another user's profile page.  *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 981-82 & n.35 (C.D. Cal. 2010) (rejecting characterization of such social networking sites as "services which utilize ECS to permit networking" and reasoning that the "goal" of these sites is "not to buy or sell books, gold, or travel services[, but] to provide web-based email services, thus enabling communication[, or] an electronic venue to communicate, either one-to-one by private messaging or with a large group of friends through wall postings and comments.").

The United States also argues that whether WePay acted as an ECS with respect to the messages is irrelevant because WePay did not disclose donor messages in its response—it only disclosed transaction history.  US Mot. at 10-11.  The United States may reassert this argument on summary judgment, but once again, at this stage in the litigation, that fact is not before the Court.  *See infra*.  The FAC therefore sufficiently alleges WePay is an ECS.

The FAC also alleges WePay is a company that provided sophisticated processing services to donors by electronic means.  FAC ¶¶ 66-67.  An RCS is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).  The United States again asks the Court to engage in fact-finding at this stage to find that the type of processing services WePay offers do not qualify it as an RCS.  This argument may be raised again at summary judgment, but the Court will not consider it now.

ii.      *Electronic storage*

The United States next argues the information they subpoenaed was not "in electronic storage." US Mot. at 14-16.  WePay allowed Gallagher to manually review donations after they occurred; on information and belief, the FAC alleges WePay therefore used its servers to store electronic information for back-up purposes, and accordingly, the information was in "electronic storage" within the meaning of the SCA.  FAC ¶ 71; *see also id.* ¶ 53 (WePay maintained information about donors, donations, and text of messages sent by donors).  Under Ninth Circuit precedent, messages that remain on WePay's server after delivery "fit comfortably within" the definition of "any storage of [electronic] communication by an electronic communication service for purposes of backup protection of such communication."  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004).  Defendants may be able to establish, through discovery, that WePay did not mean to allow users to retrieve information (US Reply at 7), but this evidence is not presently before the Court.  The FAC sufficiently alleges the information subpoenaed was in electronic storage.

iii.      *Content of Communications*

Defendants subpoenaed "any and all information regarding the campaign, including sensitive personal and financial information of the donors and the complete transaction history. . . The WePay Subpoena's broad scope also encompassed the messages the donors sent to Mr. Brown."  FAC ¶ 32; *see also* Subpoena.  WePay maintained the addresses, phone numbers, email addresses, and the text of messages sent by donors.  FAC ¶ 53.

Whatever the scope of the Subpoena is alleged to have been, the United States argues WePay did not disclose the "content" of any communications.  *See* US Mot. at 12-14.  It argues WePay only disclosed "record" information such as the name of the donor, the amount and date of the donation, and how the donation was made.  *Id.* at 13 (citing Resp.).  But this argument would require the Court to evaluate the scope of WePay's response and conclude whether the extra-pleading materials Defendants have inserted into these proceedings represent WePay's final production.  The Court will not take such steps when ruling on a motion to dismiss.

iv.    *Knowingly and Intentionally*

The United States argues Plaintiffs do not plausibly allege willful conduct by Heath and Smith.  *See* US Mot. at 16-17.  The FAC alleges in considerable detail why the United States' proffered explanation for the WePay subpoena is pretextual, and that the WePay subpoena was designed to identify and surveil Mr. Brown's supporters and chill their freedom of expression. *See, e.g.*, FAC ¶ 53 (the United States "knowingly and intentionally accessed" the contents of electronic communications via the WePay subpoena, and the violation was willful within the meaning of the SCA); *id.* ¶ 70 (Defendants not authorized to obtain information); *id.* ¶ 72 (each Defendant acted willfully, intentionally, and knowingly in accessing the information); *id.* ¶ 3 (information Defendants requested from WePay was "completely irrelevant to the charges levied against the journalist" but "was part of a larger scheme by Defendants to unlawfully surveil the donors in violation of the First Amendment"); *id.* ¶ 29 (upon learning of the campaign, Heath and Smith "began efforts to identify and surveil Mr. Brown's financial supporters"); *id.* ¶ 30 (the WePay subpoena "was part of a larger scheme to unlawfully identify, target, and surveil supporters of Mr. Brown . . . Donor No. 1 believes this scheme was initiated to harass the donors, to retaliate against them . . . and to chill the future expression of such protected conduct"); *id.* ¶ 33 (the "claimed purpose of using the information produced in response to the WePay Subpoena at Barrett Brown's trial was purely pretextual.  The true goal of the WePay Subpoena, rather, was to facilitate the unlawful surveillance of the anonymous donors to the crowd-funding campaign."); *id.* ¶¶ 47, 55 (because subpoena sought information that was irrelevant to the charges brought against Mr. Brown, and because Defendants could have obtained the information they contend they needed (i.e., the total funds raised for Mr. Brown's defense) by looking at the public donation page, the subpoena was sent to retaliate against exercise of free speech rights and deter further expression).  The FAC plausibly alleges that Defendants issued the subpoena willfully in order to obtain information for unlawful purposes.  Defendants may be able to defeat these allegations at the summary judgment stage, but the FAC sufficiently pleads this element of the claim.

v.    *Damages*

The United States argues Plaintiffs have not alleged they suffered actual damages, and thus

1   do not state a claim.  US Mot. at 18-19.  Plaintiffs argue they do not need to allege actual damages

2   to establish a violation of the SCA under 18 U.S.C. § 2712, but that if they do, the allegation their

3   civil rights were violated is sufficient.  Pls.' US Opp'n at 10.

4         Neither party has directed the Court to any opinions analyzing the need to prove actual

5   damages under Section 2712.  In its opening brief, the United States relies upon *Ruiz v. Gap, Inc.*,

6   622 F. Supp. 2d 908, 917 (N.D. Cal. 2009) (US Mot. at 19), but that case addresses the need to

7   allege actual damages on a breach of contract claim, not the SCA.  *Doe v. Chao*, 540 U.S. 614,

8   620-25 (2004), although not squarely on point, is more analogous.  In *Doe*, the plaintiff

9   established the Labor Department violated the Privacy Act, 5 U.S.C. § 552a(g)(1)(D), by

10  disseminating his social security number, and the trial court awarded him the minimum statutory

11  damages based upon his allegation of distress about the disclosure.  540 U.S. at 615-18.  The

12  Fourth Circuit reversed, finding the statutory minimum was only available upon a showing of

13  actual damages, and that the plaintiff had not created a triable issue of fact as to his damages on

14  summary judgment.  *Id.*  The plaintiff had offered no evidence corroborating his emotional

15  distress, such as evidence of physical symptoms, medical treatment, loss of income, or impact on

16  his behavior—"the only indication of emotional affliction was Doe's conclusory allegations that

17  he was torn . . . all to pieces and greatly concerned and worried [about the] potentially devastating

18  consequences" of the disclosure.  *Id.* at 617-18 (internal quotation marks omitted).  The Supreme

19  Court affirmed, holding plaintiffs must prove actual damages to recover statutory damages under

20  the Privacy Act, and that his conclusory allegations were insufficient to do so.  *Id.*  The Supreme

21  Court did "not suggest that out-of-pocket expenses are necessary" to recover the statutory

22  minimum; only that such expenses "suffice to qualify under any view of actual damages."  *Id.* at

23  627 n.12.

24        Here, the FAC alleges the unlawful surveillance scheme has had its intended effect to chill

25  First Amendment activity (FAC ¶ 30), and "caused the donors actual damages in the form of a

26  cognizable First Amendment injury – the veil of their anonymity was unlawfully pierced" (*id.* ¶

27  69).  If Plaintiffs must plead actual damages to state a claim for violating Section 2712 of the

28

SCA, the Court finds these allegations are sufficient to do so.[4]  Whether Plaintiffs can offer evidence of these actual damages on summary judgment or at trial is not an issue to be resolved on a motion to dismiss.

### c.   Article III Standing

Defendants argue Gallagher lacks Article III standing to pursue an SCA claim against the United States because he has not alleged a concrete injury traceable to the challenged action.  *See* US Mot. at 19-20.  A plaintiff suing under the SCA "demonstrates an injury sufficient to satisfy Article III when bringing a claim under a statute that prohibits the defendant's conduct and grants persons in the plaintiff's position a right to judicial relief."  *In re Zynga*, 750 F.3d at 1105 n.5; *see also Theofel*, 359 F.3d at 1074 (plaintiff whose information was wrongfully disclosed has standing under SCA).  Gallagher replies he has standing by virtue of the fact he used WePay to send thank you notes to each donor, and that the WePay Subpoena requested production of these messages.  Pl.'s US Opp'n at 10 (citing FAC ¶¶ 3, 32, 66).  The United States responds the argument fails because WePay did not produce the messages.  US Reply at 11.  But the scope of WePay's production is not before the Court, and the FAC alleges the Subpoena requested production of the messages.  FAC ¶ 32.  On a motion to dismiss, these allegations suffice to confer Article III standing on Gallagher because they show Gallagher suffered concrete harm.  *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549-50 (2016) ("Article III standing requires a concrete injury even in

---

[4] Whereas Section 2712 provides a cause of action for the United States' violations of the SCA, Section 2707 provides a cause of action for violations of the SCA by a person or entity "other than the United States."  Both sections utilize the same "any person aggrieved" language when discussing entitlement to statutory damages.  Courts in the Ninth Circuit have held plaintiffs aggrieved by a violation of Section 2707(c) can obtain minimum statutory damages without proving actual damages.  *See Aguiar v. MySpace LLC*, 2017 WL 1856229, at *9 (C.D. Cal. May 5, 2017) (citing *In re Haw. Airlines, Inc.*, 355 B.R. 225, 230-31 (D. Haw. 2006)); *Chavan v. Cohen*, 2015 WL 4077323, at *4 (W.D. Wash. July 6, 2015); *Hahn v. Rothman*, 2010 WL 11507395, at *4 (C.D. Cal. Oct. 8, 2010) (by specifying that "any person aggrieved may recover relief . . . [and] in no case shall a person entitled to recover receive less than the sum of $1,000" Section 2707(c) does not require plaintiffs to prove actual damages); *see also Doe*, 540 U.S. at 640 (noting that SCA Section 2707(c) has "been understood to permit recovery of the $1,000 statutory minimum despite the absence of proven actual damages." (J. Ginsburg, dissenting)).  Other circuits disagree. *See Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 204-08 (4th Cir. 2009) (statutory damages cannot be awarded absent proof of actual damages); *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 965-67 (11th Cir. 2016) (same).

the context of a statutory violation"); *Matera v. Google Inc.*, 2016 WL 5339806, at *8-14 (N.D. Cal. Sept. 23, 2016) (applying *Spokeo* standing requirements to standing to pursue claim for violation of Wiretap Act and concluding that alleged violations of statutory rights under the Wiretap Act constitute concrete injury in fact for purposes of standing and finding the "conclusion is supported by the historical practice of course recognizing that the unauthorized inception of communication constitutes cognizable injury.").

Defendants also argue Donor No. 1 lacks Article III standing to pursue the SCA claim because he filed his administrative claim anonymously. US Mot. at 20, 23-24; FAC, Ex. B (Donor No. 1's FTCA claim). They argue an FTCA claim must contain a written statement sufficiently describing the injury to enable the agency to begin its own investigation and a sum certain damages claim, and that Donor No. 1's claim is defective because it did not "adequately identify the claimant." *Id.* at 24-25 (citing cases). Defendants argue the failure to identify Donor No. 1 "precluded the agency from investigating such critical facts as whether Donor No. 1 actually donated to the Fund or, if so, whether his donation was made after the subpoena was issued. . . . [and] whether or to what extent he was harmed." US Mot. at 25. None of the cases Defendants cite actually address the issue presented here: whether a claimant may proceed anonymously and still satisfy the procedural requirements of the FTCA. The Ninth Circuit has interpreted the "plain language of" the FTCA presentation requirements as requiring "the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Cadwalder v. United States*, 45 F.3d 297, 301 (9th Cir. 1995) (internal quotation marks and citations omitted). Donor No. 1's FTCA claim, attached as Exhibit B to the Complaint, contains a written statement sufficiently describing the injury to enable the agency to begin its own investigation and a sum certain damages claim.[5] Absent case law directly on point, Defendants' argument that the information

---

[5] Defendants argued the claim failed to state a sum certain because the FAC seeks damages for both the SCA and also the Privacy Act claim. US Mot. at 27. As noted earlier, Plaintiffs have clarified they are not seeking damages in connection with the Privacy Act claim. *See also* FAC, Prayer for Relief, Third Cause of Action. Defendants appear to have abandoned this argument on reply. *See* US Reply at 11.

United States District Court
Northern District of California

United States District Court
Northern District of California

was insufficient to investigate the claim is insufficient to warrant dismissal on this basis.

> d.   Summary

The FAC sufficiently alleges the United States violated the SCA, and that Plaintiffs have Article III standing to bring this claim.  The Motion to Dismiss this claim is DENIED.

**C.   First Amendment**

Donor No. 1 asserts this claim against Heath and Smith in their individual and official capacities and seeks only equitable remedies against them.  *See* FAC ¶¶ 7-8, 15-16, 43-55.

> 1.   Individual Capacity[6]

Donor No. 1 brings these claims against Heath and Smith in their individual capacity under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and brings the official capacity claims under the APA.  FAC ¶¶ 7-8.  Donor No. 1 asks the Court to issue declaratory relief and award costs and fees; in addition, for the official capacity claim only, Donor No. 1 asks the Court to direct any agencies or entities that received donor information to destroy it, and to enjoin Defendants from engaging in similarly unlawful surveillance.  Prayer for Relief, First Cause of Action B-C.  Defendants argue Donor No. 1 does not state a *Bivens* claim against Heath and Smith and cannot state a claim against them in their official capacity.

Plaintiffs can obtain money damages for constitutional violations by federal officers through the remedy created by *Bivens*, but "relief under *Bivens* does not encompass injunctive and declaratory relief where . . . the equitable relief sought requires official government action." *McKelvey*, 820 F.3d at 1093-94.  "*Bivens* is both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government.  By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin government action." *Id*. at 1094; *see also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("core purpose" of *Bivens* is to "deter[ ] individual officers from engaging in constitutional wrongdoing" – it is not a proper vehicle for altering an entity's policy).

---

[6] The Court dismissed Donor No. 1's claims against Heath and Smith in their individual capacities because the FAC did not establish a basis for exercising personal jurisdiction over these defendants.  The Court also addresses Defendants' second argument.

Here, Donor No. 1 contends the equitable relief sought from Heath and Smith in their individual capacities does not require official government action.  *See* Prayer for Relief (seeking declaratory relief and reasonable attorneys' fees against the Individual Defendants generally, but specifying equitable relief requiring government action is limited to "the official capacity claim only").  Donor No. 1 argues the FAC accordingly does not conflict with *McKelvey*.  Pls.' ID Opp'n at 21.  This is a distinction without a difference: *McKelvey* and the cases it analyzes stands for the proposition a *Bivens* action against defendants in their individual capacity can only lie if it seeks money damages.  *See McKelvey*, 820 F.3d at 1093 ("'The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.'" (quoting and joining *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007))); *Winifred Jiau v. Tews*, 2017 WL 3491958, at *4 (N.D. Cal. Aug. 15, 2017) ("[T]he only available relief in a *Bivens* action is an award of money damages for any injuries caused by a defendant acting in his or her individual capacity) (citing *McKelvey*)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967 n.4 (9th Cir. 2009) ("This court . . . has held that *Bivens* authorizes First Amendment damages claims.").

> 2.    <u>Official Capacity</u>

Donor No. 1 also asserts a First Amendment claim against Heath and Smith in their official capacities, asserting jurisdiction exists through Section 702 of the APA.[7]  While Defendants conceded at oral argument that Section 702 waives the sovereign immunity of the United States (and its officers) in federal question cases, they argue the claim nonetheless must be dismissed because it fails to plausibly allege a First Amendment violation and because Donor No. 1 lacks standing to assert it.  *See* ID Mot. at 9-19; ID Reply at 1-2; Sept. 28, 2017 FTR at 10:56 (standing argument).

---

[7] To the extent Donor No. 1 sues Heath and Smith in their official capacities, any *Bivens* claim would need to be dismissed with prejudice.  *See McKelvey*, 820 F.3d at 1095 ("An action against an officer, operating in his or her official capacity as a United States agent, operates as a claim against the United States"); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) ("[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity").

United States District Court
Northern District of California

a.     Sufficiency of Allegations

The Individual Defendants argue the FAC fails to state a First Amendment claim because, in light of the "obvious alternative explanation for the WePay subpoena[,]" it fails to plausibly allege retaliation and fails to allege facts showing any First Amendment interests outweighs the legitimate purpose of serving the subpoena.  ID Mot. at 10-19.

The FAC alleges that in serving the WePay Subpoena, the Individual Defendants did not seek any evidence of a connection to the crimes with which Mr. Brown was charged, and the Subpoena's true purpose was to gather information regarding donors to Mr. Brown's campaign. FAC ¶ 44.  Defendants' proffered purpose for serving the Subpoena—that they needed to determine whether Mr. Brown could afford his own attorney—was pretextual.  *Id.* ¶ 46.  Mr. Brown was not charged with withholding funds from the public defender, and the whole purpose of the WePay campaign was to hire private counsel to relieve the public defender's office of the obligation to continue representing him.  *Id.*  Defendants did not need to use a subpoena to discover this information, as the amounts raised by the campaign were publicly available; moreover, the Subpoena sought the identity of donors, not just the amounts donated.  *Id.* ¶¶ 47, 50. Rather, the Individual Defendants served the Subpoena "because of" the donors' political messages: "Ms. Heath made her desire to suppress constitutionally-protected speech clear during the gag order hearing . . . when she argued that Mr. Brown should be gagged because he had written an article that was 'critical of the government' in a 'tone' that was 'problematic.'"  *Id.* ¶ 54.  Based on these facts, the FAC alleges Donor No. 1 "believes the WePay Subpoena was sent to retaliate against the donors' exercise of protected conduct."  *Id.* ¶ 55.  The Court disagrees with Defendants' contention that these are "bald allegations . . . based on information and belief."  ID Mot. at 12.  The gravamen of the allegations is that Heath and Smith did not need to use the Subpoena to ascertain whether Mr. Brown could afford a lawyer because that information was publicly available; and that this alleged motivation does not explain why Heath and Smith sought the identity of donors to the campaign and the content of donor messages rather than simply the total amount collected.

The FAC therefore pulls the rug from under Defendants' "obvious alternative

23

United States District Court
Northern District of California

explanation." *Id.*  Defendants have failed to articulate any facially reasonable explanation for requesting donors' identities.[8]  This defeats Defendants' arguments that the FAC did not plausibly allege a retaliatory motive and that the Government's legitimate purpose in issuing the subpoena outweighs potential First Amendment concerns.

Defendants also argue Donor No. 1 lacked an expectation of privacy in records maintained by WePay.  *Id.* at 13-14.  The FAC alleges Gallagher informed donors via the donation page that "[w]hat information you choose to provide will be kept strictly confidential," and that Donor No. 1 made an anonymous donation.  *Id.* ¶¶ 12, 14, 25, 28; *see also id.* ¶ 34 ("Donor No. 1 was alarmed to learn that his government illegally surveilled his donation.  Donor No. 1 does not publicize his financial activities and always ensures that any donations he makes are kept private.").  Defendants argue this insufficient to state a claim because WePay's privacy policy states it may be compelled to provide personal information of donors to law enforcement officials.  ID Mot. at 13.  The Court will not consider WePay's privacy policy or weigh the reasonableness of the expectation of privacy in connection with this Motion to Dismiss.

Defendants also argue individuals have no expectation of privacy in transaction records retained by a third party.  *Id.* (citing *United States v. Miller*, 425 U.S. 435, 442-43 (1976) and *In re Grand Jury Subpoena Duces Tecum*, 549 F.2d 1317, 1318 (9th Cir. 1977)).  The cases upon which Defendants rely are inapposite because the FAC alleges that the donations themselves were protected political speech, and that revealing the identity of the donors violated their right to anonymous speech.  *Miller* analyzed the expectation of privacy accorded to bank records under the Fourth Amendment (*Miller*, 425 U.S. at 442-43), and the movant seeking to quash the subpoena in *In re Grand Jury Subpoena* "identified no free speech interest impinged upon . . . and we can find none[,]" (*In re Grand Jury Supboena*, 549 F.2d at 1318).  Here, Donor No. 1 has identified a speech interest impinged upon, which the Court finds sufficient to support the First Amendment

---

[8] Defendants argue they issued the subpoena to obtain evidence that the funds raised by WePay were available for payment from or on behalf of Mr. Brown in order to obtain a court order to redirect those funds to pay for Mr. Brown's public defender.  ID Mot. at 17 ("[T]o redirect funds a court must 'find that funds are available for payment from or on behalf of a person furnished representation.'").  But Defendants do not explain why the identity of the donors would allow them to establish the funds were available to Mr. Brown.

1    claim.

2              b.    <u>Standing</u>

3         As relief for the First Amendment violation, Donor No. 1 asks the Court to declare the

4    alleged conduct violated the First Amendment rights of Donor No. 1 and the putative class; to

5    order the FBI, DOJ, and other agencies that received donor information to destroy the information;

6    to enjoin Defendants from engaging in similar unlawful surveillance in the future; and to award

7    Plaintiffs costs and fees.  *See* Prayer for Relief, First Cause of Action.

8         As the party invoking federal jurisdiction, Donor No. 1 bears the burden of establishing the

9    elements of Article III standing.  *Spokeo*, 136 S. Ct. at 1547.  To establish standing to seek

10   prospective relief such as an injunction or declaratory relief, Donor No. 1 "must demonstrate that

11   he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a

12   sufficient likelihood that he will again be wronged in a similar way.'"  *Bates v. United Parcel*

13   *Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

14   560 (1992)).  Donor No. 1 also must establish there exists a "real and immediate threat of repeated

15   injury."  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  While past wrongs do not in

16   and of themselves establish a threat of future harm, they are evidence bearing on whether there is a

17   threat of repeated injury.  *Id.*  Finally, Donor No. 1 must establish the prospective relief is likely to

18   redress the threat of injury.  *Id.*  Defendants argue Donor No. 1 lacks standing to pursue

19   declaratory relief because the FAC merely seeks "a declaration that a constitutional violation

20   occurred without an additional request regarding future conduct."  ID Mot. at 9; *see also* ID Reply

21   at 1-2; *see also* Sept. 28, 2017 FTR at 10:56 (also addressing standing to pursue injunctive relief).

22        WePay disclosed Donor No. 1's identity, amongst others, to Defendants on February 1,

23   2013.  *See* Resp. at 6 (Affidavit of Custodian).  Defendants filed the WePay Response, in some

24   form, in *United States v. Brown* on February 13, 2013.  *See* Resp.  The FAC alleges that "Donor

25   No. 1 believes Defendants maintain and continue to use the information produced in response to

26   the WePay Subpoena, as well as other information gathered from the illegal monitoring program,

27   to continually and unjustifiably surveil the donors to Free Barrett Brown."  FAC ¶ 55.  The FAC

28   does not set forth the basis for Donor No. 1's belief that Defendants continue to maintain and use

United States District Court
Northern District of California

25

the information more than four years after obtaining it from WePay, rendering this allegation conclusory.  The FAC does not allege facts showing any threat of real and immediate future harm, or facts showing Donor No. 1 is likely to be harmed again.  As such, it does not allege facts sufficient to establish Donor No. 1 has standing to seek prospective relief on the First Amendment claim.

If Donor No. 1 can amend the FAC to allege facts sufficient to show he has standing to seek prospective relief against the Individual Defendants, the Court grants him leave to amend the First Amendment claim against Heath and Smith in their official capacities.

## CONCLUSION

For the reasons stated above, the Court

(1)  DISMISSES the California Constitution claim in its entirety without leave to amend, because the Court does not have subject matter jurisdiction over this claim;

(2)  DISMISSES all claims against Heath and Smith in their individual capacities without leave to amend, because the Court does not have personal jurisdiction over these defendants and because Plaintiffs cannot allege any additional facts to establish jurisdiction exists;

(3)  DENIES the Motion to Dismiss the SCA claim against the United States;

(4)  DISMISSES the First Amendment claim against Heath and Smith in their official capacity with leave to amend; and DISMISSES the First Amendment claim for equitable relief against them in their individual capacity without leave to amend.

Plaintiffs may file an amended pleading within 21 days of this Order.  If Defendants move to dismiss any amended pleading, the Court encourages them to combine their arguments into a single motion (*see* Fed. R. Civ. P. 1); they may apply for an extension of the standard page limit if necessary.

**IT IS SO ORDERED.**

Dated: October 3, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge