SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CHARLES S. DONOVAN, Cal. Bar No. 103667
GUYLYN R. CUMMINS, Cal Bar No. 122445
ERIC J. DiIULIO, Cal. Bar No. 301439
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        cdonovan@sheppardmullin.com
              gcummins@sheppardmullin.com
              ediiulio@sheppardmullin.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kevin Gallagher, on behalf of himself; and Donor No. 1, individually and on behalf of all anonymous donors to Free Barrett Brown, <br><br> Plaintiffs, <br><br> v. <br><br> United States; Candina Heath, in her official capacity; Robert Smith, in his official capacity; Does 1-10, <br><br> Defendants. | Case No. 3:17-cv-00586-MEJ <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [DKT. 49]** |

SMRH:484805112.1

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................... 2

III.  THE COURT SHOULD DENY THE MOTION......................................... 4

    A.    Motions To Dismiss For Lack Of Standing Under Fed. R. Civ. P.
        12(b)(1).......................................................................................... 4

    B.    Donor No. 1 Has Standing To Seek Nominal Damages For The First
        Amendment Violation Donor No. 1 Suffered When Defendants' Used
        The WePay Subpoena To Unlawfully Surveil Donor No. 1's Donation ........ 4

    C.    Donor No. 1 Has Standing To Seek Prospective Relief Because Donor
        No. 1 Faces A Substantial Risk Of A Concrete And Particularized Future
        Injury .......................................................................................... 7

        1.    Donor No. 1 Alleges A Concrete And Particularized Injury ............... 8

        2.    Donor No. 1 Alleges A Substantial Risk Of Future Surveillance...... 10

IV.   CONCLUSION ......................................................................................... 13

SMRH:484805112.1                                OPPOSITION TO DEFENDANT'S MTD

TABLE OF AUTHORITIES

Page(s)

Federal Cases

557 F.3d 1066, 1073 (9th Cir. 2009) ................................................................................. 4

*Amnesty Int'l USA v. Clapper*
    638 F.3d 118 (2d Cir. 2011), *rev'd*, 568 U.S. 398 (2013) ................................... 9, 10, 11

*Babbitt v. United Farm Workers Nat. Union*
    442 U.S. 289 (1979) ................................................................................................. 10

*Barcelona v. California Dep't of Justice*
    697 Fed. App'x 576 (9th Cir. Sep. 26, 2017)............................................................ 13

*Blum v. Yaretsky*
    457 U.S. 991 (1982) ................................................................................................. 10

*Brannian v. City of San Diego*
    364 F. Supp. 2d 1187 (S.D. Cal. 2005) ................................................................... 6, 7

*Buckley v. Valeo*
    424 U.S. 1 (1976) (*per curiam*) .............................................................................. 10

*Carey v. Piphus*
    435 U.S. 247 (1978) ................................................................................................... 5

*Citizens for Free Speech, LLC v. Cty. of Alameda*
    No. C14-02513 CRB, 2017 WL 912188 (N.D. Cal. Mar. 8, 2017)............................. 5

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983)................................................................................................... 12

*Clinton v. City of New York*
    524 U.S. 417 (1998) ................................................................................................. 10

*Davis v. Federal Election Com'n.*
    554 U.S. 724 (2008) ................................................................................................. 10

*Department of Commerce v. United States House of Representatives*
    525 U.S. 316 (1999) ................................................................................................. 10

*Doe v. Holy* ................................................................................................................... 4

SMRH:484805112.1

*Draper v. Coombs*
792 F.2d 915 (9th Cir. 1986) (finding the district court erred in
dismissing 42 U.S.C. § 1983 claims for nominal damages even where the
plaintiff did not suffer actual damages) .......................................................................... 5

*Duran v. City of Porterville*
47 F. Supp. 3d 1044 (E.D. Cal. 2014)..................................................................... 5, 6, 7

*Eichenberger v. ESPN, Inc.*
No. 15-35449, 2017 WL 5762817 (9th Cir. Nov. 29, 2017) .......................................... 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
528 U.S. 167 (2000) ...................................................................................................... 10

*George v. City of Long Beach*
973 F.2d 706 (9th Cir. 1992) ........................................................................................... 5

*Hazle v. Crofoot*
727 F.3d 983 (9th Cir. 2013) ........................................................................................... 6

*Jacobs v. Clark Cty. Sch. Dist.*
526 F.3d 419 (9th Cir. 2008) ........................................................................................... 5

*Jewel v. Nat'l Sec. Agency*
673 F.3d 902 (9th Cir. 2011) ....................................................................................... 8, 9

*Laird v. Tatum*
408 U.S. 1 (1972) ............................................................................................................. 9

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................................... 8

*LSO, Ltd. v. Stroh*
205 F.3d 1146 (9th Cir. 2000)................................................................................... 4, 12

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................................................... 4, 7, 10

*Lujan v. National Wildlife Federation*
497 U.S. 871 (1990) ......................................................................................................... 4

*Estate of Macias v. Ihde*
219 F.3d 1018 (9th Cir. 2000)......................................................................................... 6

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007) ...................................................................................................... 10

-iii-

SMRH:484805112.1

*Memphis Cmty. Sch. Dist. v. Stachura*
477 U.S. 299 (1986) ................................................................................................. 5

*Monsanto Co. v. Geertson Seed Farms*
561 U.S. 139 (2010) ............................................................................................... 10

*NAACP v. Alabama*
357 U.S. 449 (1958) ................................................................................................. 8

*O'Shea v. Littleton*
414 U.S. 488 (1974) ............................................................................................... 11

*Pemberton v. Nationstar Mortg. LLC*
No. 14-CV-1024-BAS-WVG, 2017 WL 4759018 (S.D. Cal. Oct. 20,
2017) ......................................................................................................................... 4

*Pennell v. San Jose*
485 U.S. 1 (1988) ................................................................................................... 10

*The Presbyterian Church (U.S.A.) v. United States*
870 F.2d 518 (9th Cir.1989) ................................................................................. 10

*Robins v. Spokeo, Inc.*
867 F.3d 1108 (9th Cir. 2017) ................................................................................ 8

*Rodriguez v. City of Los Angeles*
No. CV1101135DMGJEMX, 2014 WL 12515334 (C.D. Cal. Nov. 21,
2014) ......................................................................................................................... 5

*Rosen v. Port of Portland*
641 F.2d 1243 (9th Cir. 1981) ................................................................................ 8

*Save CCSF Coal. v. Lim*
No. 14-CV-05286-SI, 2015 WL 3409260 (N.D. Cal. May 27, 2015) .............. 10, 11, 13

*Schuchardt v. President of the United States*
839 F.3d 336 (3d Cir. 2016) ............................................................................. 11, 12

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ............................................... 9

*Summers v. Earth Island Inst.*
555 U.S. 488 (2009) ................................................................................................. 9

*United States v. Marolf*
173 F.3d 1213 (9th Cir. 1999) ................................................................................ 5

SMRH:484805112.1                                          OPPOSITION TO DEFENDANT'S MTD

Federal: Statutes, Rules, Regulations, Constitutional Provisions

First Amendment .................................................................................................... passim

FED. R. CIV. P. 9(b) .................................................................................................... 10

FED. R. CIV. P. 12(b)(1) ......................................................................................... 4, 12

SMRH:484805112.1

## I.   INTRODUCTION

Defendants' Motion To Dismiss (the "Motion) should be denied because Donor No. 1 has standing to seek the retrospective and prospective relief sought in the Second Amended Complaint (the "SAC").  Defendants admit serving a subpoena on WePay, Inc. (the "WePay Subpoena") requesting any and all records and information related to a crowd-funding campaign established to support the legal defense of a jailed journalist. Donor No. 1 alleges that the WePay Subpoena was sent for the improper purpose of unmasking the anonymous donors to the crowd-funding campaign.  The Court has already determined that Donor No. 1's allegations were sufficient to state a plausible claim that Defendants violated Donor No. 1's First Amendment rights.  That finding establishes Donor No.1's standing to seek nominal damages for the harms caused by the WePay Subpoena because, in light of the importance of the First Amendment and the rights it protects, litigants seeking *only* nominal damages for prior injuries present justiciable challenges.

Indeed, the Motion does not challenge Donor No. 1's standing to seek nominal damages for the WePay Subpoena.  The narrow issue raised by the Motion is whether Donor No. 1 has standing to seek prospective relief based on the theory that the WePay Subpoena will allow Defendants to unlawfully surveil Donor No. 1's protected activities in the future.  Defendants do not assert that the harms caused by such surveillance would not be traceable to Defendants or redressable by a decision in Donor No. 1's favor.  Instead, they assert only that Donor No. 1 failed to allege an injury in fact.  Defendants are mistaken.

Donor No. 1 has standing to seek prospective relief because Donor No 1 faces a sufficiently substantial risk of suffering the concrete, particularized injury of future unlawful surveillance.  The future surveillance will cause a concrete injury because it will violate Donor No. 1's right to remain anonymous, a right long protected under the First Amendment.  The future injury will be particularized because Donor No. 1 will suffer it personally.  Finally, the facts that Donor No. 1 has already been surveilled, that Defendants

have not disavowed the surveillance, that Defendants served at least one other subpoena similar to the WePay Subpoena, and that the government continues to harass Barrett Brown establish that the risk of future surveillance is sufficiently likely to confer standing on Donor No. 1 to seek prospective relief.

## II.   FACTUAL BACKGROUND

Donor No. 1 donated to a crowd-funding campaign to support the legal defense of a jailed journalist named Barrett Brown because he believed the journalist was imprisoned because of the views the journalist espoused, rather than the conduct the journalist engaged in.  Dkt. 45 ("SAC") ¶ 2.  Hundreds of like-minded individuals did the same.  SAC ¶ 2. Many included messages such as "prosecutorial bludgeoning must end" and "I think it is imperative that everyone who cares about free speech, a free internet, or is horrified by prosecutorial overreach, donate to Barret Brown's legal defense."  SAC ¶ 24.

Shortly after the donations began, the crowd-funding campaign attracted Defendants' attention.  SAC ¶ 27.  Ms. Heath drafted the WePay Subpoena, which directed WePay to produce "any and all records and information" associated with the crowd-funding campaign, including the sources of the funds donated (i.e. "the financial institution, credit card company, account holder at financial institution or of the credit card account"), the location of the funds, a "[c]omplete transaction history, including invoices and sending account numbers and receiving account numbers," and "[a]ll records and information obtained from any verification checks on purchasers."  Dkt. 33-1 at 5.  WePay produced documents in response.  SAC ¶ 30.  At a minimum, this response included the donors' identities, sensitive financial information, and the amounts of each donation.  Dkt. 33-4.

The WePay Subpoena was not an isolated incident.  Defendants sent a similar subpoena to Cloudflare, Inc., a content-provider for the website Mr. Brown used to research the connections between the government and private cybersecurity contractors, also under the pretext that the information gained from the Cloudflare subpoena would be used at Mr. Brown's trial.  SAC ¶ 28 n.5.  The Cloudflare subpoena also sought "[a]ll

subscriber information" from the accounts associated with the site Mr. Brown used to facilitate his research.[1]

The donors' support of Mr. Brown did not end with his sentencing. Instead, after Mr. Brown was assessed nearly $1 million worth of fines and restitution, the Courage Foundation continued the effort to support Mr. Brown financially by initiating a fundraising campaign to help Mr. Brown pay those charges.[2] SAC ¶ 33. Moreover, the DOJ's harassment of Mr. Brown is ongoing. Since Mr. Brown's release from prison, and despite the fact that he has complied with the payment plan agreed to by the United States Attorney's Office for the Northern District of Dallas, his communications and financial records were subpoenaed from the media organization he wrote for while incarcerated. SAC ¶ 34. Mr. Brown was also arrested prior to conducting an interview based on a purported failure to obtain permission for the interview. *Id.*

Defendants do not dispute that they still maintain the information gathered in response to the WePay Subpoena. Indeed, they have filed what they claim is WePay's entire production in this action. Dkt. 33-4. Because the WePay Subpoena was not an isolated request for information, because Barrett Brown is still in the DOJ's crosshairs, and because Mr. Brown is still being supported financially by donors to the Courage Foundation, Donor No. 1 believes Defendants still use the information gathered from the WePay Subpoena (and others like it) to unlawfully surveil him and the other donors. SAC ¶¶ 34, 54.

/ / /

/ / /

/ / /

---

[1] https://leaksource.wordpress.com/2013/04/05/doj-issues-subpoena-for-info-on-barrett-browns-project-pm-site/comment-page-1/

[2] Donor No. 1 has not donated to the Courage Foundation's fundraising campaign. Donor No. 1 could amend the SAC to allege that the WePay Subpoena dissuaded Donor No. 1 from doing so.

## III.   THE COURT SHOULD DENY THE MOTION

A.   <u>Motions To Dismiss For Lack Of Standing Under FED. R. CIV. P. 12(b)(1)</u>

Defendants' Motion raises a facial challenge to Donor No. 1's standing under FED R. CIV. P. 12(b)(1) because it is "based entirely on the allegations in the [SAC]." *Pemberton v. Nationstar Mortg. LLC*, No. 14-CV-1024-BAS-WVG, 2017 WL 4759018, at *3 (S.D. Cal. Oct. 20, 2017).[3]  Accordingly, the Court must accept as true each of Donor No. 1's factual allegations and "draw all reasonable inferences in [Donor No. 1's] favor." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  In order to establish standing for each claimed injury, Donor No. 1 must allege an injury in fact that is traceable to Defendants' conduct and likely to be redressed by a favorable decision from the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Courts ruling on motions to dismiss assume "that general allegations embrace those specific facts that are necessary to support the claim.'"  *Id.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).  In light of the importance of the interests it protects, in First Amendment cases the standing analysis "tilts dramatically toward a finding of standing."  *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000).

Here, the SAC seeks relief for the prior violation of Donor No. 1's constitutional rights caused by the WePay Subpoena, as well as prospective relief from the further surveillance Donor No. 1 is likely to suffer.  Donor No. 1 has standing to pursue relief based on both theories.

B.   <u>Donor No. 1 Has Standing To Seek Nominal Damages For The First Amendment Violation Donor No. 1 Suffered When Defendants' Used The WePay Subpoena To Unlawfully Surveil Donor No. 1's Donation</u>

The Court has already determined that Donor No. 1 alleged a plausible First Amendment Claim.  Dkt. 44 at 24:23-25:1.  Accordingly, Donor No. 1 has standing

---

[3] Defendants claim that Donor No. 1 has failed to plausibly state a claim to First Amendment relief (Mot. at 4:3-9) has already been adjudicated by the Court in Donor No. 1's favor.  Dkt. 44 at 24:23-25:1 ("[h]ere, Donor No. 1 has identified a speech interest impinged upon, which the Court finds sufficient to support the First Amendment claim.")

because the Supreme Court has made "the deprivation of such rights actionable for nominal damages without proof of actual injury" in order to "recognize[] the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus,* 435 U.S. 247, 266 (1978). *See also Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308 n. 11 (1986) ("[o]ur discussion [in *Carey*] makes clear that nominal damages ... are the appropriate means of 'vindicating' [constitutional] rights whose deprivation has not caused actual, provable injury.") In the Ninth Circuit, a viable nominal damages claim confers standing on a plaintiff who seeks to challenge prior "deprivation[s] of her First Amendment right[s]." *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 426 (9th Cir. 2008).[4] Accordingly, even when plaintiffs are "entitled to collect *only* nominal damages were they to succeed on their free speech claims, they nonetheless present justiciable challenges…." *Jacobs*, 526 F.3 at 427 (emphasis in original). Indeed, courts in this circuit routinely find standing based only on nominal damages claims related to prior constitutional injuries. *See United States v. Marolf*, 173 F.3d 1213, 1219 (9th Cir. 1999) ("[n]ominal damages are available where the violation of a legal or constitutional right produces no actual damages") (internal citations and quotations removed); *Draper v. Coombs*, 792 F.2d 915, 922 (9th Cir. 1986) (finding the district court erred in dismissing 42 U.S.C. § 1983 claims for nominal damages even where the plaintiff did not suffer actual damages); *Duran v. City of Porterville*, 47 F. Supp. 3d 1044, 1052–54 (E.D. Cal. 2014) ("nominal damages *must* be awarded if a plaintiff proves a violation of his constitutional rights") (quoting *George v. City of Long Beach*, 973 F.2d 706, 708 (9th Cir. 1992); emphasis supplied in *Duran*); *Rodriguez v. City of Los Angeles*, No. CV1101135DMGJEMX, 2014 WL

---

[4] It is of no moment that the SAC does not explicitly seek nominal damages because it seeks "[a]ny other relief the Court deems proper." Dkt. 45 at Prayer. Such a request "covers nominal damages." *Citizens for Free Speech, LLC v. Cty. of Alameda*, No. C14-02513 CRB, 2017 WL 912188, at *2 (N.D. Cal. Mar. 8, 2017) (failure to "explicitly request nominal damages … is not fatal"). If the Court finds that the SAC does not encompass a request for nominal damages, Donor No. 1 should be granted leave to amend to explicitly request nominal damages. *See id.*

12515334, at *6 (C.D. Cal. Nov. 21, 2014) ("[n]ominal damages *must* be awarded in cases of violations of substantive constitutional rights in which no actual injury occurred or can be proven") (citing *Hazle v. Crofoot*, 727 F.3d 983, 992 n.6 (9th Cir. 2013); emphasis in original); *Brannian v. City of San Diego*, 364 F. Supp. 2d 1187, 1194 (S.D. Cal. 2005) ("Plaintiffs clearly are *not* required to demonstrate actual damages in order to proceed on their [First Amendment] claim for nominal damages" because "[i]n the Ninth Circuit, nominal damages must be awarded if a plaintiff proves a violation of his or her constitutional rights, irrespective of whether that violation caused any actual harm") (citing *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000); emphasis in original).

The court's reasoning in *Duran* is particularly apposite.  There, the plaintiff obtained a permit from the city of Porterville to hold a "get out the vote" event in a public park in Porterville in advance of a city council election.  *Duran*, 47 F. Supp. 3d at 1047. Though he did not support any particular candidate, the plaintiff planned to place campaign signs at the event and Porterville approved.  *Id*.  The plaintiff placed the signs at the park on the day of the event, but a sergeant in the Porterville police ordered the signs removed from the park (though the sergeant permitted the signs to be posted on cars nearby).  *Id*.  The plaintiff filed suit alleging the forced relocation of the signs violated his First Amendment free speech rights.  *Id*. at 1048.  The defendants moved for summary judgment on the grounds that the plaintiff lacked standing because he "suffered no cognizable constitutional injury.  *Id*.  In opposition to the motion, the plaintiff argued that the "forced removal of the signs was an unjustified and unlawful abridgement of his First Amendment rights."  *Id*. at 1052.

The court found that there was no support for the defendants' contention that the plaintiff lacked standing.  *Id*. at 1052-53 (collecting cases in support of the proposition that "even minor constitutional injuries that justify only nominal damages may be sufficient to establish an injury-in-fact.")  Accordingly, because the plaintiff asserted the defendants' "actions were without any valid legal support and violated [the plaintiff's] undisputed First Amendment right to encourage voter participation," the court held that the plaintiff

"suffered a constitutional injury-in-fact." *Id*. at 1053. Because his injury was also traceable to the sergeant's conduct and redressable by a favorable decision from the court, the plaintiff had standing to pursue claims for violations of his First Amendment rights. *Id*. *See also Brannian*, 364 F. Supp. 2d at 1197 (awarding nominal damages for First Amendment violations).

Here, the Court's determination that Donor No. 1 stated a First Amendment claim for relief ends the inquiry into whether Donor No. 1 has standing to challenge the constitutionality of the WePay Subpoena. The fact-finder would be required to award nominal damages if Donor No. 1 prevails on this claim, meaning Donor No. 1 presents a justiciable controversy. Moreover, Donor No. 1 suffered a significantly more grievous invasion of First Amendment freedoms than the plaintiff in *Duran*. In *Duran*, the plaintiff was only required to move campaign signs a few feet. In contrast, Donor No. 1's identity was unlawfully revealed to the very agents of the government Donor No. 1 sought to criticize by donating to the Free Barrett Brown campaign. SAC ¶ 50. In light of the importance of Donor No. 1's interest in anonymity, the unlawful exposure of Donor No. 1's identity establishes Donor No. 1's standing to seek nominal damages for the constitutional violations Donor No. 1 has already suffered. The Court should deny the Motion on this basis.

C.      Donor No. 1 Has Standing To Seek Prospective Relief Because Donor No. 1 Faces A Substantial Risk Of A Concrete And Particularized Future Injury

The Court should also deny the Motion because Donor No. 1 faces a substantial risk of suffering the concrete and particularized future harm of additional unlawful surveillance. Defendants do not contend Donor No. 1's future injury is not traceable to the WePay Subpoena and Defendants' related surveillance activities or that Donor No. 1's injury would not be redressed by a favorable ruling. The Motion asserts only that Donor No. 1 failed to plead an injury in fact. An injury in fact occurs where, as here, the plaintiff suffers "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." *Lujan*, 504 U.S. at 561.

SMRH:484805112.1

Case No. 3:17-cv-00586-MEJ

OPPOSITION TO DEFENDANT'S MTD

1.    *Donor No. 1 Alleges A Concrete And Particularized Injury*

Intangible injuries, such as privacy invasions and restrictions on First Amendment freedoms, can be concrete.  *See Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017).  One of the factors courts use to determine whether an intangible injury is sufficiently concrete to confer standing is how courts have dealt with the injury historically.  *Eichenberger v. ESPN, Inc.*, No. 15-35449, 2017 WL 5762817, at *2 (9th Cir. Nov. 29, 2017).  "Violations of the right to privacy have long been actionable at common law," even without consequences beyond the invasion itself.  *Id*. at *3 (noting that for privacy torts such as intrusion upon seclusion, the "intrusion itself" creates liability) (citations omitted).  In addition, the right to remain anonymous has been recognized as a vital privacy right for decades.  *NAACP v. Alabama*, 357 U.S. 449, 462-66 (1958); *Rosen v. Port of Portland*, 641 F.2d 1243, 1251 (9th Cir. 1981).  Thus, Donor No. 1 alleges a concrete injury.

The Ninth Circuit affirmed these principles in a closely analogous case concerning the First Amendment implications of unlawful surveillance when it held that the plaintiff alleged a concrete injury by claiming that her First Amendment right of association was violated by unlawful surveillance.  *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908-09 (9th Cir. 2011).  In *Jewel*, the plaintiff alleged that the National Security Agency collaborated with the plaintiff's internet service provider to divert her communications "in an unprecedented suspicionless general search through the nation's communications network."  *Id*. at 906.  The court held that the plaintiff's claims were "not abstract … and instead meet the constitutional standing requirement of a concrete injury."  *Id*. at 905.  *See also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1020–21 (N.D. Cal. 2012) ("the invasion of a personal constitutional right—such as the First Amendment right to freedom of association…—may also establish a "concrete" harm for the purposes of Article III standing") (citing *Jewel*, 673 F.3d at 909).

The Court should follow *Jewel*.  Donor No. 1 alleges that Defendants' unlawfully unmasked Donor No. 1 after Donor No. 1 engaged in anonymous conduct protected by the

First Amendment.  SAC ¶ 50.  In fact, Donor No. 1's injury is even more pronounced than the injury in *Jewel* because Donor No. 1's private communications were not swept up in a massive dragnet.  Instead, they were specifically targeted because of the message conveyed in the communications.  SAC ¶ 54.  The chilling effect of such surveillance is even greater.  Accordingly, Donor No. 1 alleges a concrete injury.

Neither *Clapper* nor *Laird v. Tatum*, 408 U.S. 1 (1972) changes this.  *Clapper* held only that the plaintiffs' "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending" and that the plaintiffs' asserted injuries were not fairly traceable to the challenged statute.  *Clapper*, 568 U.S. at 410-11.  Indeed, as the dissent in *Clapper* recognized, "[n]o one here denies that the Government's interception of a private telephone or e-mail conversation amounts to an injury that is 'concrete and particularized.'"  *Id*. at 423 (Breyer, J., dissenting).  Likewise in *Laird*, where the Supreme Court held only that the plaintiffs lacked standing because they failed to establish that they had been or would be harmed by the allegedly unlawful surveillance activities.  *Laird*, 408 U.S. at 13.  *Laird* does not suggest that an injury that chills First Amendment expression is not concrete.

Donor No. 1 also alleges a particularized injury.  A particularized injury affects the plaintiff "in a personal and individual way."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560 n.1).  The "critical question" is whether the plaintiff alleges "a personal stake in the outcome of the controversy as to warrant … invocation of federal court jurisdiction."  *Jewel*, 673 F.3d at 909 (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)).  In *Jewel*, the court found that the plaintiff alleged a particularized injury because she alleged that her personal and private communications were intercepted.  *Id*. at 910.[5]  Here, there is no dispute that

---

[5] Defendants offer no authority in support of their assertion that Donor No. 1 failed to plead a particularized injury and appear to confuse the particularized injury requirement of

Defendants intercepted Donor No. 1's personal and private communications. *See* Dkt. 33-4. Accordingly, Defendants cannot seriously contend that Donor No. 1 lacks "a personal stake in the outcome" of this case.

### 2. *Donor No. 1 Alleges A Substantial Risk Of Future Surveillance*

An injury in fact can be "actual or imminent." *Lujan*, 504 U.S. at 561. Plaintiffs can satisfy the imminence requirement by alleging there is a sufficient risk of harm. *Clapper*, 568 U.S. at 414. The Supreme Court has articulated this standard many different ways.[6] Courts in this circuit have also found standing where the likelihood of future injury is less than certain. *The Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 528–29 (9th Cir.1989) (standing requires a "credible threat of future injury"); *Save CCSF Coal. v. Lim*, No. 14-CV-05286-SI, 2015 WL 3409260, at *10 (N.D. Cal. May 27, 2015) ("[r]ather than requiring literal certainty, the Supreme Court has sometimes framed the injury requirement as a "substantial risk" that the harm will occur.")

standing with the particularity requirement of FED. R. CIV. P. 9(b) and/or the actual or imminent standing requirement. *See* Mot. at 7:12-8:4 (asserting that Donor No. 1 failed to allege a particularized injury because Donor No. 1 "has still yet to offer concrete or particular allegations about any ongoing harm resulting from the FBI's alleged actions.") The Court should not accept Defendants' invitation to elide the separate requirements of the standing analysis or confuse the standing analysis with that required for claims sounding in fraud.

[6] *See Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 153-54 (2010) ("substantial risk"); *Davis v. Federal Election Com'n.,* 554 U.S. 724, 734 (2008) ("realistic and impending threat of direct injury"); *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129 (2007) ("genuine threat of enforcement"); *Department of Commerce v. United States House of Representatives,* 525 U.S. 316, 333 (1999) ("substantially likely"); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 190 (2000) ("it is the plaintiff's burden to establish standing by demonstrating that ... the defendant's allegedly wrongful behavior will likely occur or continue"); *Clinton v. City of New York,* 524 U.S. 417, 432 (1998) ("sufficient likelihood"); *Pennell v. San Jose,* 485 U.S. 1, 8 (1988) ("realistic danger"); *Blum v. Yaretsky,* 457 U.S. 991, 1001 (1982) ("quite realistic" threat); *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298 (1979) (plaintiff "must demonstrate a *realistic danger* of sustaining a direct injury" (emphasis added)); *Buckley v. Valeo,* 424 U.S. 1, 74 (1976) (*per curiam* ) ("reasonable probability").

One of the factors courts consider in determining whether a future injury is likely enough to confer standing is whether the plaintiff has suffered a similar injury in the past. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("[p]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.")  In *Save CCSF*, for example, the court found standing where plaintiffs had suffered First Amendment violations in the past and could "be subjected to similar alleged misconduct if they attempt to engage in expressive activity" in the future.  *Save CCSF*, 2015 WL 3409260, at *10.

The Court should reach the same result here.  As in *Save CCSF*, the prior surveillance of Donor No. 1's protected activity increases the likelihood that Donor No. 1 could be subjected to further unlawful surveillance.  Defendants assert that "*Clapper* governs the outcome of the standing question here."  Dkt. 49 ("Mot.") at 5:7.  Notably, however, the government argued to the Second Circuit in *Clapper* that "the plaintiffs can obtain standing only by showing *either that they have been monitored* or that it is 'effectively certain' that they will be monitored."  *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 135 (2d Cir. 2011), *rev'd*, 568 U.S. 398 (2013) (emphasis added).  In *Clapper*, the Supreme Court ultimately found that the plaintiffs did not suffer an injury in fact because they alleged only the threat of a future injury.  *Clapper*, 568 U.S. at 410.  The Supreme Court noted that the plaintiffs filed their action on the same day the statute they purported to challenge was enacted.  *Id.* at 407.  Therefore, it would have been impossible for the plaintiffs' communications to have been intercepted under the law they sought to challenge prior to their suit being filed.  Accordingly, the Supreme Court found the plaintiffs' injury too speculative to establish an injury in fact.  *Id.* at 410.[7]  Here, in contrast, Donor No. 1 alleges that Donor No. 1's communications have already been "monitored."  That

---

[7] *See also Schuchardt v. President of the United States*, 839 F.3d 336, 350-51 (3d Cir. 2016) (distinguishing *Clapper* because *Clapper* plaintiffs "pleaded only *prospective* injury" while "in contrast, Schuchardt's alleged injury has already occurred insofar as he claims the NSA seized his emails.  It is therefore not surprising that the Government has been unable to formulate an analogous 'speculative chain that would doom Schuchardt's constitutional standing.")  (Emphasis in original.)

distinguishes this scenario from *Clapper*, and places Donor No. 1 squarely within the class of plaintiffs the government argued should have standing in *Clapper*.[8]

Further, contrary to Defendants assertion (*see* Mot. at 6:7-9), the relationship between the two crowd-funding campaigns is obvious – they help or helped Mr. Brown deal with the financial repercussions of his arrest and sentence. Moreover, the continued harassment of Mr. Brown demonstrates that the DOJ still has Mr. Brown within its crosshairs, making it plausible that Defendants are still surveilling those supporting Mr. Brown financially. *Compare* Mot. at 6:9-12. Thus, Defendants' reliance on *Clapper* is misplaced.

Nor does *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) establish that Donor No.1 did not suffer an injury in fact. There, *the plaintiff* asserted that "in light of changed conditions, an injunctive decree is now unnecessary because [the plaintiff was] no longer subject to a threat of injury." *Id*.at 101. The "changed conditions" that inspired the plaintiff's change-in-heart occurred when, during the pendency of the action, the police barred the use of the challenged choke-holds. *Id*. at 100.

Here, in contrast, Donor No. 1 has not withdrawn Donor No. 1's request for injunctive relief. Moreover, unlike the defendants in *Lyons*, Defendants have not barred or disavowed the surveillance tactics used to unmask Donor No. 1 and the rest of Mr. Brown's financial supporters. Instead, Defendants claimed the WePay Subpoena passes constitutional muster. Dkt. 32 at 2:16 (interest in discovery served by the WePay Subpoena "outweighed any First Amendment right to anonymity.") That counts "as a factor in favor of finding standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (collecting cases in support of the proposition that the government's failure to

---

[8] *Clapper* is also distinguishable on its procedural posture. *Clapper* was decided at summary judgment. Here, Defendants move for dismissal under FED. R. CIV. P. 12(b)(1). This is a "critical distinction" because avoiding dismissal under FED. R. CIV. P. 12(b)(1) is a "significantly lighter burden" than presenting a triable issue of material fact that would defeat summary judgment. *Schuchardt*, 839 F.3d at 351.

disavow continued use of challenged practice lends credence to a plaintiff's fears of future injury).[9]

Contrary to Defendants' assertion, Donor No. 1 has provided more than "mere supposition that an illegal surveillance scheme exists." Mot. at 6:12-15. In addition to the WePay Subpoena, Donor No. 1 alleges Defendants served a similar subpoena on Cloudflare, Inc. and continued to harass Mr. Brown after his release from prison, including by subpoenaing financial records and communications not necessary to determine whether Mr. Brown was complying with the terms of the judgment entered against him. SAC ¶¶ 28, 33-34. Accordingly, Donor No. 1 alleges a sufficient probability of future harm to establish standing to seek prospective relief. *See Save CCSF*, 2015 WL 3409260, at *10.

**IV.    CONCLUSION**

For these reasons, Donor No. 1 respectfully requests that the Court deny the Motion and find that Donor No. 1 has standing to seek nominal damages and prospective injunctive relief.

Dated:  December 11, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
CHARLES S. DONOVAN
GUYLYN CUMMINS
ERIC J. DiIULIO
Attorneys for Plaintiffs

---

[9] *Barcelona v. California Dep't of Justice*, 697 Fed. App'x 576 (9th Cir. Sep. 26, 2017) is also distinguishable. There, the plaintiff had been investigated by the California Department of Justice ("Cal. DOJ") and challenged the Cal. DOJ's actions on First Amendment and state law grounds. *Id.* at 576. Critically, the investigation ended "without adverse consequences" and the plaintiff "presented no evidence that he is frequently the subject of investigation or that he is likely to be the subject of investigation again in the future." *Id.* at 577. Donor No. 1's allegations, on the other hand, are more than sufficient to establish that Donor No. 1 is "likely to be the subject of [surveillance] in the future."