UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN GALLAGHER, et al.,

    Plaintiffs,

v.

UNITED STATES, et al.,

    Defendants.

Case No. 17-cv-00586-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 49

## INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss part of the Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(1). Mot., Dkt. No. 49; *see* SAC, Dkt. No. 45. The Motion presents a single issue: whether Plaintiff Donor No. 1 has standing to pursue a First Amendment claim against Assistant U.S. Attorney Candina Heath and FBI Agent Robert Smith in their official capacities. Donor No. 1 and Plaintiff Kevin Gallagher filed an Opposition (Opp'n, Dkt. No. 50) and Defendants filed a Reply (Dkt. No. 51). The Motion was heard on January 11, 2018. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion for the following reasons.

## BACKGROUND

A comprehensive summary of the background of this action is set out in the Court's Order re: Motion to Dismiss (First Order), Dkt. No. 44. In brief, the claims in the action are based on Defendants' decision to subpoena third-party WePay to obtain confidential information about anonymous donors to a crowd-funding campaign set up by Gallagher for the benefit of Barrett Brown, a journalist whom Gallagher and Donor No. 1 believe was tried and jailed for his political

views. First Order at 2-4. Donor No. 1 made an anonymous donation to the crowd-funding campaign. *Id.* at 2.

Defendants moved to dismiss the First Amended Complaint (FAC) on a number of grounds. *See* First Order. The Court dismissed Plaintiffs' claim for violation of the California Constitution without leave to amend because the Court lacked subject matter jurisdiction to decide the claim. *Id.* at 7-8. The Court also dismissed all claims asserted against AUSA Heath and Agent Smith in their individual capacities based on lack of personal jurisdiction, and because Plaintiffs could not pursue a *Bivens* claim against these individual defendants absent a request for money damages. *Id.* at 8-11, 21-22. The Court found Plaintiffs stated a claim for violation of the Stored Communications Act. *Id.* at 12-21. Finally, the Court found the FAC sufficiently alleged the WePay subpoena had been issued with an improper retaliatory motive and that Donor No. 1 had a reasonable expectation of privacy, but the FAC insufficiently alleged that Donor No. 1 had standing to seek the prospective relief requested. *Id.* at 22-25. The Court held:

> [the] FAC does not set forth the basis for Donor No. 1's belief that Defendants continue to maintain and use the information more than four years after obtaining it from WePay, rendering this allegation conclusory. The FAC does not allege facts showing any threat of real and immediate future harm, or facts showing Donor No. 1 is likely to be harmed again. As such, it does not allege facts sufficient to establish Donor No. 1 has standing to seek prospective relief on the First Amendment claim.

*Id.* at 25-26.

The Court granted Donor No. 1 leave to amend his First Amendment claim against Heath and Smith in their official capacities provided he could allege facts sufficient to show he has standing to seek prospective relief against them. *Id.* at 26.

## LEGAL STANDARD

Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto.*

*Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Rule 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").

**DISCUSSION**

In the SAC, Donor No. 1 alleges Heath and Smith violated his right under the First Amendment of the United States Constitution. SAC ¶¶ 42-54. He contends the Court may exercise jurisdiction over these Defendants in their official capacities pursuant to the Administrative Procedure Act and the Declaratory Relief Act. *Id.* ¶ 6.[1] He asks the Court to: declare Defendants' conduct violated the First Amendment; order federal agencies that received donors' private information to destroy it; enjoin Defendants from engaging in "similar unlawful surveillance in the future"; and award Donor No. 1 the costs and reasonable attorneys' fees in this action, as well as "[a]ny other relief the Court deems proper." *Id.*, Prayer for Relief, First Cause of Action. The United States moves to dismiss Donor No. 1's First Amendment claim on the ground he lacks standing to pursue any of the relief sought in the SAC.

**A. Prospective Relief**

---

[1] Donor No. 1 and Gallagher assert a claim for violation of the Stored Communications Act (SCA) against the United States. SAC ¶¶ 55-72. The United States does not move to dismiss the SCA claim.

3

1. Standing

As the party invoking federal jurisdiction, Donor No. 1 bears the burden of establishing the elements of Article III standing. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish standing to seek prospective relief, Donor No. 1 "must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Donor No. 1 must establish the existence of a "'real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). While past wrongs do not, in and of themselves, establish a threat of future harm, they are evidence bearing on whether there is a threat of repeated injury. *Id.* Finally, Donor No. 1 must establish the prospective relief is likely to redress the threat of injury. *Id.*

2. Allegations re: Threat of Real and Immediate Future Harm

Plaintiffs allege Defendants continue to surveil donors to Mr. Brown's WePay campaign; that allegation appears to be based on the following:

Plaintiffs believe WePay's February 1, 2013 response to Defendants' subpoena included the identities of the donors to Mr. Brown's campaign. SAC ¶ 50; *see also* RJN, Ex. B, Dkt. No. 26 (WePay response to subpoena listing information regarding donations to the Free Barrett Brown campaign under columns labeled (inter alia) "date," "payment method," "from," "gross," and "fee"; the information in the "payment method" and "from" columns is redacted). "Based on the continued maintenance of the information, the continued donations in support of Mr. Brown, and the government's continued harassment of Mr. Brown, Donor No. 1 believes Defendants continue to use the information produced in response to the WePay Subpoena, as well as other information gathered from the illegal monitoring program, to continually and unjustifiably surveil Mr. Brown's financial supporters." *Id.* ¶ 54.

Leading up to Mr. Brown's trial, Defendants subpoenaed information from web-hosting company CloudFlare, Inc. SAC ¶ 28. On information and belief, Plaintiffs allege Defendants also "sought information from . . . social media websites, payment processing companies, financial

1  institutions, and other crowd-funding websites in order to identify and obtain as much information
2  as possible about Mr. Brown's supporters. Donor No. 1 believes this scheme was initiated to
3  harass the donors, to retaliate against them for [their] exercises of protected conduct . . . and to
4  chill the future expression of such protected conduct." *Id.* Judgment was entered as to Mr. Brown
5  in his criminal action on January 28, 2015. *See* RJN, Ex. C at ECF p.11. Donor No. 1 believes
6  Defendants' unlawful surveillance scheme continues to this day, almost three years after Mr.
7  Brown's sentencing, and that the information gained from the WePay subpoena is currently being
8  used to monitor Mr. Brown's supporters, which has a chilling effect on their protected First
9  Amendment activity. SAC ¶ 28.

On July 8, 2015, the Courage Foundation initiated another crowd-funding campaign to help Mr. Brown pay for the nearly $1 million he was assessed in fines and restitution. *Id.* ¶ 33. Many of the nearly 300 donations that were made to the Courage Foundation campaign were anonymous. *Id.*

The U.S. Attorneys' Office subpoenaed a news organization for which Mr. Brown had written while incarcerated and requested financial records and all communications between the organization and Mr. Brown. *Id.* ¶ 34. This despite the fact Mr. Brown had never missed a payment under the payment plan set forth in the judgment against him, and despite the fact the DOJ already had access to Mr. Brown's bank account and tax returns. *Id.* The Bureau of Prisons also arrested Mr. Brown for a purported failure to obtain permission to conduct media interviews. *Id.*

3. <u>Analysis</u>

Nothing in the SAC compels the Court to deviate from its finding that Donor No. 1 alleges facts sufficient to show he experienced a cognizable injury under the First Amendment. *See* First Order at 24-25.[2] But "it is a separate question whether [Donor No. 1 has] standing to pursue

---

[2] Defendants argue the Court should hold that fear of future surveillance alone is insufficient to establish the existence of a concrete and particularized injury. *See* Mot. at 4-7 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417-18 (2013) (fear of surveillance is insufficient to confer standing: "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (quoting *Laird v. Tatum*, 408 U.S. 1, 14-15 (1972))); *see also* Reply at 5-6. The plaintiffs in *Clapper* did not allege they had been

5

prospective relief against such surveillance; for when injunctive relief is sought, litigants must demonstrate a 'credible threat' of future injury." *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 528-29 (9th Cir. 1989) (remanding to allow district court to decide whether plaintiffs had standing to seek prospective relief)[3]; *see also* Opp'n at 10 n.6 (collecting cases).

Plaintiffs argue *Save CCSF Coalition v. Lim*, 2015 WL 3409260 (N.D. Cal. May 27, 2015) and *LSO, Ltd. v. Stroh*, 2015 F.3d 1146 (9th Cir. 2000), demonstrate Donor No. 1 has standing to seek prospective relief. Opp'n at 11-13. But the plaintiffs in each of these cases alleged the existence of a regulation or statute that applied to, and threatened to interfere with, planned future activities, thus identifying a realistic threat of future interference. In *Save CCSF*, the plaintiffs alleged they were injured when police and campus officers responded with unnecessary and excessive force to a peaceful protest. 2015 WL 3409260 at *2. They argued they had standing to seek injunctive relief because they alleged "current threats" to their First Amendment rights: (1) they wished to engage in the same type of peaceful protest activity that was previously met with excessive force, and were concerned they may be subject to unlawful violence and arrest or

---

surveilled; instead, they alleged they had standing because there was a reasonable likelihood their communications would be intercepted in the future. 568 U.S. at 410. The Supreme Court described plaintiffs' theory as "highly speculative" and relying "on a highly attenuated chain of possibilities." *Id.* The Supreme Court also rejected the alternative argument that the plaintiffs had standing because they had undertaken costly and burdensome measures to avoid the threat of surveillance: "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 415-16. Respondents in *Laird* challenged a U.S. Army information-gathering and -distributing program on the basis it went "far beyond the mission requirements of the Army, constitute[ing] an impermissible burden on (respondents) and other persons similarly situated which exercises a present inhibiting effect on their full expression and utilization of their First Amendment rights." 408 U.S. at 10. The respondents did not allege they had been, or that it was foreseeable they would be, subject to surveillance by the Army. The Supreme Court held plaintiffs lacked standing to challenge the program. *Id.* at 13-15 (role of judiciary is not to act as "virtually continuing monitor[] of the wisdom and soundness of Executive action, . . . absent actual present or immediately threatened injury resulting from unlawful government action."). Neither *Laird* nor *Clapper* addresses standing to seek prospective relief where the plaintiff has asserted a concrete and particularized past injury. Donor No. 1 alleges more than a fear of future surveillance; he alleges facts sufficient to show Defendants did in fact unlawfully subpoena his identity and the content of his electronic messages. The relevant question thus is whether Donor No. 1 has alleged an imminent threat of future surveillance to seek prospective relief, not whether he has alleged a concrete and particularized injury to assert his claim generally.

[3] On remand, the parties stipulated that the facts of that case could re-occur, and thus, the district court concluded the case was not moot. *Presbyterian Church (U.S.A.) v. United States*, 752 F. Supp. 1505, 1510-11 (D. Ariz. 1990).

6

disciplinary sanctions; (2) in addition to potential criminal charges, the college administration stated protesters would be subject to disciplinary sanctions; and (3) the college argued its regulations made certain areas "off limits" to plaintiffs' first amendment rights, and it was plausible the college intended to use these regulations to justify ordering officers at the scene next time the protesters attempted to express their views. *Id.* at *10-11.

In *LSO*, the California Department of Alcoholic Beverage Control (ABC) threatened a convention center with the loss of its liquor license if it allowed an art organization to display erotic art on convention premises; ABC officials based their threats on a California law that prohibited the display of certain sexual images on the premises of establishments with liquor licenses. 205 F.3d at 1150. The art organization obtained a temporary restraining order and held its event. On appeal, the Ninth Circuit was asked to decide if the organization had standing to seek prospective relief preventing ABC officials from interfering with future exhibitions. The Ninth Circuit explained that "when plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* at 1154 (internal quotation marks and citation omitted). The fact ABC had wielded the state regulations against the same organization not only that year but the previous year, and had conducted other raids on licensed premises to remove art ABC believed conflicted with the regulation, demonstrated a realistic threat that ABC officials would attempt to enforce the regulation against the same organization in the future. *Id.* at 1156. The organization alleged it intended to hold erotic art exhibitions annually in the future, and that the possibility that ABC officials would again apply the state regulations in a way that could deny the exhibitions a venue inhibited the organization from planning future conventions in California, thus chilled its freedom of expression (and indeed, the organization alleged it already had cancelled plans to show the art elsewhere in California because of ABC's "posture regarding" its regulations). *Id.* The Ninth Circuit found these allegations were sufficient to show that the threat of ABC enforcing its regulations against alcohol licensees was likely to impede the organization's ability to find venues for future exhibitions within California, as it logically followed that few, if any, businesses would

7

risk their liquor license to do business with that organization. *Id.*

The SAC fails to allege the key facts the *Save CCSF* and *LSO* plaintiffs were able to allege. First, unlike the college regulations in *Save CCSF* or the ABC regulation in *LSO*, the SAC does not allege a threat of current or future prosecution based on any potentially applicable statute, rule, regulation, or policy. It only contends Heath and Smith, more than four years ago, served two subpoenas on organizations facilitating the raising of funds to support Mr. Brown (WePay and CloudFlare[4]) and, alleges on information and belief that Defendants "sought information from . . . social media websites, payment processing companies, financial institutions, and other crowd-funding websites in order to identify and obtain as much information as possible about Mr. Brown's supporters." SAC ¶ 28. But the SAC does not allege facts sufficient to show an imminent threat that Defendants are continuing to or will in the near future use similar subpoenas. The SAC does not allege when the CloudFlare subpoena was served, but it cites an April 5, 2013 article describing the CloudFlare subpoena as "a remarkable fishing expedition." *Id.* ¶ 28 n.5. The CloudFlare subpoena thus was served more than four years ago. While Defendants argued in their motion to dismiss the FAC that the WePay subpoena was lawful (Dkt. No. 32 at 2), Donor No. 1 does not allege facts sufficient to show Defendants continued to serve broad subpoenas to discover the identity of donors after Mr. Brown was sentenced in 2015, or have stated their intention to serve similar subpoenas in connection with campaigns supporting Mr. Brown in the future (or any other similar crowd-funding campaigns Donor No. 1 might want to support). Donor No. 1 alleges Defendants continue to maintain the information they unlawfully obtained, but alleges no plausible facts to support his "information and belief" that Defendants continue to "use" that information (as opposed to keeping it based on official record-keeping requirements or as part of archival case files). Donor No. 1 simply alleges no plausible facts to show Defendants are

---

[4] Plaintiffs argue the SAC alleges "Defendants served a similar subpoena on CloudFlare, Inc." Opp'n at 13; *see also id.* at 2-3 ("The Cloudflare subpoena also sought '[a]ll subscriber information' from accounts associated with the site Mr. Brown used to facilitate his research." (citing a 2013 entry on a Wordpress blog)). That is inaccurate; the SAC only alleges "Defendants also sent a subpoena to the web-hosting company CloudFlare, Inc." SAC ¶ 28. The SAC contains no allegations the CloudFlare subpoena was as broad as the WePay subpoena, or that it requested the identity of donors or the content of their electronic communications.

8

surveilling anyone other than Mr. Brown himself to this day. But even if Defendants continue to surveil and/or harass Mr. Brown today, this does not establish an imminent threat that they will repeat their attempts to surveil Donor No. 1 (or any putative class members) in the future.

Second, Donor No. 1 does not allege he is chilled from making additional anonymous donations or that he has made other anonymous donations which Defendants threaten to investigate going forward. *Cf.* SAC ¶¶ 28, 33, 54. In fact, Donor No. 1 does not allege he would like to donate money to any other campaign supporting Mr. Brown in the future, or that he is deterred from doing so by the threat of surveillance. *Cf.* Opp'n at 3 n.2 ("Donor No. 1 has not donated to the Courage Foundation's fundraising campaign. Donor No. 1 could amend the SAC to allege that the WePay Subpoena dissuaded Donor No. 1 from doing so."). The Courage Foundation campaign was initiated in 2015, but the SAC does not allege whether the campaign is still accepting donations. SAC ¶ 33. In any event, Donor No. 1 does not represent he could allege in an amended pleading that he would make a donation in the future to this campaign but is presently being dissuaded from doing so. Plaintiffs' proposed amendment therefore would not cure the deficiencies of the SAC.

Based on the allegations of the SAC, Donor No. 1 does not allege facts showing anything more than a fear of future surveillance based on Defendants' past surveillance. But a previous constitutional violation does not indicate, in and of itself, that there is a likelihood of future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107-110 (1983) (citizen who alleged he had been subjected to unlawful stranglehold did not have standing to seek injunctive relief against police department: "[I]t is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse. And it is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury.")[5] The SAC thus fails

---

[5] The Supreme Court noted that "five months have elapsed between [the incident] and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and

9

United States District Court
Northern District of California

to allege facts sufficient to show Donor No. 1 has standing to seek prospective relief for the violation of his First Amendment rights.

**B.     Nominal Damages**

In his Opposition, Donor No. 1 argued he has standing to seek nominal damages as relief for the violation of his First Amendment rights. Opp'n at 4-7. At oral argument, counsel for Plaintiffs conceded all of the cases cited in the Opposition were cases brought pursuant to 42 U.S.C. § 1983 against local authorities, and not against the federal government or its agents. *See* Jan. 11, 2018 FTR at 10:23. Absent any authority supporting his contention the United States had waived its sovereignty to claims for nominal damages, Donor No. 1 conceded the issue of nominal damages was moot. *Id.*[6]

## CONCLUSION

The Court previously granted Donor No. 1 leave to amend "to allege facts sufficient to show he has standing to seek prospective relief" by alleging "facts showing any threat of real and immediate future harm, or facts showing Donor No. 1 is likely to be harmed again." First Order at 26. For the foregoing reasons, the Court finds Donor No. 1 has failed to allege facts sufficient to show he has standing to seek prospective relief. Donor No. 1 also abandoned the argument raised in his Opposition that he has standing to seek nominal damages in connection with his First Amendment claim. Donor No. 1 does not argue he has standing to obtain any other type of damages against Defendants Heath or Smith in their official capacities. *See* Opp'n.[7] The Court

---

the police." *Lyons*, 461 U.S. at 108.

[6] While Donor No. 1 did not specifically request nominal damages in the SAC, he argues such damages are encompassed by his request for "[a]ny other relief the Court deems proper." *See* Opp'n at 5 n.4.

[7] For example, Plaintiffs do not argue they had standing to seek declaratory relief in connection with the prior disclosure of Donor No. 1's identity and/or Defendants' continued "maintenance" of the information. Just as it fails to allege facts showing the existence of a real and immediate threat, the SAC fails to allege facts sufficient to show declaratory relief would redress any threat of injury here. *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) ("The Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never. The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment, once the adverse positions have crystallized and the conflict of interests is real and immediate.").

therefore **GRANTS** Defendants' Motion to Dismiss the First Amendment claim against Defendants Heath and Smith in their official capacities.

Donor No. 1 has identified no facts in his Opposition or at oral argument to suggest he could amend the pleadings to show a threat of real and immediate future harm. The Court accordingly does not grant him further leave to amend.

**IT IS SO ORDERED.**

Dated: January 19, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge